**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERMAINE HICKS**, | : | |
| | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | **No. 22-cv-00977-JFM** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| | : | |
| *Defendants*. | : | |

## <u>ORDER</u>

  **AND  NOW**, this _____ day of _____, 2024, upon consideration of the Defendants' Motion to Preclude the Testimony of Plaintiff's Expert Russell Fischer, and any Response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. Mr. Fischer is hereby precluded from testifying at trial.

        **BY THE COURT:**

        _____

        **THE HONORABLE JOHN F. MURPHY**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERMAINE HICKS**, | : | |
| | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | **No. 22-cv-00977-CMR** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| | : | |
| *Defendants*. | : | |

## DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY AND REPORT OF PLAINTIFF'S EXPERT WITNESS RUSSELL FISCHER

Defendants City of Philadelphia, Arthur Campbell, Mark Webb, Michael Youse, Frank Holmes, Douglas Vogelman, Kevin Hodges, Mary Bridget Smith (as personal representative of the Estate of Brian Smith, deceased), Robert Ellis, Martin Vinson, and Dennis Zungalo (hereinafter collectively "Defendants"), by and through undersigned counsel, respectfully move this Honorable Court, pursuant to Federal Rule of Civil Procedure 702, for the entry of an order precluding any and all portions of expert witness Russell Fischer's testimony and report. Mr. Fischer's testimony does not meet the standards established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), in that he seeks to offer opinions without the proper methodology and that are themselves unreliable and irrelevant to the matter at hand. In support of this Motion, Defendants submit the attached Memorandum of Law, which is incorporated by reference in its entirety herein.

Respectfully submitted,

Date: October 11, 2024

*/s/ Raymond E. Escobar*
Raymond E. Escobar
Deputy City Solicitor
**City of Philadelphia Law Department**

2

1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5217
raymond.escobar@phila.gov

*/s/ Benjamin Jackal*
Benjamin Jackal
Deputy City Solicitor
**City of Philadelphia Law Department**
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5434
ben.jackal@phila.gov

*Counsel for Defendants City of Philadelphia, Arthur Campbell, Mark Webb, Michael Youse, Frank Holmes, Douglas Vogelman, and Kevin Hodges.*

*/s/ Katelyn Mays*
Katelyn Mays, Esquire
Samuel H. Ritterman, Esquire
Aleena Y. Sorathia, Esquire
Joseph Zaffarese, Esquire
**Ahmad Zaffarese LLC**

*Counsel for Defendants Ellis, Vinson, and Zungolo*

*/s/ John DeRose*
John A. DeRose
Khari Griffin
**Clark Hill**

*Counsel for Defendant, Mary Bridget Smith, as personal representative of the Estate of Brian Smith, deceased*

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **TERMAINE HICKS,** | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | **No. 22-cv-00977-CMR** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| | : | |
| *Defendants.* | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
PRECLUDE THE TESTIMONY AND REPORT OF PLAINTIFF'S EXPERT WITNESS
RUSSELL FISCHER**

The deadlines for exchange of expert reports and rebuttals having now passed, Defendants City of Philadelphia, Arthur Campbell, Mark Webb, Michael Youse, Frank Holmes, Douglas Vogelman, Kevin Hodges, Mary Bridget Smith (as personal representative of the Estate of Brian Smith, deceased), Robert Ellis, Martin Vinson, and Dennis Zungalo (hereinafter collectively "Defendants") now move to preclude the opinions of Plaintiff Termaine Hicks' ("Plaintiff") expert, Russell Fischer. For the reasons that follow, Mr. Fischer should be precluded from offering these opinions for consideration by way of his report at summary judgment, or by way of testimony at trial. Specifically, the proffered opinions fail each of *Daubert*'s reliability, fit, and qualification requirements thus warranting the exclusion of his report and testimony from consideration in this matter.

**I.      FACTUAL BACKGROUND**

The factual background of this matter will be set forth in greater detail in Defendants' Motion for Summary Judgment. By way of brief summary, this case arises out of the investigation,

prosecution, and conviction of Plaintiff for the 2001-2002 horrific beating and sexual assault of female victim "W.L." which occurred in the City of Philadelphia. In 2002, Plaintiff was convicted of rape, aggravated assault, possession of instruments of crime, and terroristic threats by a unanimous jury of 12 in the Philadelphia Court of Common Pleas. Plaintiff then unsuccessfully attempted numerous appeals for this conviction.

In January 2005, Plaintiff's direct appeal of his conviction to the Pennsylvania Superior Court was denied. In April 2006, Plaintiff filed his first petition under the Pennsylvania Post-Conviction Relief Act ("PCRA") which was subsequently denied at the trial court level in 2007. Plaintiff appealed this decision, and the Pennsylvania Superior Court ratified the trial court's denial of Plaintiff's first PCRA petition. In September 2009, Plaintiff filed a *pro se habeas* petition in the Eastern District of Pennsylvania. This petition was denied. In 2015, Plaintiff filed a Motion for post-conviction DNA testing in the Court of Common Pleas for Philadelphia County. This Motion was granted and, subsequently, Plaintiff filed a second PCRA petition in December 2018. Finally, in December 2020, under the guise of the Philadelphia District Attorney's Office (hereinafter "DAO"), the Commonwealth of Pennsylvania filed a Motion for *nolle prosequi* of Plaintiff's charges, which was granted. Plaintiff was released from prison and filed the instant suit.

In his six-count amended complaint, Plaintiff seeks to hold eleven employees of the Philadelphia Police Department (Officers Martin Vinson, Robert Ellis, Dennis Zungolo, Duane Watson, the Estate of Brian Smith, Michael Youse, Frank Holmes, and Detectives Arthur Campbell and Mark Webb, and Sergeant Douglas Vogelman and Lieutenant Kevin Hodges) liable for: Deprivation of liberty without due process of law and denial of a fair trial by fabricating evidence (Count I); Deprivation of liberty without due process of law and denial of a fair trial by intentionally concealing and deliberately suppressing material exculpatory and impeachment

evidence (Count II); Malicious prosecution in violation of the Fourth and Fourteenth Amendments (Count III);  Civil rights conspiracy (Count IV); and Malicious prosecution under Pennsylvania state law (Count VI). *See generally*, Pl.'s Am. Compl., ECF No. 23. Plaintiff also alleges a municipal liability claim against the City of Philadelphia (Count V). Pl.'s Am. Compl, ECF No. 23, at ¶¶ 166-67.

In support of his claims, Plaintiff has produced the expert report of Russell Fischer. (*See* Report of Russell Fischer (hereinafter "Fischer Report") and Curriculum Vitae of Russell Fischer (hereinafter "CV"), attached herein as Exhibit A). The 36-page Fischer Report includes the following sections:

- **Background and Qualifications**;

- **Materials Reviewed**: Mr. Fischer includes in this section a subsection titled "Historical Patterns and Practice Materials". This subsection includes a proverbial mountain of material unrelated to the instant case, including, but not limited to:

  o 1978 Inquirer Series: The Philadelphia Inquirer "How Phila. Detectives Compel Murder 'Confessions'", April 24, 1977;

  o "Materials on 1980s Injunctions", listing five (5) separate unrelated opinions and or lawsuits involving the City of Philadelphia;

  o Materials related to the "1990s 39th District Scandal", which is comprised of six (6) different periodical articles;

  o "1997-99 NAACP Plaintiffs' Monitoring Reports";

  o "1997-2003 IAO Reports";

- o "Miscellaneous reports and Audits", which is comprised of seven (7) different documents all unrelated to the instant matter, including a *Philadelphia Inquirer* article and an article from the *Philadelphia City Payer*; Ex. A, at pg. 2-54;

- **References**;

- **Methodology**;

  - o Mr. Fischer states in this section that "it is not my role to decide issues of credibility . . . which is consistent with generally acceptable police practices . . ." He goes on to state, however, that ". . . I have offered opinions based upon legitimate factual disputes." Ex. A, at pg. 5.

- **Background Facts of the Case**:

  - o This is an approximately three (3) page narrative of the underlying rape of W.L., in which all evidentiary weight is given to Plaintiff's account of the underlying attack on W.L. that formed the basis of Plaintiff's conviction. This narrative account is peppered with patently biased statements favoring Plaintiff's account of W.L.'s rape. Mr. Fischer characterizes the two competing accounts of W.L.'s rape as "Mr. Hicks's account and the contradicting police account . . ." Mr. Fischer takes liberties with the evidence in this matter, stating that ". . . the question of whether Mr. Hicks sexually assaulted W.L. turned entirely on the credibility of officers Vinson and Zungolo. The only witnesses to identify Mr. Hicks as the assailant. . . At trial, W.L. testified that she could not identify the person who assaulted with her." These statements fly in the face the testimony of W.L., which has always been consistent – from the time of her police statement, through her preliminary hearing and trial testimony, and 2024 deposition – that the man who assaulted her was still on top of

her when police arrived, directly contradicting Plaintiff's alibi. Finally, throughout this section Mr. Fischer lays great import on the fact that Plaintiff maintained in his innocence throughout the underlying trial and appeals process. Ex. A, at pg. 5-8.

- **The PPD Investigation of the Assault of W.L.**:

  o This is an approximately six (6) page narrative regarding the police investigation which followed the attack of W.L. Rather than an objective evaluation of the police conduct involved in the investigation of W.L.'s attack, Mr. Fischer begins this narrative stating that "[t]here is both disputed and undisputed evidence in the record of violations of minimally acceptable police practice in the investigation of the assault of W.L." Mr. Fischer once again supports his narrative in this section by crediting Plaintiff's account of W.L's rape. Mr. Fischer states "**Mr. Hicks has testified that he is innocent**, that he never assaulted W.L., that he was not wearing a gray hoodie on the morning of November 27, 2001, and that he did not possess a gun. **If Mr. Hicks's testimony is credited**, officers in this case violated minimally acceptable police practice by fabricating evidence against Mr. Hicks in numerous egregious ways . . ." Ex. A, at pg. 8-13 (emphasis added).

  o Mr. Fischer's narrative states that "[e]vidence in the record in this case, including admissions form the lead detective Campbell, present clear examples indicating that the investigations suffered from tunnel vision and police bias. For example, at his deposition Campbell admitted he did not make a good faith effort to get to the truth of whether Mr. Hicks committed the crime and he acknowledged that when there were contradictions between Mr. Hicks's account and the police account, rather than investigate them, he credited the police account. Stunningly, Campbell

admitted outright that his investigation was biased in favor of the police. . ."[1] Mr.

Fischer later writes that Detective Campbell's "claim that he had been maintaining

the file in his personal possession since his retirement in 2006 and the suspicious

manner in which Campbell returned the file to the PPD . . . should be investigated

by the PPD."[2] All in all, Mr. Fischer's narrative reads more as a condemnation of

---

[1]      Mr. Fischer's interpretation of Defendant Campbell's deposition testimony in this portion of the report narrative strains credulity.  During the second day of Defendant Campbell's deposition appearance, he underwent one of many argumentative and hostile lines of questioning regarding this alleged "bias":

> Q:      When you testified that Internal Affairs investigated this, that's something you just made up, right?
>         [Objection]
> A:      No.
> Q:      Shifting responsibility to someone else other than yourself, correct?
>         [Objection]
> A:      No.
>
>                                    . . .
>
> Q:      And you didn't ask Ellis any questions about what happened with this gun, right?
>         [Objection]
> A:      No.
> Q:      You just simply credited his word over Mr. Hicks, right?
>         [Objection]
> A:      Yes.
> Q:      And that was a biased investigation, right?
>         [Objection]
> A:      If *you* want to say that.
> Q:      You'd agree you ran an investigation that was biased towards the police, correct?
>         [Objection]
> A:      I don't know if it was biased or not.

Dep. of Arthur Campbell, Dec. 19, 2023, Vol. II, 345:14-348:5 (emphasis added).

[2]      This interpretation of Detective Campbel's return of the SVU file to PPD not only accuses Defendant Campbell of police misconduct, it also borders on fantastic when taken into consideration of Defendant Campbell's deposition testimony:

> Q:      Now, why at your deposition did you not mention returning the SVU file to Detective Webb in the middle of the night?
>         [Objection]
> A:      Because he works midnight to 8:00. He asked for the file, and I supplied it.

Dep. of Arthur Campbell, Dec. 19, 2023, Vol. II, 460:15-19.

PPD activity from the viewpoint of Plaintiff rather than an objective evaluation of evidence in this matter. Ex. A, pg. 8-13.

- **The Philadelphia Police Department Internal Affairs and Discipline Process**:

  o **Historical Failures of the PP Internal Affairs and Disciplinary Process**: This section of the report contains a nine (9) page narrative in which Mr. Fischer spends an exceptional amount of time writing a history of the PPD based upon the periodical and internal documents regarding PPD history cited in his "Materials Reviewed". This entire narrative is wholly irrelevant to the instant matter and does nothing to further Mr. Fischer's opinions about policing in **this** case. Instead, this narrative reads as extraneous information which would cause confusion for a jury's evaluation in this matter. Ex. A, pg.13-21;

  o **Disciplinary Issues Regarding the Defendant Officers in this Case**: This is an approximately eight (8) page narrative regarding the Internal Affairs ("IAD") history of various defendants in this case. This narrative largely focuses on the IAD history of Defendant Ellis, none of which bears relevancy to the underlying investigation. Worse, however, are the wvarious inappropriate statements made by Mr. Fischer interpreting the underlying "meaning" of IAD punishments received by Defendant Ellis and regarding non-testimonial aspects of the litigation in this matter. First, Mr. Fischer states that "It is notable that when Ellis was questioned in his deposition about this incident and the finding that he lied to investigators he claimed to have no memory regarding the disciplinary sanction he received, which itself **suggests the discipline did not send a meaningful message to Ellis regarding his misconduct**." Second, Mr. Fischer states that "[i]t is my

understanding that the City claims certain IA investigative files have been destroyed, while others have not been produced in discovery in this litigation." It is unclear why Mr. Fischer included either his subjective interpretation in the effects of PPD discipline from unrelated IAD matters or the inappropriate allegations of discovery non-productions by defense counsel in his report. Ex. A, at pg. 26 (emphasis added);

    o  **The Internal Affairs Investigation of This Case**: Mr. Fischer finally provides a narrative of the IAD investigation in <u>this</u> case in this three (3) page section;

•  **Summary of Opinions**: Mr. Fischer uses the final four (4) pages to summarize his opinions.

Before any opinions are explicitly detailed, Mr. Fischer states that "the actions of the officers in this case represent of the most extreme instances of police misconduct I have ever encountered" **but only "if Mr. Hicks's account, the evidence of Mr. Hicks's innocence, and post-conviction medical examiner evidence is credited . . ."** Ex. A, at pg. 32 (emphasis added). Every single opinion Mr. Fischer holds regarding the police actions on the night of W.L.'s rape is predicated on Mr. Fischer "crediting" evidence favorable to Plaintiff's account:

> **Accepting Mr. Hicks's account as true**, it appears the immediate focus of the officers became the protection of their fellow officer through the creation of a false cover story and actions to fabricate evidence that Mr. Hicks raped W.L., had a gun, and pointed it at them.
>
>     . . .
>
> **This evidence, if credited**, is indicative of a concerted effort by multiple officers to engage in serious misconduct to frame an innocent man. Such flagrant and widespread misconduct could not take place unpunished and unnoticed in a department with a properly functioning supervisory and disciplinary system. **The evidence of this misconduct, if believed**, is also evidence of the reluctance of officers to report violations by fellow employees and a police department which condones police officers lying and covering up for their own.

Ex. A, at pg. 32-33 (emphasis added). The remainder of Mr. Fischer's opinions are criticisms of historical failures of PPD in matters unrelated to the instant case. In other words, aside from a historical narrative comprised of information gleaned largely from periodicals (e.g. the *Philadelphia Inquirer*), Mr. Fischer's report is a factual summary derived from Plaintiff's interpretation of the evidence in the record. Or, in other words, Mr. Fischer's report is an inappropriate attempt to wrest the right of factual determination from the hands of the jury and create an alternative narrative in favor of Plaintiff's underlying claimed innocence.

Mr. Fischer's report is neither relevant nor reliable under the scrutiny of *Daubert*. Mr. Fischer's opinions regarding PPD's historical failures and IAD investigation in this matter are thinly veiled legal conclusions feigning as factual determinations - they appear to opine directly to the legal standard that Plaintiff seeks to prove under *Monell*.[3] Mr. Fischer also repeatedly invades the fact-finding province of the jury. As such, Mr. Fischer's report cannot meet *Daubert's* fit requirement. *See, e.g., U.S. v. Ward*, 169 F.2d 460, at 462 (3d. Cir. 1948) ("the 'expert' may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."). For these and the additional reasons detailed below, Mr. Fischer's opinions should be precluded from consideration by the Court or the jury.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 tasks the trial judge with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  Specifically, the rule provides that

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[3]     *Monell v. Department of Social Services of New York City,* 436 U.S. 658 (1978).

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In assessing whether expert testimony should be admitted, the trial court acts as a "gatekeeper," in order to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). While the U.S. Supreme Court first described the court's "gatekeeping" role in the context of scientific testimony, *see Daubert*, 509 U.S. 579, it later clarified that this "gatekeeping" obligation applies to "all expert testimony," in keeping with Rule 702's reference to "technical" and "other specialized" knowledge. *Id.* at 151.

Within the Third Circuit, Rule 702 has been distilled into "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex. rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir.1994). Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation[.]" *Daubert*, 509 U.S. at 590.

The fit requirement "goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id*. at 580.  The court is required to exclude opinion testimony that does not meet these three requirements.  *Schneider*, 320 F.3d at 404 (citing *Daubert*, 509 U.S. at 592).  The proponent of the evidence bears the burden of establishing the existence of each factor by a preponderance of the evidence. The party offering the expert must prove each of these requirements by a preponderance of the evidence. *In re TMI Litig*., 193 F.3d 613, 663 (3d Cir. 1999); *Daubert*, 509 U.S. at 592.  Plaintiff does not, and cannot, bear this burden.

## III.    ARGUMENT

Plaintiff cannot show by a preponderance of the evidence that Mr. Fischer's opinions are admissible under Fed. R. Evid. 702. Mr. Fischer's opinions suffer from analytical and methodological flaws that render them unreliable and therefore unfairly prejudicial to the Defendants.  Furthermore, his opinions and report are rife with findings of fact and legal conclusions, both of which usurp the role of the jury and do not fit the issues in the case. Taken all together, these deficiencies warrant exclusion of his report and testimony from consideration by the Court or by a jury.

### A.  Mr. Fischer's testimony is inadmissible because his opinions are not the product of reliable principles and methods applied reliably to the facts of this case.

Mr. Fischer's opinions are not sufficiently reliable under *Daubert*.  An expert report submitted pursuant to Fed. R. Civ. P. 26(a)(2)(B) "must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness reached them." *Dunkin' Donuts, Inc. v. Patel,* 174 F. Supp. 2d 202, 211 (D.N.J. Sept. 17, 2001) (citation omitted). The purpose of the report "is to avoid the disclosure of 'sketchy and vague' expert information." *Id.* (*citing Sierra Club v. Cedar Point Oil Co., 73* F.3d 546, 571 (5th Cir. 1996)).  Under the *Daubert* reliability prong, parties "do not have to demonstrate to the

judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Paoli II*, 35 F.3d at 744 (emphasis omitted). "The evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Mitchell*, 365 F.3d at 244 (*quoting Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998)).

Courts have further held that expert testimony is properly excluded if it "reli[es] only on what appears to be plaintiff-curated records." *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 558 (7th Cir. 2019). Consequently, in order for Mr. Fischer's testimony to be admissible under Fed. R. Evid. 702, his opinions must be grounded in acceptable principles and methodology. They are not. It is clear that Mr. Fischer relied upon plaintiff-curated records, evidenced not only by the sparse number of records listed in the "Materials Reviewed" section of his report, but via deposition testimony as well:

> Q: Did you review the deposition of Dennis Zungolo?
> A: I don't believe I did. I think there were excerpts from Zungolo. **I don't believe I was ever told to, to look at his deposition.**
> Q: Told by whom?
> A: **I'm told to read certain things and furnished, you know, those materials.** My recollection is but – you know, essentially based on this, and my recollection is that it may have been provided to me, but I was not asked to read it, I don't believe.
> Q: So counsel did not ask you to read the deposition transcript of Dennis Zungolo; is that correct?
>   [Objections]
> A: Well, I don't think they specifically said – I know they specifically didn't say don't read Zungolo's deposition. I looked at a number of excerpts from there, I believe – certain documents that were offered in deposition. **But**

**I'm essentially furnished with materials they want me to look at.** I don't believe that was one of them. I may have had it, but I wasn't asked to read it, specifically.

Q:      Do you think it would be relevant to your analysis to read the entire deposition transcript?

[Objection]

A:      I think – I think in a general sense I'm familiar with what his statements were and what he has said, you know, as furnished by exhibits and the like.

Q:      **Same questions with respect to the deposition of the victim in this case, [W.L.] – did you read her deposition transcript?**

[Objection]

Q:      I'm sorry. I didn't hear what you said.

A:      **I said no.**

Q:      **And why not?**

A:      Again, I don't believe something that – **I don't believe I was asked to read that in its entirety.**

Dep. Of Russell Fischer, Sept. 11, 2024, 44:7-46:8 (emphasis added).

Mr. Fischer's opinions are not based upon an acceptable methodology. Expert testimony must be based on the "methods and procedures of science" rather than "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation[.]" *Daubert*, 509 U.S. at 590. Mr. Fischer's methodology and opinions are both premised on giving credence to Plaintiff's testimony and only Plaintiff's testimony when viewed in light of all evidence in the record of this case. Furthermore, it is clear Mr. Fischer's opinions are based on plaintiff-curated records, undermining any potential that Mr. Fischer's "methodology" is reliable. As such, Mr. Fischer's report and testimony must be excluded from the jury in this matter.

**B.      Mr. Fischer's report and opinions are inadmissible, particularly opinions held against responding individual officer defendants in this case, as they are patently unreliable under *Daubert*.**

Mr. Fischer opines that, if Plaintiff's testimony is true, then the officers fabricated evidence and used lethal force against Plaintiff without justification. (Ex. A, at pg. 8). His conditional opinions are not admissible because they improperly intrude on the jury's role to determine

Plaintiff's credibility. Furthermore, these opinions are not reliable as they would not assist the jury to understand the evidence or resolve a fact at issue.

Mr. Fischer expressly bases his opinions regarding the conduct of the responding officers on the assumption that Plaintiff's protestations of innocence are credible. *See, Id.* ("If Mr. Hicks's testimony is credited, officers in this case violated minimally acceptable police practice by fabricating evidence against Mr. Hicks in numerous egregious ways . . . "); *id.* ("If Mr. Hicks's testimony and the medical examiner evidence is credited, defendants Vinson and Zungolo not only fabricated evidence by misrepresenting the circumstances that led to the shooting of Mr. Hicks in the SVU investigation, Hicks's criminal trial, and during the IA investigation, but also by using lethal force against Mr. Hicks without justification."); *id.* at pg. 32 ("Regarding the circumstances of Mr. Hicks's arrest, prosecution, and conviction, if Mr. Hicks's account, the evidence of Mr. Hicks's innocence, and post-conviction medical examiner evidence is credited, the actions of the officers in this case represent one of the most extreme instances of police misconduct I have ever encountered."); *id.* pg. 33, fn.7 ("I offer the above opinions regarding the wrongful nature of the shooting, if Mr. Hicks's evidence is credited, as it is relevant as a potential motive for the officers at the scene to fabricate evidence and develop a false cover story justifying Officer Vinson's actions").

All of these opinions are improper. It is the sole function of the jury to determine whether Plaintiff's testimony regarding the rape and shooting is credible. *See*, *e.g.*, *Ward*, 169 F.2d at 462 ("the 'expert' may not go far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility."); *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Grp.*, 343 F. Supp. 2d 989, 1015 (D. Kan. 2004) (excluding portions of expert's report, which "contain factual conclusions as to which a jury is fully qualified to make on its own determination from the

evidence presented."). Mr. Fischer's opinions regarding the conduct of the responding officers are inadmissible because they "supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence[.]" *Highland Cap. Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-470 (S.D.N.Y. 2005) (finding expert's testimony "simply rehashing otherwise admissible evidence about which he has no personal knowledge" to be inadmissible because "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence"); *see also In re Lyman Good Dietary Supplements Litig.*, No. 17-CV-8047-VEC, 2019 WL 5682880, at *3 (S.D.N.Y. Oct. 31, 2019) (explaining that evidence must be excluded when "expert testimony offers nothing more than what lawyers representing the parties could provide during their closing arguments").

Mr. Fischer's opinions regarding these officers—which are premised on the credibility of Plaintiff's testimony—are also inadmissible because as unreliable. Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation[.]" *Daubert*, 509 U.S. at 590. In crediting Plaintiff's statement, Mr. Fischer ignores the overwhelming evidence supporting Plaintiff's guilt, including the W.L.'s testimony that the person who assaulted her was the person the police shot on November 27, 2001.

Mr. Fischer also ignores that Plaintiff's alibi is completely unsupported by the evidentiary record. No witness saw anyone other than Plaintiff, the victim, and the responding officers at the scene of the assault. Furthermore, Plaintiff could not have heard the victim screaming from two-and one-half blocks away. He could not have seen any supposed lookout standing at the corner of 15th and Mifflin Streets from the intersection of 15th Street and Passayunk Avenue, a distance of approximately 270 meters.

18

Finally, even if Mr. Fischer's opinions were reliable (and they are not), they would be inadmissible because it would not assist the trier of fact in this case. Mr. Fischer's opinion to that effect is inadmissible because it will not "help the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702(a). Speaking plainly, a jury does not require any specialized knowledge or expertise to determine whether or not Plaintiff's fantastical claims were true, or if the alleged conspiratorial conduct which Plaintiff describes--*i.e.*, that the officers planted a gun on him and falsely testified to seeing him sexually assault the victim--would constitute misconduct. Nor does a jury need an expert witness to explain to them that police officers cannot fire their service weapons at persons without any justification – Mr. Fischer attempts to make this statement an expert opinion when, in reality, it is just a recitation of Plaintiff's account of the crime and legal claims.

**C.   Mr. Fischer's report and opinions are inadmissible, particularly opinions held against investigating individual officer defendants in this case, as they are patently unreliable under *Daubert*.**

Mr. Fischer's opinions fail the reliability prong of the test for admissibility of expert testimony because they are, at best, based on speculation, and at worst, based upon Plaintiff's fantastical alibi. Specifically, Mr. Fischer offers numerous opinions criticizing Officer Vinson's use of force, the SVU's investigation into the rape, and IAD's investigation into the shooting. Again, Mr. Fischer's opinions are premised on the assumption that Plaintiff's statements about the rape and shooting are correct:

> Regarding the circumstances of Mr. Hicks's arrest, prosecution, and conviction, **if Mr. Hicks's account, the evidence of Mr. Hicks's innocence, and post-conviction medical examiner evidence is credited**, the actions of the officers in this case represent one of the most extreme instances of police misconduct I have ever encountered. **If Mr. Hicks's account of the shooting and the medical examiner evidence from the post-conviction proceedings is credited**, Officer Vinson elected to use deadly force by shooting at Mr. Hicks without any appropriate justification given that Mr. Hicks was standing with his back to the

officers, had no weapon, and did nothing to threaten the officers' safety, let alone take action that would give a minimally trained officer a reasonable belief that they were at risk of death or serious bodily injury.

Ex. A, *supra*, at 32 (emphasis added). Mr. Fischer's opinions regarding the shooting of Plaintiff bear no serious weight as they are all predicated on crediting Plaintiff's account of the shooting. The record in this case overwhelmingly supports the account that Plaintiff refused to remove his hands from his pockets despite being ordered to do so by police when Plaintiff was found at the crime scene with W.L. *See, e.g.*, Dep. of Termaine Hicks, Jan. 26, 2024, at 232-233. Yet, Mr. Fischer's opinions blindly credit Plaintiff's account that Plaintiff was not in possession of a firearm, nor did anything to threaten officer safety. This contradiction is irreconcilable and further delegitimizes Mr. Fischer's opinions.

Again, Mr. Fischer's opinions are particularly unreliable and irrelevant insofar as they discuss the officers who investigated Mr. Hicks for the attack and rape of W.L. Mr. Fischer states that:

Although Mr. Hicks does not pursue a claim for excessive force in this lawsuit, I offer the above opinions regarding the wrongful nature of the shooting, if Mr. Hicks's evidence is credited, as it is relevant as a potential motive for the officers at the scene to fabricate evidence and develop a false cover story justifying Officer Vinson's actions (which should have been considered during the IAD investigation). It is also evidence relevant to officer violations of minimally acceptable police practice in this case because the evidence regarding circumstances of the shooting was a central part of the SVU investigation and evidence presented at Mr. Hicks's criminal trial.

Ex. A, at pg. 32-33, fn.7. Mr. Fischer offers no justification for this "methodology". Mr. Fischer's report ignores overwhelming evidence that Plaintiff's self-serving account of the incident is false.

Indeed, even though the DAO agreed to a *nolle prosse* of Plaintiff's crimes, the DAO still did not find his account denying raping the victim credible. *See* March 31, 2020, CISIU Memorandum from Dylan Reichman to ADA Patricia Cummings, attached hereto as Exhibit B;

*see also* NT 12/16/20, 5-9 (ADA Cummings, in explaining reasoning for *nolle prossing* Plaintiff's charges, never states Plaintiff is innocent and instead claims she wants to avoid putting W.L. through a retrial). In fact, the DAO concluded Plaintiff likely committed the rape. *See Exhibit B.* But, alas, these conclusions were contained within one of many documents which Mr. Fischer neither in preparation for his report, nor was provided for his review in the plaintiff-curated records which he used for his report. *See* Ex. A, pg. 2, "Materials Reviewed"; *see also* Dep. of Russell Fischer, Sept. 11, 2024, at 58:7-59:22.

Mr. Fischer also opines that "[w]ith respect to the SVU investigation regarding the assault of W.L., the record includes numerous indications of deviations of minimally acceptable police practice." Ex. A, at pg. 9. More specifically, Mr. Fischer states that "lead detective Campbell . . . suffered from tunnel vision and police bias. . . Campbell's admitted bias in the SVU investigation in this case is further reflected in the evidence investigation regarding the .38 Taurus Ellis claims he seized from Mr. Hicks." *Id.* at pg. 10. None of these opinions are reliable.[4]

Mr. Fischer makes two additional claims against Defendant Campbell that are unreliable and unsupported by any cognizant methodology. Mr. Fischer claims that Defendant Campbell insufficiently investigated the "source" of the gun seized on Plaintiff's person the morning of W.L.'s rape. Ex. A, at pg. 10-11. When confronted about this opinion at deposition, however, Mr. Fischer's methodology of examining only incomplete Plaintiff-curated records quickly fell apart as he was unaware of the investigation that Defendant Campbell had actually conducted:

> Q:     First of all, do you agree with the statement that Detective Campbell made
>        no effort to investigate Mr. Hicks' claim that the gun was planted or to find
>        out the results of any other PPD unit's investigation into that question?
>        Based on your review of the record, is that statement correct?
>        [Objection]

---

[4]     Defendants refer the Court to a more detailed discussion of Mr. Fischer's claim that Defendant Campbell was "biased" at pages 7 and 8, fn. 1-2.

A:    Yeah, yeah, I believe in his – I believe in his deposition, he does say he really didn't make any effort. Obviously, they took a statement from, from Brown. But you know, beyond taking that statement on face value, there was no effort beyond that. And I think he said in his deposition, and I'm paraphrasing, that he didn't make an effort to take it any further than, than that.

Q:    Well, **you would agree that taking the statement from Officer Brown was an effort to investigate the origins of that gun?**

A:    **Yes, it's a – its an effort.**

Q:    At what point do you believe that officer or Detective Campbell was supposed to investigate Mr. Hicks' claim that the gun was planted?

A:    Are you talking about what could have been done more to, to look at that issue?

Q:    Well, **it says here that Detective Campbell made no effort to investigate Mr. Hicks' claim about the gun being planted.**

A:    **He wouldn't have had – at that particular moment, early on in the investigation, he would not have had that particular claim because it wasn't voiced to Campbell.**

Q:    And as far as you know, based on your review of the record, the first time Detective Campbell heard the allegation that the gun as planted was at trial; is that correct?

A:    Or should have heard that; yes, that's correct.

Q:    Or could have heard it.

A:    Yes.

Q:    **In your experience, is it typical for police to investigate claims made by criminal defendants that juries have discredited?**

       [Objection]

A:    **After the fact and after the jury finding, no.**

Q:    So do you agree that it was not improper for Detective Campbell not to continue the investigation once he learned that Mr. Hicks was making the allegation that the gun as planted? Do you agree with that? I can rephrase, I know that was –

A:    Yeah, that's a little convoluted, but I – but I actually think – we must be on the same wavelength. I think I understand what you're saying. **I wouldn't have expected him specifically after the conviction to go back and look at that.**

Dep. of Russell Fischer, Sept. 11, 2024, at 92:18-95:13 (emphasis added).  In light of Mr. Fischer's

deposition testimony above stating that Detective Campbell made an effort to investigate the "gun

plant" theory and had learned about this plant only for the first time at trial. Mr. Fischer cannot

identify any evidence suggesting officers planted a gun on Mr. Hicks that was available to Det.

Campbell during his investigation, which occurred between November 27, 2001, and Mr. Hicks'

trial in November 2002.  That is not surprising because none exists.  Thus, whatever methodology

he used to evaluate Defendant Campbell's conduct, it certainly did not include considering all of

the relevant facts.

Mr. Fischer also states that he "identified a number of investigative irregularities with

respect to surveillance video footage viewed and collected from St. Agnes Hospital." Ex. A, at 11.

Once again, when confronted about this opinion at deposition, the reliability of Mr. Fischer's

opinion quickly came into serious question:

> Q:    On page 11, that same page, next paragraph down, this paragraph discusses
>        your opinion about the video?
> A:    Yes, sir.
> Q:    **Are you aware that a federal court declined to grant relief to Mr. Hicks**
>        **on the basis of his claims about the video?**
> A:    **Yes, I think in some type of an appeal, a motion was made.** I don't know
>        about at the federal level, but I know something was denied relative to that.
> Q:    **Did you read any judicial opinions addressing the video in this case?**
> A:    **Specifically the video? No, I know it was mentioned and the motion was**
>        **denied, but I don't know much more than that.**

Dep. of Russell Fischer, Sept. 11, 2024, at 95:14-96:6 (emphasis added). Mr. Fischer's opinion on

this matter is patently unreliable and in direct contradiction of previous decisions on direct appeal

(where the trial court judge (Opinion, 5-6) and Superior Court (Opinion, 11) both found the video

more "inculpatory" than exculpatory) and federal habeas review finding the state court's decisions

reasonable. Mr. Fischer was unaware of these previous decisions on these issues and did not

consider it as part of his review – all of which makes these opinions, and Mr. Fischer's report, all

the more precluded by the standards established under *Daubert*.

## IV.    CONCLUSION

Mr. Fischer's testimony does not meet the standards established in *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579 (1993), in that he seeks to offer opinions without the proper

methodology and that are themselves unreliable and irrelevant to the matter at hand. As such,

defendants request that this Honorable Court preclude the entirety of Mr. Fischer's report and testimony from use at the trial of this matter.

Respectfully submitted,

Date: October 11, 2024

/s/ Raymond E. Escobar
Raymond E. Escobar
Deputy City Solicitor
**City of Philadelphia Law Department**
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5217
raymond.escobar@phila.gov

/s/ Benjamin Jackal
Benjamin Jackal
Deputy City Solicitor
**City of Philadelphia Law Department**
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
215-683-5434
ben.jackal@phila.gov

*Counsel for Defendants City of Philadelphia, Arthur Campbell, Mark Webb, Michael Youse, Frank Holmes, Douglas Vogelman, and Kevin Hodges.*

/s/ Katelyn Mays
Katelyn Mays, Esquire
Samuel H. Ritterman, Esquire
Aleena Y. Sorathia, Esquire
Joseph Zaffarese, Esquire
**Ahmad Zaffarese LLC**

*Counsel for Defendants Ellis, Vinson, and Zungolo*

/s/ John DeRose
John A. DeRose
Khari Griffin
**Clark Hill**

*Counsel for Defendant, Mary Bridget Smith, as personal representative of the Estate of Brian Smith, deceased*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERMAINE HICKS**, | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | **No. 22-cv-00977-CMR** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| | : | |
| *Defendants.* | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, the foregoing Defendants' Motion to Preclude the

Testimony and Report of Plaintiff's Expert Witness Russell Fischer has been electronically filed

with the Court via ECF for access by all parties:

Date: October 11, 2024            /s/ Raymond E. Escobar
                                  Raymond E. Escobar
                                  Deputy City Solicitor
                                  **City of Philadelphia Law Department**
                                  1515 Arch Street, 14th Floor
                                  Philadelphia, PA  19102
                                  215-683-5217
                                  raymond.escobar@phila.gov

                                  /s/ Benjamin Jackal
                                  Benjamin Jackal
                                  Deputy City Solicitor
                                  **City of Philadelphia Law Department**
                                  1515 Arch Street, 14th Floor
                                  Philadelphia, PA  19102
                                  215-683-5434
                                  ben.jackal@phila.gov

                                  *Counsel for Defendants City of Philadelphia, Arthur*
                                  *Campbell, Mark Webb, Michael Youse, Frank*
                                  *Holmes, Douglas Vogelman, and Kevin Hodges.*