IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERMAINE HICKS,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action |
| : | No. 2:22-cv-0977 |
| **CITY OF PHILADELPHIA, et al.,** : | |
| : | |
| Defendants. : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, the City of Philadelphia ("City"), Arthur Campbell, Mark Webb, Frank Holmes, Michael Youse, Douglas Vogelman, and Kevin Hodges, respectfully submit the following response to Plaintiff Termaine Hicks's opposition to their motion for summary judgment. ECF 256. For the reasons that follow, Plaintiff's arguments regarding his municipal liability claim against the City are contrary to the standard for Monell claims and ignore the record.

**I.   ARGUMENT**

A Monell claim based on allegedly inadequate supervision requires Plaintiff to prove that the City's supposed failure to supervise or discipline its officers "amounts to deliberate indifference to the constitutional rights of those affected." Forrest v. Parry, 930 F.3d 93, 106 (3d Cir. 2019). The failure or inadequacy of the disciplinary system must reflect a "a deliberate or conscious choice," on the part of the municipality. Id. at 105. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs

1

of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 410 (1997). Deliberate indifference is typically proven by "[a] pattern of similar constitutional violations." Connick v. Thompson, 563 U.S. 51, 62 (2011). The Third Circuit explained that in the context of failure-to-supervise claims, a plaintiff establishes deliberate indifference by proving: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999).

      Plaintiff's underlying claims of misconduct are extraordinary. He asks this Court for the opportunity to persuade a jury that within minutes of arriving at the scene of a rape and shooting, officers conspired to: plant a gun on a criminal suspect and frame him for rape by making false inculpatory statements against him and fabricating physical evidence—all in an effort to cover up an unjustified shooting. Moreover, Plaintiff's putative conspiracy did not involve one or two rogue officers—twenty five police personnel, patrol officers, supervisors, investigators, and a civilian, responded to the scene of the rape and shooting. ECF 251-17, D010581–82. The conspiracy involved individuals with a broad range of involvement, from the officer who shot Hicks to those who responded minutes later, to the detectives who arrived more than one hour later.

      Thus, to establish Monell liability, Plaintiff has to prove the City was deliberately indifferent to the risk that inadequacies of its internal affairs system would cause its officers to engage in a massive, multifaceted coverup to conceal unjustified shootings. He has adduced no such evidence.

**A.     The internal affairs investigation into the shooting in this case does not prove that the City was deliberately indifferent to a violation of Hicks's constitutional rights.**

Plaintiff first argues the City is liable because the police commissioner "ratified" the supposedly unconstitutional conduct in this case when he signed off on the internal affairs investigation into the shooting. ECF 259, 29–32. The argument ignores basic facts about the investigation.

For one thing, there was no allegation or complaint of officer misconduct at the time of the internal affairs investigation. The internal affairs investigation was completed in July 2002. ECF 251-18, D06754. It was not until November 2002 that Plaintiff testified at his trial and asserted—for the first time—that he did not rape the victim and that the gun was supposedly planted on him. ECF 251-8, 31–34. Until Plaintiff's trial testimony, there was no evidence of any kind that could even suggest officer misconduct.

By the time the internal affairs investigation reached its conclusion, the investigator had available to him the victim's statement that the person who pistol whipped her, dragged her to a secluded area, and raped her was on top of her when the police arrived (ECF 251-18, D006770–73); statements from Officers Vinson and Zungolo that Hicks was on top of the victim when they arrived and that Hicks refused officer commands to take his hand out of his pocket (id. at D006779–80, D006794–99); statements from Officers Zungolo and Ellis that Officer Ellis recovered a gun from Hicks's pocket (id. at D00679–80, D006787–88). Moreover, statements from neighbors corroborated the officers' statements that they repeatedly ordered Plaintiff to take his hand out of his pocket before the shooting.

> I HEARD ONE OF THE COPS ASKING THE GUY TO SHOW HIM HIS HANDS. THE COP ASKED HIM TO SHOW HIM HIS HANDS ABOUT TWO OR THREE TIMES.

3

ECF 251-18, D006777.[1]

In the absence of a complaint and in the face of clear and corroborated evidence establishing Plaintiff raped the victim, possessed a gun, and refused officers' commands before the shooting, Plaintiff faults the internal affairs investigator for not concluding the officers lied on the basis of minor discrepancies in their statements. In particular, Plaintiff says the investigator should have concluded the officers were lying based on discrepancies in their statements regarding which officer recovered the gun from Plaintiff and Plaintiff's precise movements before the shooting. ECF 259, 39.

Plaintiff ignores that the jury at his criminal trial heard the supposed inconsistencies in the officers' statements and convicted him. Plaintiff's criminal defense attorney cross examined Officer Vinson regarding his statement to internal affairs, which he gave six months after the shooting, that he recovered the gun from Hicks. See ECF 251-5, 12 (explaining to the jury "I didn't retrieve the gun from his coat pocket."). In closing

---

[1] The Special Victims Unit's Investigative filed contained yet more evidence corroborating the officers' accounts. To cite just two examples, one of the paramedics who responded to the scene and treated Plaintiff told a police investigator that Hicks was wearing a hooded sweatshirt when he arrived:



ECF 251-17, D10565. This corroborated the statements of neighbors who called 911 and reported that the victim was being assaulted by a man wearing a gray hooded sweatshirt. See, e.g., id. at D010559. The victim's blood was identified inside the barrel of the gun recovered from Hicks, corroborating her statement that her attacker stuck the barrel of the gun in her mouth. Id. at D010613.

argument, Plaintiff's criminal defense attorney asked the jury to discredit Officer Vinson's testimony describing Hicks's conduct prior to the shooting because it was inconsistent with that of Officer Zungolo.  ECF 251-7, 156–59.  The jury also heard testimony about the origin of the gun Hicks used to assault the victim.  Officer Valerie Brown testified that she purchased the gun from a police corporal named Curtis Santner in 1989, stored it in her basement closet, and did not know it was missing until a police investigator contacted her after Hicks used the gun to assault the victim.  ECF 251-5, 133, 135.  Plaintiff faults the internal affairs investigator for not viewing the same evidence the jury concluded established his guilt beyond a reasonable doubt and coming to Plaintiff's desired conclusion that it actually proved a vast police conspiracy.

The same evidence that convinced a jury of Plaintiff's guilt beyond a reasonable doubt cannot establish that the City was deliberately indifferent to a violation of Plaintiff's constitutional rights.  Forrest v. Parry, 930 F.3d at 106.

> **B.     Plaintiff has identified no evidence that the City was deliberately indifferent to the constitutional harms he alleges.**

Next, Plaintiff generally claims that decades of supposed officer misconduct placed the City on notice that the officers would engage in the misconduct alleged in his Amended Complaint.  But Plaintiff fails to identify a pattern of prior instances of the misconduct alleged in this case—a massive police conspiracy to conceal planting a gun on a criminal suspect.  Thus, the proffered evidence is inadequate to prove deliberate indifference.  See Connick, 563 U.S. at 62–63 (rejecting reliance on prior Brady violations that did not involve "failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind" as "not similar to the violation at issue here"); see also Livezey v. City of Malakoff, 657 F. App'x 274, 278 (5th Cir. 2016) (holding that factual distinctions

5

between prior and challenged traffic stops foreclosed finding a pattern of violations by the same officer).

Despite sweeping allegations spanning decades, Plaintiff has not identified any prior instances of complex conspiracies among officers to frame suspects and conceal their own misconduct. Plaintiff's closest example falls short. He relies heavily on Duvall v. Hustler, 447 F. Supp. 3d 311, 315 (E.D. Pa. 2020). ECF 259, 54–55. But the underlying shooting and alleged conspiracy to justify it occurred in September 2016, nearly 15 years after the shooting in this case. Duvall, 447 F. Supp. 3d at 315. While post-event evidence is can be admitted if it "can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right," Bordanaro v. McLeod, 871 F.2d 1151, 1167 (1st Cir. 1989), a period of fiteen years is too attenuated to be relevant. See Rivera v. Guevara, 319 F. Supp. 3d 1004, 1070 (N.D. Ill. 2018), opinion clarified, No. 12-CV-04428, 2018 WL 11469072 (N.D. Ill. May 17, 2018) (concluding under Federal Rule of Evidence 403 "the court has trouble seeing how evidence of complaints and conduct that occurred as much as 13 years after the [underlying] investigation meets this standard."). An incident from 2016 could not have placed the City on notice of what Plaintiff alleges occurred in 2001.

Plaintiff's discussion of complaints against Officer Ellis does not establish deliberate indifference either. Tellingly, Plaintiff has abandoned the allegations in his Amended Complaint that Officer Ellis planted guns on two criminal suspects. ECF 23, ¶¶ 117–20; 123.[2] Plaintiff instead devotes page after page to repeating complaints against

---

[2] For the reasons discussed in Defendants' motion for summary judgment, the record developed in discovery disproves Plaintiff's allegations. ECF 222, 17–20.

Officer Ellis that are wholly unrelated to planting guns on suspects to justify improper shootings. ECF 259, 55–60.

Moreover, Plaintiff's methodology, like that of his expert, is simply to credit all allegations against police officers. This section of Plaintiff's filing merely repeats claims made against Officer Ellis. ECF 259, 55–60. He offers no evidence that could call into question Officer Ellis's account of these prior instances, the internal affairs investigation, or any decisions regarding discipline. For example, Plaintiff could have adduced documentary evidence such as a video establishing that Officer Ellis's account of the supposed misconduct could not have occurred. He did not do so. In Plaintiff's world, the allegations are themselves evidence.

In sum, Plaintiff cannot point to any evidence that would demonstrate that a known or obvious consequence of the PPD's internal affairs system was that an officer would plant a firearm on a suspect and scores of other officers would join in a conspiracy to cover up the misconduct.

## II. CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion for summary judgment (ECF 222), Defendants, the City of Philadelphia, Arthur Campbell, Mark Webb, Frank Holmes, Michael Youse, Douglas Vogelman, and Kevin Hodges, Defendant City of Philadelphia respectfully request that this Court grant their motion and enter judgment in their favor.

                                        Respectfully submitted:

Date: January 10, 2025

                                        /s/ *Benjamin T. Jackal*
                                        Benjamin T. Jackal
                                        Deputy City Solicitor

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERMAINE HICKS,** | |
| **Plaintiff,** | |
| v. | **Civil Action** |
| | **No. 2:22-cv-0977** |
| **CITY OF PHILADELPHIA, et al.,** | |
| **Defendants.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Reply in Support of Defendants' Motion to Dismiss has been filed on ECF and is available for viewing and downloading.

Respectfully submitted:

Date: January 10, 2025

*/s/ Benjamin T. Jackal*
Benjamin T. Jackal
Deputy City Solicitor