**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERMAINE HICKS** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 22-977** |
| | : |
| **CITY OF PHILADELPHIA, MARTIN** | : |
| **VINSON, ROBERT ELLIS, ARTHUR** | : |
| **CAMPBELL, MARK WEBB, MICHAEL** | : |
| **YOUSE, FRANK HOLMES, DOUGLAS** | : |
| **VOGELMAN, KEVIN HODGES, DENNIS** | : |
| **ZUNGOLO, MARY BRIDGET SMITH** | : |

## <u>ORDER</u>

**AND NOW**, this 6th day of August 2025, upon considering plaintiff's motions *in limine* (DI 326, 327, 328, 332, 334, 339), individual defendants' motion *in limine* (DI 329), the City's motion *in limine* (DI 330), defendants' joint motion *in limine* (DI 331), the responses in opposition (DI 340, 341, 342, 343, 344, 345, 346, 347, 348), and the parties' arguments at the final pretrial conference on July 31, 2025, it is **ORDERED**:[1]

1.      Mr. Hicks's motion *in limine* to preclude evidence and argument relating to third-party liability (DI 326) is **GRANTED as unopposed**.

2.      Mr. Hicks's motion *in limine* to bar evidence or argument regarding past work by defense experts Meghan Clement and Judy Melinek with plaintiff's counsel (DI 327) is **DENIED**.  The fact that Ms. Clement and Dr. Melinek were previously retained by plaintiff's counsel in unrelated cases is part of their professional backgrounds and we think fair game for

---

[1] In addition to the reasons stated here, we reach our decisions for the reasons stated on the record at the pretrial conference on July 31, 2025.

expert qualification purposes.  The risk of unfair prejudice to Mr. Hicks from admitting this evidence is limited or non-existent.  *See* Fed. R. Evid. 403.  Importantly, Ms. Clement and Dr. Melinek were retained by plaintiff's counsel in cases unrelated to this one.[2]

      3.      Mr. Hicks's motion *in limine* to ask leading questions of adverse witnesses (DI 328) is **GRANTED in part and DENIED in part without prejudice**.  As to Keenya Tyalor, we grant the motion as unopposed.[3]  We also grant it as to John Prendergast.  District courts have noted that whether a former employee is considered identified with an adverse party is often a "fact-dependent inquiry." *Fehr v. SUS-Q Cyber Charter Sch.*, No. 4:13-cv-01871, 2015 WL 6166627, at *3 (M.D. Pa. Oct. 20, 2015) (citing cases).  According to his deposition, Mr. Prendergast worked for the PPD's Internal Affairs (IA) division from 1991 until 2017, when he retired at the rank of Lieutenant.  DI 259-11 at 30 (ECF).  As part of his *Monell* claim, Mr. Hicks directly challenges various aspects of Mr. Prendergast's IA investigation.  These details are sufficient to find that Mr. Prendergast is identified with the PPD.[4]  Sybil Murphy — the prosecutor in Mr. Hicks's underlying criminal case — presents a closer question.  Ms. Murphy is

---

[2] Mr. Hicks cites to several cases in which courts barred any testimony or evidence that the opposing party had previously retained the expert in the *same case*.  *See* DI 327 at 1. That scenario poses a much greater risk of unfair prejudice, as jurors "might well assume that plaintiff's counsel had suppressed evidence which he had an obligation to offer." *Peterson v. Willie*, 81 F.3d 1033, 1037 (11th Cir. 1996) (internal quotations omitted).

[3] Defendants do not dispute that Ms. Taylor, who is currently employed with the Philadelphia Police Department (PPD) is considered a "witness identified with an adverse party" under Federal Rule of Evidence 611(c), which provides that "[o]rdinarily, the court should allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."

[4] Based on his deposition, plaintiff's counsel expects that Mr. Prendergast will be a hostile witness. This provides a separate ground to allow leading questions under Rule 611(c).

no longer employed by the District Attorney's Office (DAO), which, as defendants point out, is separate from the PPD.  We cannot say at this stage that Ms. Murphy is identified with defendants or a hostile witness under Rule 611(c).  And we understand from the pretrial conference that plaintiff's counsel may be permitted to use leading questions to structure Ms. Murphy's direct examination without drawing objections from defendants.  We will deny the motion as to Ms. Murphy without prejudice to reraise the issue at trial.

     4.     Mr. Hicks's motion *in limine* to preclude inadmissible opinion and credibility testimony (DI 332) is **DENIED without prejudice**.  Mr. Hicks's requested relief is subsumed by Federal Rule of Evidence 701 and overly broad.  *See* DI 332 at 1.[5]  Nonetheless, we will provide guidance on the specific testimony with which Mr. Hicks takes issue.

     a.     <u>Ms. Murphy's testimony</u>.  We agree with Mr. Hicks that Ms. Murphy cannot offer an overarching opinion about Mr. Hicks's credibility or guilt.  *See Bhaya v. Westinghouse Elec. Corp*., 832 F.2d 258, 262 (3d Cir. 1987) ("Evaluation of witness credibility is the exclusive function of the jury.")  But defendants intend to elicit Ms. Murphy's opinion about the sufficiency of the evidence in the underlying criminal case.  Such testimony would be based on Ms. Murphy's well-founded perception of the evidence as the person who prepared the case and prosecuted Mr. Hicks.  And there is no dispute that, for example, the fabrication of evidence claim involves considering whether Mr. Hicks would have been prosecuted in the absence of allegedly fabricated evidence.  We find defendants' proposed line of questioning

---

[5] Rule 701 provides that opinion testimony by a lay witness must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

acceptable under Rule 701; should it veer towards eliciting her broader opinion about guilt, Mr. Hicks may object.

        b.    <u>W.L.'s testimony</u>. The victim, W.L., has never identified Mr. Hicks as the rapist. It appears to be undisputed that W.L. never saw Mr. Hicks, but, she has testified to her perception that her attacker was still present when the police arrived. Therefore, defense counsel may not ask W.L. for her ultimate opinion on whether Mr. Hicks is her rapist or whether she can identify him as such, because those answers would require inferential leaps best left to the jury to consider in combination with all the other evidence. Without knowing the exact contours of W.L.'s testimony, we are hesitant to draw harsher lines at this stage. We will revisit this issue at trial if needed.

        c.    <u>Paralegal memo</u>. Defendants intend to use Dylan Reichman's testimony and memorandum for impeachment only. We cannot decide at this stage whether such use would be appropriate. Given what we know now, the Reichman memorandum will not be admissible for defendants' asserted reason — to impeach a claim that the DAO made a finding of actual innocence or that Mr. Hicks was "exonerated" — if Mr. Hicks does not make such a claim. DI 344 at 4. But the memorandum *could* be admissible if Mr. Hicks or another witness opens the door. *See United States v. Davis*, 183 F.3d 231, 256 (3d Cir. 1999) (describing the "curative admissibility" doctrine, i.e., "opening the door"), *amended*, 197 F.3d 662 (3d Cir. 1999); *United States v. Greenidge*, 495 F.3d 85, 99-100 (3d Cir. 2007) (describing impeachment

by contradiction under Rule 607).  Should that happen, we will deal with admissibility, including any hearsay objections, then.[6]

5.        Mr. Hicks's motion *in limine* to exclude character evidence and prior bad acts (DI 339) is **GRANTED in part and DENIED in part without prejudice.**

            a.        <u>Criminal convictions.</u> We grant the motion as to Mr. Hicks's criminal history.[7]  Defendants argue that Mr. Hicks's 1999 robbery conviction is admissible under both Rule 404(b) and Rule 609.

                    1.        To be admissible under Rule 404(b), evidence must: "(1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010); *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 189 (3d Cir. 2000).  "Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has the burden of demonstrating [the evidence's] applicability." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (internal quotations omitted).  At the outset, we note that admitting the robbery conviction poses an obvious and significant risk of unfair prejudice to Mr. Hicks.  The jury here could believe that Mr. Hicks has a propensity towards breaking the law, in conformity with his prior conviction.  *See Sharif v. Picone*, 740 F.3d 263, 273 (3d Cir. 2014).

---

[6] At the pretrial conference, the parties indicated that they may be willing to reach an agreement about how to frame the DAO's vacatur decision before the jury.  A resolution on this issue would minimize the need for evidentiary detours like this one and save the parties' time for more pressing issues.

[7] Albeit a bit far-fetched, Mr. Hicks could theoretically open the door here if he testified on direct that he had no criminal history.

2.      First, defendants argue that the robbery conviction, for which Mr.

Hicks was on parole at the time of the sexual assault, is relevant to state of mind because he

would not have been inclined, as a parolee, to insert himself into an ongoing crime.  Given that

defendants intend to claim that Mr. Hicks committed the assault, this chain of logic provides

weak support for their theory of the case.[8]  Any probative value is substantially outweighed by

the danger of unfair prejudice under Rule 403.

3.      Second, defendants assert that Mr. Hicks's status as a parolee

shows his motive not to cooperate with the police (by fleeing and concocting a story of

innocence).  Though a closer call, the conviction (or even fact of parole status) is not admissible

for this purpose either.  Again, the use does not fit with defendants' theory of the case.  The

probative value of Mr. Hicks's parole status to show motive is diminished by the fact that

defendants will already offer evidence that officers saw Mr. Hicks attacking the victim and

confronted him when he was on top of her.  Being caught in the act of rape provides ample

motive to flee or refuse to cooperate.  *See United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir.

1996) (as part of Rule 403 balancing, the court should consider "the actual need for that evidence

in view of the contested issues and the other evidence available to the [opposing party]" (quoting

*United States v. Cook*, 538 F.2d 1000, 1003 (3d Cir. 1976))); *cf. Robinson v. Banning*, No. 20-

5442, 2021 WL 5631755, at *4 (E.D. Pa. Nov. 30, 2021) ("The probative value of these

---

[8] *See United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014) ("We have explained that the government must . . . proffer a logical chain of inference[s] *consistent with its theory of the case.*" (internal quotations omitted)); Fed. R. Evid. 401 (stating that evidence is relevant if it has a tendency to make more or less probable a fact that "is of consequence in determining the action").  Though parole status could make Mr. Hicks less likely to insert himself into an ongoing crime, this inference does not support defendants' theory that Mr. Hicks committed the rape.

convictions is further diminished by the fact that Robinson's credibility will already be challenged by his robbery conviction.").  The probative value is substantially outweighed by the risk of unfair prejudice.[9]

4.      Third, defendants argue that the robbery conviction is admissible because it was part of the evidence at Mr. Hicks's underlying criminal trial.  As part of his fabrication of evidence claim, Mr. Hicks must prove causation, i.e., that there is reasonable likelihood that, without the use of the fabricated evidence, he would not have been convicted. *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).[10]  We understand defendants' chain of logic to be that because the criminal jury heard evidence of Mr. Hicks's burglary conviction, they were more likely to convict him, and thus it is more likely that he would have been convicted even without the allegedly fabricated evidence.  This may be sufficient for Rule 404(b), but defendants still must contend with Rule 403.[11]  As we understand it, the robbery conviction was used in the criminal trial for impeachment purposes only (and the judge instructed the jury accordingly); it did not constitute affirmative evidence of rape.[12]  Therefore, the probative value of the evidence, in assessing whether the criminal jury would still have convicted Mr. Hicks, is

---

[9] Defendants' supplemental brief in opposition (DI 363) does not change our conclusion under Rule 403.

[10] And for his deliberate deception claim, Mr. Hicks must show that defendants concealed and/or suppressed relevant and *material* evidence.  *Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021).

[11] Defendants provide no authority for their position that a jury in a fabrication of evidence case must hear "the balance of the evidence adduced" at the underlying criminal trial to appropriately assess causation.  DI 345 at 6.  Rule 403 still applies.

[12] If this understanding is incorrect, we will hear defendants out.

quite limited.[13]  And admitting the conviction for this purpose presents a serious risk of confusion and unfair prejudice.  At a minimum, if we admit the conviction, we may also need to admit the jury instructions from the underlying criminal trial.  We are reluctant to further overcomplicate the jury's job in this manner.  The dangers of unfair prejudice and confusing the jury substantially outweigh the probative value of the evidence.

   5. Fourth, defendants argue that the robbery conviction is admissible because it helped guide Detective Campbell's investigation; the conviction supports their defense that they had probable cause to arrest and prosecute Mr. Hicks.  But Mr. Hicks informs us that he has dropped his malicious prosecution claim, so he no longer needs to prove a lack of probable cause.  With this change, defendants have failed to specify the non-propensity purpose of the robbery conviction as it relates to Detective Campbell's investigation.[14]

   6. Finally, defendants have not adequately shown that the robbery conviction is admissible under Rule 404(b) to show damages.  They provide no authority for the assertion that the jury must learn about the robbery conviction because it increased Mr. Hicks's sentencing guidelines for his rape conviction.  *See* DI 345 at 8-9.  For damages, the length of the sentence is far more material than the reasons for the sentence.  Even if this is a proper non-propensity purpose, it is substantially outweighed by the risk of unfair prejudice to Mr. Hicks.

---

[13] Mr. Hicks will testify in this case, so the jury will have ample opportunity to assess his credibility on their own.

[14] In other words, defendants have not shown how the conviction supports their defense against the deliberate deception or fabrication of evidence claims within the constraints of Rule 404(b).

7.    Moving to Rule 609, the 1999 robbery conviction is over ten years old and "presumptively excluded" unless its probative value "substantially outweighs" its prejudicial effect.  Fed. R. Evid. 609(b); *Caldwell*, 760 F.3d at 267.[15]  This heightened balancing test is not satisfied here.  Mr. Hicks's testimony and credibility is undeniably important to this case.  But the robbery conviction is over twenty-five years old, and robbery is not a crime involving fraud or dishonesty.  *See Walker v. Horn*, 385 F.3d 321, 334 (3d Cir. 2004).  On balance, the probative value does not substantially outweigh the risk of unfair prejudice.

b.    <u>Domestic violence history and parole summary report</u>.  It is possible that testimony concerning Mr. Hicks's history of domestic violence,[16] or his parole summary report,[17] could be admissible for impeachment purposes only.  Without hearing the testimony of Mr. Hicks or his witnesses, or hearing from defendants exactly what the nature of the proposed

---

[15] Rule 609(b) states: "[i]f more than 10 years have passed since the witness's' conviction or release from confinement for it, whichever is later" then "[e]vidence of the conviction is only admissible if : (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  The Third Circuit has provided four factors to consider when weighing probative value and prejudice: "(1) the nature of the conviction; (2) the time elapsed since the conviction; (3) the importance of the witness's testimony to the case; and (4) the importance of credibility to the claim at hand."  *Sharif*, 740 F.3d at 272.

[16] Defendants reference Rule 609 in their response.  DI 345 at 11.  As far as we know, Mr. Hicks was not criminally convicted for domestic violence.

[17] Defendants stated at the pretrial conference that they intend to use the parole summary report for impeachment purposes only when cross-examining Mr. Hicks.  If the parole summary report is admitted for impeachment (which we do not decide now), we would require defendants to omit any mention of "parole" or prior convictions when referring to the report.

impeachment in response would be, we cannot decide these issues now.  We deny these aspects of the motion without prejudice.

    c. <u>Other matters</u>.  Defendants may not offer any evidence that Mr. Hicks had a condom in his pocket on the night of the sexual assault.  The probative value of this evidence, if any, is extremely limited.  There has never been an allegation that the perpetrator of the assault used a condom during the attack.  Though the risk of unfair prejudice is not significant, it substantially outweighs the meager probative value.  At the final pretrial conference, defense counsel could not clearly articulate what exactly the 2002 mental health evaluation document is, much less its precise relevance to this case.[18]  And we agree with Mr. Hicks that the reference in this document to "Antisocial Personality Disorder" — particularly when no disclosed expert has rendered this diagnosis — has very limited probative value but poses a high risk of unfair prejudice.  We grant Mr. Hicks's motion as to these pieces of evidence.  We also grant the remainder of his motion as unopposed.[19]

    6. We will address the remaining motions *in limine* (DI 334, 329, 330, 331) together. These motions address evidence of misconduct within the PPD, including individual defendants' IA histories.   We rule as follows: Mr. Hicks's motion *in limine* to admit evidence of IA investigations and other cases involving defendants' misconduct (DI 334), individual defendants' motion *in limine* to preclude prior bad acts and internal affairs incidents (DI 329), and the City's

---

[18] Defendants stated at the pretrial conference that they do not intend to show that Mr. Hicks has Antisocial Personality Disorder.

[19] The rest of the motion concerns Mr. Hicks's 1993 and 1994 convictions, his sexual history, his mother's criminal history, his prior litigation, and his litigation loans.

motion *in limine* to preclude certain *Monell* evidence (DI 330) are **GRANTED in part and DENIED in part.**[20]   Defendants' joint motion *in limine* to preclude purported allegations of misconduct (DI 331) is **DENIED without prejudice**.   However, we reserve decision on several issues.

        a.    <u>Individual liability.</u>  Mr. Hicks may not admit defendants' IA investigations under Rule 404(b) to show motive, opportunity, or *modus operandi*.  Mr.  Hicks has not adequately explained how evidence concerning past IA investigations "fits into a chain of logical inferences" to show motive and opportunity in a manner that is relevant.  *Becker*, 207 F.3d at 191; *Caldwell*, 760 F.3d at 278.[21]  In addition, evidence of incidents pre- and post-dating Mr. Hicks's conviction is not admissible to show Officer Ellis's *modus operandi* to "cover up for officer misconduct through false claims the victim was engaged in misconduct."  DI 334 at 8.  In *Becker*, the Third Circuit held that the district court erred by admitting evidence of similar prior employment termination events because (1) identity was not at issue; and (2) the similarities between the events did not show a "unique or distinctive *modus operandi*."  *Becker*, 207 F.3d at 199.[22]  Here, too, the identity of the officer who allegedly planted a gun on Mr. Hicks is not at

---

[20] Denials as to some pieces of evidence are without prejudice because they are dependent on additional argument or how the testimony comes in, whereas others are final. Should the parties have questions about this, we will address them.

[21] Specifically, we struggle to see how a jury can infer from prior bad acts where an officer was not disciplined or disciplined inadequately that he developed a motive to *avoid* discipline.  Similarly, how does a motive to *avoid* discipline make it *more* likely that defendants would engage in misconduct?  Finally, Mr. Hicks has not clearly articulated how specific prior instances created an opportunity to engage in misconduct in this case.

[22] *See also Thompson v. Mancuso,* No. 08-3638, 2009 WL 2616713, at *5-6 (E.D. Pa. Aug. 25, 2009) (prior instances of officer misconduct did not show *modus operandi* because

issue, and Mr. Hicks has not shown sufficiently similar incidents involving Officer Ellis to establish a *modus operandi*.[23]  As for whether prior IA investigations are admissible to show defendant officers' knowledge and state of mind, it is a closer call.  Generally, defendants' argument is well taken.  We cannot say that *all* prior IA investigations into defendant officers are "plainly admissible" to show that they knew or had the state of mind that they could get away with misconduct towards Mr. Hicks.  *See* DI 346 at 4.  The requisite analysis is more tailored than that, and Rule 403 is a high bar in this context.  That said, we will allow Mr. Hicks to address this issue again by urging admissibility of specific evidence with precision.[24]  He should

---

identity not at issue and events were not similar enough);  *Rosser v. Liciardello,* No. CIV.A. 05-514, 2005 WL 3470647, at *7 (E.D. Pa. Dec. 14, 2005) (facts "too dissimilar" to show *modus operandi* on part of police officer).

[23]  The O.R., A.A., and Adams incidents all involved circumstances in which Officer Ellis confronted an active individual, and in the case of O.R., shot him.  *See* DI 334 at 6, 8-10. In this case, Officer Ellis allegedly found the gun on Mr. Hicks after Mr. Hicks was already shot three times.  Officer Ellis was off duty for the A.A. incident, which was not the case here.  Mr. Hicks also points to a 2006 investigation in which Officer Ellis allegedly lied about losing his service weapon, but he has never claimed in this matter that he lost his service weapon.  *Id.* at 10.  We do not think the similarities are "unique or distinctive" enough to establish *modus operandi*.  *Becker*, 207 F.3d at 199; *see Thompson,* 2009 WL 2616713, at *5 (not enough that incidents were "only similar to the extent that they involved some of the same officers, excessive force was allegedly used, and that Defendants allegedly arrested the civilians to cover up their own use of excessive force").

[24]  Courts routinely exclude evidence of officers' IA histories and disciplinary records because the risk of unfair prejudice is significant.  *See, e.g.*, *Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 627 (E.D. Pa. 2011) (holding that prior complaints against officers are not admissible against the individual officers because they show propensity and are unduly prejudicial); *cf. Thompson,* 2009 2616713, at *7 (collecting cases where courts refused to admit evidence of prior misconduct to prove intent in excessive force matters).

be prepared to discuss the specific prior IA incidents that he intends to admit and the precise chain of logic that will allow a jury to infer knowledge or state of mind.

    b.  *Monell* liability. We are unprepared at this stage to rule on the entirety of the parties' motions regarding *Monell* liability because we lack information about certain pieces of evidence. We will provide general guiding principles and address specific categories of evidence.

      1.  Defendants make several arguments that look sensible but are difficult to resolve with precision because Mr. Hicks's *Monell* claim is quite broad, and defendants made little effort at summary judgment to narrow it.[25] Similarly, the time to challenge the bases for or scope of Russell Fischer's expert opinion has passed. The parties will litigate the *Monell* claim, as it stands, at trial, and Mr. Fischer may rely on the facts or data outlined in his report to offer an expert opinion — as usual without necessarily sharing underlying inadmissible evidence with the jury. *See* Fed. R. Evid. 703, 705. However, we read Third Circuit authority to generally limit admissible *Monell* evidence — and in particular, evidence post-dating the plaintiff's arrest or conviction — to that from a relevant timeframe and of a similar factual nature to the conduct at issue. *See Watson v. Abington Twp.*, 478 F.3d 144, 157 (3d Cir. 2007) (evidence of past racial profiling was "too general to sustain [plaintiff's] claims" and "not from the relevant time-frame"); *Forrest v. Parry*, 930 F.3d 93, 115-17 (3d Cir. 2019) (district court abused discretion by excluding prior complaint against officer that occurred a few months before the plaintiff's experience and concerned "analogous" conduct, as well as

---

[25] Rather, defendants took the approach of attacking a narrow, but incorrect, articulation of the *Monell* claim.

post-arrest complaints that came in a "narrow period of time and [were] of a similar nature");

*Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) (post-arrest complaints that "came in

a narrow period of time and were of similar nature"); *see also Torain v. City of Philadelphia*, No.

14-1643, 2023 WL 5338994, at *3 (E.D. Pa. Aug. 18, 2023) (excluding evidence of alleged

misconduct "of an entirely different nature" that occurred several years after plaintiff's arrest).

We will not impose categorical temporal restrictions on admissible evidence, but the *Monell*

claim is not a free-for-all, even under Mr. Hicks's expansive theory.  Admissibility depends on

the nature of the evidence at issue.

        2.      As to specific categories of evidence, we order the following:

        A.      We grant the City's motion (DI 330) as unopposed for the

following evidence: 1977 Philadelphia Inquirer article by Neumann & Marimow; materials on

1980s injunctions and related evidence; 1990s 39th District Scandal and related evidence;

Philadelphia's City Payer, "Operation Whitewash"; 2015 DOJ Collaborative Reform Initiative

report; 2017 Deposition of Captain Francis Healy; Four takeaways from the 'Predator in Blue'

investigation into homicide detective Philip Nordo; and *Shaurn Thomas v. City of Philadelphia*

report.  Mr. Hicks represented that he does not intend to admit these items into evidence.

        B.      The following IAO reports are admissible for *Monell*

liability: IAO Disciplinary System Report, December 2003 and IAO Officer Involved

Shootings, February 2005.  These reports concern the relevant timeframe[26] and describe

---

[26] The 2003 IAO report examined the PPD's response to the March 2001 IAO report.  *See* DI 259-12 at 220 (ECF).  This intervening period (March 2001 through December 2003) includes the months leading up to Mr. Hicks's arrest and the time between his arrest and conviction.  The 2005 IAO report was a study of firearm use by PPD officers from 1998 through

problems with the disciplinary system and officer-involved shooting investigations, including

incidents where officers fabricated evidence and engaged in cover-ups.  The 2001 Mayor's Task

Force Report is admissible for similar reasons.

        C.     Evidence concerning the Victor Adams case, including his

acquittal, is admissible to show notice for *Monell* liability.  Mr. Adams was arrested a few years

before Mr. Hicks, and he alleged misconduct by Officer Ellis of a similar nature.[27]  We do not

decide now whether Mr. Hicks may offer evidence of the Adams case for a reason other than

notice, or whether such evidence would constitute inadmissible hearsay.  The parties may raise

this issue again if necessary.

        D.     We reserve decision on the following items or categories of

evidence because we lack information: IAO Enforcement of Narcotics Laws, July 2002; 1987

report titled "Philadelphia and Its Police: Toward a New Partnership – A Report by the

Philadelphia Police Study Task Force"; Policies, practices, customs, alleged deficiencies, or

assessments unrelated to the issue of fabrication of evidence at a criminal trial; IA investigations

occurring prior to November 27, 1996 or after November 27, 2001; and evidence concerning

prior litigation and consent decrees that Mr. Hicks intends to admit into evidence.  Mr. Hicks

---

2003.  *Id.* at 275 (ECF).  Though it was published in 2005, the report concerned incidents that occurred at most three years before Mr. Hicks's arrest and one year after his conviction.  *See Torain*, 2023 WL 5338994 at *3 n.4 (IAO reports published in 2002 and 2003 admissible in matter stemming from 2001 arrest).

[27] Defendants specifically take issue with admitting evidence of Mr. Adams's acquittal, which occurred in 1999.  We think it relevant to notice, and the danger of unfair prejudice to defendants does not substantially outweigh its probative value.

should be prepared to discuss the specific items of evidence that he intends to admit, and the

City should be prepared to discuss any bases for exclusion.

        c.     <u>Impeachment.</u>  Subject to the limitations of Federal Rule of Evidence

608(b), Mr. Hicks may cross examine defendants about specific instances of misconduct if

probative of their character for untruthfulness.  We can address at trial whether specific instances

of misconduct meet Rule 608's criteria.  However, if the witness denies the prior conduct,

plaintiff's counsel is not permitted to use extrinsic evidence to refute the denial.[28]

**MURPHY, J.**

---

[28] The Third Circuit has stated that the "core concerns" or Rule 608(b)'s extrinsic evidence ban "are not implicated" when "the extrinsic evidence is obtained from and through examination of the very witness whose credibility is under attack."  *Carter v. Hewitt*, 617 F.2d 961, 970 (3d Cir. 1980).  However, we read *Carter* to allow counsel to use evidence of alleged acts, even if otherwise extrinsic, to impeach the credibility of the witness on the stand *if the witness concedes the alleged acts*.  *See id.* (If the "witness has denied, rather than admitted, the acts used to impeach him" then "extrinsic evidence may not be used to refute the denial"); *United States v. Sullivan*, 803 F.2d 87, 91 (3d Cir. 1986); *see also United States v. Davis*, 197 F.3d 662, 663 n.1 (3d Cir. 1999) ("If he denies that such events took place, however, the government cannot put before the jury evidence that he was suspended or deemed a liar by Internal Affairs," as doing so would be "tucking a third person's opinion about prior acts into a question asked of the witness who has denied the act" (internal quotations omitted)).  Whether that situation will arise here remains to seen.