**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERMAINE HICKS,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action** |
| | : | **No. 2:22-cv-0977** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this 26th day of August 2025, upon consideration of the Rule 50(a) Motion for Judgment as a Matter of Law filed on behalf of Defendants, the City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, as personal representative of the estate of Brian Smith, deceased, the Memorandum of Law in support thereof, and any response thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED.

BY THE COURT:

_____

JOHN F. MURPHY, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **TERMAINE HICKS,** | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action** |
| | : | **No. 2:22-cv-0977** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants, the City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, as personal representative of the estate of Brian Smith, deceased ("Moving Defendants"), hereby file this Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a).

Moving Defendants hereby incorporate by reference the attached Memorandum of Law and respectfully request that this Court enter judgment in their favor as to Plaintiff's claims for the reasons set forth therein.

Respectfully submitted:

/s/
Benjamin T. Jackal
Raymond Escobar
Daniel V. Cerone
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

*Counsel for City of Philadelphia, Arthur*
*Campbell, and Mary Bridget Smith,*
*Administrator of the Estate of Brian Smith*

Augst 25, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TERMAINE HICKS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 2:22-cv-0977 |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW**
**FILED ON BEHALF OF DEFENDANTS, CITY OF PHILADELPHIA, ARTHUR**
**CAMPBELL AND MARY BRIDGET SMITH, AS PERSONAL REPREPSENTATIVE OF**
**THE ESTATE OF BRIAN SMITH, DECEASED**

Defendants, the City of Philadelphia ("City"), Arthur Campbell, and Mary Bridget Smith, as personal representative of the estate of Brian Smith, deceased ("Moving Defendants"), by and through the undersigned counsel, respectfully move pursuant to Federal Rule of Civil Procedure 50(a).  Plaintiff brings claims of conspiracy against Defendants Campbell and Smith, a claim of fabrication against Defendants Campbell and Smith, a claim of concealing or suppressing evidence against Defendant Campbell, and a municipal liability claim against the City pursuant to *Monell*. *Hicks v. City of Philadelphia*, No. CV 22-977, 2025 WL 1448205, at *5 (E.D. Pa. May 20, 2025). For the reasons set forth more fully below, Moving Defendants respectfully request that this Court enter the proposed order and dismiss Plaintiff's claims against them.

## I.    BACKGROUND

On November 27, 2001, police encountered Plaintiff Termaine Hicks in the act of raping the victim and, when he brandished a firearm, shot him three times.  On February 27, 2003, he was convicted by a jury of rape and related offenses. On December 16, 2020, Plaintiff's convictions were vacated. Hicks proceeds to trial against Defendants the City of Philadelphia, Martin Vinson, Robert Ellis, Arthur Campbell, Dennis Zungolo, and Mary Bridget Smith, as personal representative of the Estate of Brian Smith, primarily on claims that these police officers fabricated evidence during the investigation of the crime.

## II.    LEGAL STANDARD

"[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing FED. R. CIV. P. 50(a)). Federal Rule of Civil Procedure 50(a) empowers a district court to grant "judgment as a matter of law if it finds that a reasonable jury would not have a *legally sufficient* evidentiary basis to find for the [nonmoving] party on that issue." *Dupree v. Younger*, 598 U.S. 729, 737 (2023) (cleaned up and emphasis in original). The legal standard applicable to a Rule 50(a) motion for judgment as a matter of law "mirrors the standard" applicable to a Rule 56 motion for summary judgment, "such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). Accordingly, when a party has been fully heard on an issue during a jury trial, a district court may enter judgment on a claim or defense if there is no *genuine dispute* as to any *material fact* and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 50(a)). Material facts are those which "might affect the outcome of the suit under the governing law[,]" and a genuine dispute over such facts exists if "a fair-minded jury could return

a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Judgment as a matter of law must be entered if "there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation omitted).

### A.    Deliberate deception

Plaintiff pursues two theories of deliberate deception: a claim that Campbell and Smith fabricated evidence against him and a claim that Campbell concealed or suppressed evidence. The Third Circuit first discussed the requirements for deliberate deception claims in *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014). In *Halsey*, as to fabrication, the Court explained that it "has been an axiomatic principle of our justice system that 'those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.'" *Id.* at 296 (quoting *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004)). The Third Circuit has, since *Halsey*, explained that deliberate suppression of evidence is a related due process claim. *See Dennis v. City of Phila.*, 19 F.4th 279, 291 (3d Cir. 2021). More than merely a claim pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), for failure to produce exculpatory evidence, a deliberate suppression of evidence claim (also referred to as a "deliberate deception" claim) "must go beyond the failure to disclose evidence and arises when imprisonment results from the *knowing* use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction." *Id.*

The Third Circuit has recognized that "there is a notable bar for evidence to be considered 'fabricated.'" *Black v. Montgomery Cty.*, 835 F.3d 358, 372 (3d Cir. 2016). "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295. Instead, a "fabrication-of-evidence claim requires

persuasive evidence [the defendant] formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus v. Union Cty.*, 73 F.4th 185, 194–95 (3d Cir. 2023). This is a "stringent" intent requirement. *Mervilus*, 73 F.4th at 194. This requirement is such a high burden that "it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Halsey*, 750 F.3d at 295. A "he said, she said" dispute cannot support a fabricated evidence claim. *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017) (holding that criminal defendant's allegation that police officer's conclusions regarding her in his police report were not true was not enough to support a fabrication of evidence claim).

As with a *Brady* claim, fabrication and suppression claims have a materiality element. That is, in addition to showing that certain evidence against him was "deliberate[ly] fabricated"—or that certain evidence was knowingly concealed "to create false testimony"—a plaintiff must show that the evidence at issue was material to his being criminally convicted. *Halsey*, 750 F.3d at 294 & n.19; *Dennis*, 19 F.4th at 291. To satisfy this materiality element, a plaintiff must show that "there is a reasonable likelihood that, without the use of the [fabricated] evidence"—or without the false testimony created by the deliberate suppression of evidence—he "would not have been convicted." *Halsey*, 750 F.3d at 294.

Similarly but separately, because "§ 1983 creates a species of tort liability," *Heck*, 512 U.S. at 483 (quoting *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986)), a § 1983 claim, like a common-law tort claim, requires a plaintiff to demonstrate causation—both in-fact causation and proximate causation. *See Lamont v. New Jersey,* 637 F.3d 177, 185 (3d Cir. 2011) ("Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation."). Thus, a plaintiff asserting § 1983 claims for fabrication or deliberate suppression of evidence must

show not only materiality—that is, a *reasonable probability* that, absent the fabrication or deliberate suppression of evidence, the plaintiff would not have been convicted—the plaintiff must also show that the fabrication or deliberate suppression of evidence was, *in fact*, the cause of the injury he claims (here, Hicks's rape conviction).  So, as the First Circuit has observed in the context of a § 1983 claim that evidence was withheld in violation of *Brady*, this factual "causation inquiry essentially replicates the materiality inquiry with a heightened burden of proof." *Drumgold v. Callahan*, 707 F.3d 28, 49 (1st Cir. 2013). That is, "[h]aving already shown [by satisfying the materiality requirement] a reasonable probability that he would not have been convicted but for the withholding of evidence, the plaintiff must then make the same showing by a preponderance of the evidence." *Id.*; *see also Clark v. Louisville-Jefferson Cnty. Metro Gov't*, 130 F.4th 571, 592 (6th Cir. 2025) (explaining that "plaintiffs asserting *Brady* claims under § 1983 may well have to establish more than the materiality standard (a 'reasonable probability' of a different outcome) . . . . [T]hey may instead have to show 'by a preponderance of the evidence' that the jury would have acquitted them if the defendant had disclosed the exculpatory evidence.").

In sum, to succeed on his § 1983 claims for fabrication and deliberate suppression of evidence, Hicks must prove both (1) materiality: that there is a "reasonable likelihood" that, without the use of the fabricated evidence—or without the false testimony created by the deliberate suppression of evidence—he would not have been convicted; and (2) causation: that the fabrication or deliberate suppression of evidence was, in fact, the reason he was convicted; that without it he would have been acquitted.

### B.    *Conspiracy*

To establish a claim for conspiracy under section 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance

of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (citing *Gale v. Storti*, 608 F.Supp.2d 629, 635 (E.D. Pa. 2009)). "Agreement is the *sine qua non* of a conspiracy." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). It is essential that a plaintiff specifically allege an agreement to carry out the alleged chain of events. *Id.* "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id. See Hammond v. Creative Financial Planning Org.*, 800 F.Supp. 1244, 1249 (E.D. Pa. 1992) ("to state a claim for conspiracy under § 1983, plaintiff must make 'factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events.'") (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)).

## III.    ARGUMENT

### A.    Plaintiff's fabrication claim against Detective Campbell fails.

Plaintiff's fabrication claim against Detective Campbell points to numerous allegations with respect to his investigation. In particular, Plaintiff claims the detective (1) repeated false accounts of officers regarding the recovery of the gun and observations of Hicks raping the victim; (2) produced these accounts to the prosecution; (3) "viewed a surveillance video showing that the perpetrator was wearing a light-colored hoodie and pistol-whipped the victim;" (4) collected Hicks's clothing from the hospital that did not include a gray hoody; (5) spoke to the victim who could not identify the perpetrator; (6) uncovered "zero explanation" for how Officer Valerie Brown's gun ended up with Hicks; and (7) failed to investigate the possibility of gun planting. *Hicks v. City of Philadelphia*, No. CV 22-977, 2025 WL 1448205, at *13 (E.D. Pa. May 20, 2025).

The cited evidence does not establish that Detective Campbell "formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth." *Mervilus*, 73 F.4th at 194–95. Plaintiff adduced no evidence to suggest that Detective Campbell knew or should have known that the officers provided false statements with respect to their observations of Plaintiff raping the victim. The cited officer statements were corroborated by the statements of the victim, who told Detective Campbell that her assailant was still on top of her when the police arrived and was the same person the police shot moments later. The officer statements were likewise corroborated by statements of neighbors, who heard the officers repeatedly tell Plaintiff to show his hands before the shooting.

Mere inconsistencies in the evidence—such as those Plaintiff points to—cannot form the basis of a fabrication claim against a detective. It is not a detective's job to resolve credibility contests. Detectives are not required to continue to investigate once probable cause is established. E.g., Lynn v. Christner, 184 F. App'x 180, 184 (3d Cir. 2006) ("The defendants were not required to undertake an exhaustive investigation in order to validate the probable cause that already existed in the officers' minds."). They are not required to rule out every imaginable innocent explanation for evidence before arresting a criminal suspect. E.g., D.C. v. Wesby, 583 U.S. 48, 61 (2018) ("probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."). Prosecutors have discretion to determine whether to bring charges based on the evidence presented by the police. E.g., United States v. Esposito, 968 F.2d 300, 305–06 (3d Cir. 1992). Criminal defense attorneys have an ethical obligation to investigate their clients' claims and obtain evidence that may aid their defense. See, e.g., Strickland v. Washington, 466 U.S. 668, 691 (1984) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). And, as the Court instructed at the beginning

of this trial—it is the sole province of the jury to resolve inconsistencies and decide what testimony to credit. E.g., Third Circuit Model Jury Instruction 1.7 ("In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. 'Credibility' means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it."). Plaintiff's formulation of fabrication claims would discard these well-established institutional roles and place the onus solely on the detective to determine the truth.[1] In Plaintiff's telling, any prosecution that does not end in a conviction would expose the detective to liability.

It is not surprising that courts have not found fabrication claims satisfied on the basis of inconsistent evidence that police disclosed to the prosecution and defense. The relevant case law from the Third Circuit shows that fabrication is established where police manufacture evidence or proffer evidence they know to be false. See, e.g., Mervilus v. Union Cnty., 73 F.4th 185 (3d Cir. 2023) (genuine issue of material fact existed as to plaintiff's fabrication claim, where defendant-detective conducted a polygraph test of the plaintiff, a criminal suspect, using a method of polygraphy that relied on his subjective assessment of whether the plaintiff was lying and that detective knew to be invalid and unreliable; the detective nevertheless testified at the plaintiff's criminal trial that he was lying as a result of his examination); Dennis v. City of Philadelphia, 19 F.4th 279 (3d Cir. 2021) (concealment and fabrication properly alleged where detectives withheld statements of witness who said she couldn't identify assailants but later said she recognized them

---

[1]     Criminal convictions may rest on evidence that is inconsistent and contradictory. See, e.g., Commonwealth v. Brown, 52 A.3d 1139, 1171 (2012). And appellate courts do not vacate criminal convictions where verdicts are inconsistent. United States v. Powell, 469 U.S. 57, 66 (1984). Where evidentiary inconsistencies do not preclude a finding of proof beyond a reasonable doubt, it would be entirely anomalous to fault detectives for proceeding in the face of evidentiary inconsistencies when the required showing to make an arrest is the much lower probable cause standard.

as students of school plaintiff did not attend, signed statement from another person confessing to involvement in murder, and a time-stamped receipt that corroborated witness who testified that Dennis elsewhere at the time of the murder; fabrication claim established where detectives claimed they recovered clothing matching eyewitness descriptions from the plaintiff's home but the clothing disappeared before trial and they coerced a putative eyewitness into falsely testifying that he saw Plaintiff with a gun the night of the murder); <u>Black v. Montgomery Cnty.</u>, 835 F.3d 358, 361–62 (3d Cir. 2016) (fabrication established where fire investigator concluded an electrical fire was arson; disassembled and discarded the outlet that showed the fire was electrical; intentionally misrepresented his findings that a wire had been cut 18 inches from the outlet, suggesting the source of the fire could not have been electrical); <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 280 (3d Cir. 2014) (finding a genuine issue of material fact as to whether detectives were liable for fabrication, where plaintiff was a homicide suspect who had 6th grade education, IQ of 68, and limited reading ability; detectives interrogated him for hours over multiple days, repeatedly confronted him with evidence they knew to be false, as a result of which plaintiff eventually signed a confession prepared by the detectives that included crime scene details he could not have known—suggesting police created it; plaintiff's false confession was the only evidence linking him to the crime and resulted in his conviction).

Other circuits have likewise found fabrication where the defendants engage in extreme misconduct. <u>See, e.g.</u>, <u>Limone v. Condon</u>, 372 F.3d 39, 44 (1st Cir. 2004) (fabrication claim properly alleged where defendants "purposefully suborned false testimony from a key witness" and "suppressed exculpatory evidence in an effort both to cover up their own malefactions and to shield the actual murderers"); <u>Cosenza v. City of Worcester, Massachusetts</u>, 651 F. Supp. 3d 311 (D. Mass. 2023) (denying defendant's motion for a new trial where fabrication supported by

evidence suggesting detective falsely testified at plaintiff's criminal trial that he searched victim's apartment and did not locate exculpatory evidence which the victim found one month after crime).

Accordingly, because Plaintiff has failed to adduce evidence that Detective Campbell formulated or submitted false evidence willfully, knowingly, or with a reckless disregard for its truth, he is entitled to entry of judgment in his favor as to Plaintiff's fabrication claim.

### B. Plaintiff's deliberate deception claim against Detective Campbell fails.

Plaintiff's suppression claim is based on his contention that Detective Campbell deliberately suppressed a "continuous" video that he viewed at St. Agnes Hospital on the morning of the rape. Hicks v. City of Philadelphia, No. CV 22-977, 2025 WL 1448205, at *14 (E.D. Pa. May 20, 2025).

It is uncontradicted that Detective Campbell worked diligently to produce a playable version of the video for months before the start of the trial but was unable to do so because of circumstances outside of his control. Moreover, while the jury was deliberating, Detective Campbell produced a video to Plaintiff's criminal defense attorney and the prosecutor that was viewable at regular three second intervals. Thus, to prevail on Plaintiff's claim of suppression based on the video, he would have to adduce evidence that (1) Detective Campbell viewed a continuous video at the hospital on the morning of the assault that showed someone other than Plaintiff entering and leaving the loading dock area; (2) confiscated that continuous video; (3) edited the video to remove any indication that the actual perpetrator; and (4) produced the video in three second increments that were inculpatory and not exculpatory.

Plaintiff has not introduced any evidence that the continuous video was exculpatory, *i.e.*, that it showed anyone leaving the loading dock area before he arrived. Plaintiff has not adduced any evidence to dispute Detective Campbell's account of his diligent efforts to obtain a playable

copy of the video or the fact that the video was not playable only because the security office at St. Agnes Hospital changed video formats after Detective Campbell confiscated the video.

Further, the jury has heard no evidence suggesting that Detective Campbell could have edited a video to transform it from a continuous video to one that plays at three second intervals, or that such deliberate manipulation is even possible. Absent evidence that Detective Campbell could have manipulated the video that he produced to Plaintiff, the only proof Plaintiff offers to support this claim is his own conjecture that the continuous video would be exculpatory. See Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4th Cir. 1958) ("it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture."). Without more, no reasonable jury could find that he proved his fabrication claim against Detective Campbell. See Halsey, 750 F.3d at 294 (to satisfy this materiality element, a plaintiff must show that "there is a reasonable likelihood that, without the use of the [fabricated] evidence"—or without the false testimony created by the deliberate suppression of evidence—he "would not have been convicted."). Doing so would require a jury to make the *unreasonable* inferences that not only did Detective Campbell have the technical capabilities to make such edits, but that he was lucky enough that the stills extracted from the video at identical time increments coincidentally excluded all exculpatory evidence.

Cases in which appellate courts have found deliberate deception claims satisfied do not depend on such speculation. See, e.g., Drumgold v. Callahan, 707 F.3d 28, 38 (1st Cir. 2013) (defendant detective withheld that he had paid benefits to prosecution's star witness (money and months of lodging); jury award based only on cash provision of $20; circuit court reversed and concluded $20 was not enough money to satisfy materiality test); Cosenza, 651 F. Supp. 3d at 317 (denying defendant's motion for a new trial where deliberate deception was supported by evidence

11

that defendant-detective bolstered victim's identification of plaintiff then lied about doing so when he testified at plaintiff's criminal trial); <u>Haley v. City of Bos.</u>, 657 F.3d 39, 50 (1st Cir. 2011) (deliberate deception established where detectives failed to disclose inconsistent statements of key witnesses for prosecution).

Thus, Detective Campbell is entitled to judgment in his favor as to Plaintiff's suppression claim because Plaintiff has failed to show that the continuous video was exculpatory or that Detective Campbell could have suppressed it in the manner described.

### C.    *Plaintiff's conspiracy claim against Detective Campbell fails.*

Plaintiff has not adduced any evidence that the detective joined in a conspiracy to frame him.  For the reasons discussed above, the mere presence contractions in officer statements (as to Plaintiff's conduct before the shooting and which officer recovered the gun) would not have placed anyone on notice of a conspiracy to frame Plaintiff for rape.  Thus, there is no evidentiary basis for concluding Detective Campbell also participated in that alleged conspiracy.

To the extent Plaintiff would point to the testimony that the detective took the investigative file home with him when he retired in 2006—four years *after* Plaintiff's conviction—that testimony does not establish a conspiracy.  It is not contested that the investigative filed contained all of the documentary evidence Plaintiff now claims establishes his fabrication claim against Detective Campbell. <u>See, e.g.</u>, <u>Hicks v. City of Philadelphia</u>, No. CV 22-977, 2025 WL 1448205, at *13 (E.D. Pa. May 20, 2025). That is, all of the witness statements Plaintiff claims were so contradictory they proved the officers were lying, were contained within the file Detective Campbell took home with him.  Detective Campbell could have destroyed that file at any time before he returned it in 2021.  Yet he took the file back to the police department when he learned officers were looking for it.  This is not the conduct of a criminal conspirator.

### D.    Plaintiff has failed to create a genuine dispute of material fact with respect to his claims against Defendant Smith.

Defendant Smith was on duty when he received a radio call of a rape in progress, with details of the alleged perpetrator in a black jacket and gray hoodie. Officer Smith arrived at the scene and briefly spoke with Justin Votta (later identified as the person who provided the information about the perpetrator's description of the black jacket and grey hoody).  He heard voices from across the street. When he approached the loading dock area, he observed Officers Zungolo and Vinson encountering a male in a black jacket and gray hoody. Officer Smith testified he saw an Asian female lying on the ground with her pants and her underpants pulled down and a black male with a black jacket and a gray hoody standing over her, looking at her. He testified that Officers Zungolo and Vinson ordered Plaintiff to take his hands out of his pockets multiples times before Plaintiff "made a quick turn towards them." Officer Smith went to the other side of the modular building, suspecting Plaintiff would come out the other side. He heard three gunshots and someone yell, "[t]he male's down!" He did not see the shooting or the recovery of the gun.

Plaintiff's fabrication claim asserts that the above testimony and earlier consistent statements were knowingly false.  In support of his claim, Plaintiff points only to his contrary testimony that he was not wearing a gray hoody on the morning of the offense and that no gray hoody was recovered.  Plaintiff has not developed any evidence that was not available to him at his 2002 criminal jury trial.  He merely asserts that the officers statements were false.   This is inadequate to sustain a fabrication claim.  Boseman, 680 F. App'x at 70 (holding that criminal defendant's allegation that police officer's conclusions regarding her in his police report were not true was not enough to support a fabrication of evidence claim).

Moreover, Plaintiff's claim of conspiracy against Officer Smith finds no logical foundation in evidence.  Officer Smith did not see Plaintiff assaulting the victim, the shooting, or the recovery

13

of the gun.  He therefore did not provide a statement that corroborated those of Officer Vinson, Zungolo, and Ellis with respect to the key aspects of the alleged conspiracy.  Absent such a statement, there is no evidence Officer Smith participated in a conspiracy to frame Plaintiff for rape.  Hammond, 800 F.Supp. at 1249 ("to state a claim for conspiracy under § 1983, plaintiff must make 'factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events.'").

### E.  Plaintiff has failed to create a genuine dispute of material fact with respect to his claims against the City of Philadelphia.

Mindful of the Court's guidance that "Defendants made little effort at summary judgment to narrow" Plaintiff's "quite broad" *Monell* claim, the City moves for dismissal of Plaintiff's *Monell* claim inasmuch as it rests on several theories.  As the Court defined them, Plaintiff proceeds against the City on four theories of *Monell* liability: "(1) an unconstitutional policy due to the PPD Commissioner's ratification of the IA file; (2) an unconstitutional custom of acquiescing to and tolerating police misconduct; (3) its failure to supervise and discipline officers more generally; and (4) its failure to supervise and discipline Officer Ellis specifically."  Hicks v. City of Philadelphia, No. CV 22-977, 2025 WL 1448205, at *16 (E.D. Pa. May 20, 2025).  Plaintiff has failed to adduce sufficient evidence to support a Monell claim on any theory.

#### i.    Plaintiff's ratification theory fails to create a material dispute of fact.

As an initial matter, Plaintiff waived the claim because he did not allege facts to support his ratification theory in his Amended Complaint.  ECF 23.  "[A] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion."  Kocher v. Larksville Borough, 926 F. Supp. 2d 579, 604 (M.D. Pa. 2013); see also Rojo v. Deutsche Bank, 487 Fed. App'x 586, 588-89 (2d Cir. 2012) (summary order) ("We have refused to address the

14

merits of claims raised for the first time at [summary judgment]."). The same applies to theories of Monell liability raised for the first time in response to summary judgment. See Young v. Suffolk Cty., 922 F. Supp. 2d 368, 395-96 (E.D.N.Y. 2013) (rejecting plaintiff's attempt to assert an alternative theory of Monell liability on summary judgment based on a constitutional violation not alleged in the complaint); Marchand v. Simonson, 16 F. Supp. 3d 97, 109 (D. Conn. 2014) (granting summary judgment dismissing plaintiff's asserted theory of *Monell* liability because it was never pleaded).

Plaintiff's Amended Complaint included no factual allegations regarding the internal affairs investigation in this case or the police commissioner's alleged decision to ratify the results of that investigation. Plaintiff did not seek to amend his complaint on the basis of evidence allegedly uncovered in the course of discovery. He raised the ratification theory for the first time in response to the City's motion for summary judgment. ECF 259, 39–42. Because Plaintiff did not articulate this claim until after the close of discovery, the City was substantially prejudiced in the defense of its case. It could have, for example, adduced evidence regarding the Commissioner's review process, such as the scope and standard he applied. It could have produced witnesses and records regarding that subject that would have aided the jury's consideration. By adding a claim so late in this litigation, Plaintiff deprived the City of due process and has left the jury substantially handicapped in rendering a fair verdict. Accordingly, Plaintiff is not entitled to take his new theory of *Monell* liability to the jury.

Even if entitled to review, Plaintiff has adduced insufficient evidence to create a material dispute of fact as to a putative ratification theory. "[T]he municipality will be liable if an official with authority ratified the unconstitutional actions of a subordinate, rendering such behavior

official for liability purposes." <u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005) (citing <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988)).

But <u>Praprotnik</u> does not help Plaintiff's claim. <u>Praprotnik</u>, 485 U.S. at 127. For one, <u>Praprotnik</u> acknowledges that "[i]f the mere exercise of discretion by an employee [such as an internal affairs investigator] could be the result of a constitutional violation, the result would be indistinguishable from *respondeat superior*." <u>Id.</u> at 126–27. The Court rejected that <u>Monell</u> liability could attach because no official act was proven by policymakers. <u>Id.</u> at 128–29. Critically, the Court observed "[s]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of authority to make policy . . . the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority . . . . In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decisions as if it were a reflection of municipal policy." <u>Id.</u> at 130.

Those hypotheticals are what Plaintiff proposes here. Of course, because his theory was cooked up at the last minute—and only asserted after the close of discovery—Plaintiff has not developed any relevant record (much less presented one to the jury). For example, he could have called witnesses or introduced documentary evidence that would shed light on how Commissioner Timoney reviewed the IA investigation, why he did so, what factors would cause him to approve or disapprove of IA findings, and why he rendered his decision here. Instead, all Plaintiff can point to is a signature on the IA file, upon which to pile his conjecture. In the absence of such a record, Commissioner Timoney's approval of the internal affairs investigation, by stamp, demonstrates at most that he delegated policymaking to an employee with discretionary powers (the investigator). That is not a basis for <u>Monell</u> liability.

16

Concededly, liability can conceivably attach where a series of such "going along with" subordinate decisions manifested a municipal *custom*. Praprotnik, 485 U.S. at 130. Again, Plaintiff can point to no evidence of a series of such decisions. Moreover, the existence of municipal custom related to disciplinary questions is brought by Plaintiff as a separate factual theory—the point of the City's argument is Plaintiff should not be permitted to cast one theory as two avenues for liability to a jury. Likewise, Praprotnik acknowledges a particular subordinate decision could rise to *Monell* liability where it "was cast in the form of a policy statement and expressly approved by the supervising policymaker." Id. at 130. But the Internal Affairs conclusion is not in "the form of a policy statement" and was not expressly approved. Plaintiff has adduced no evidence beyond the fact that the Commissioner acknowledged the investigation's generally, perhaps its completion and its finding. But there is not "express approval." There is no evidence of the Commissioner's position on the matter. Of course there is no evidence the Commissioner asked for a different outcome. But if that was sufficient to show "express approval," there would be no situation in which a Commissioner, having set eyes on a discretionary act by a subordinate and going along with it, would not constitute municipal liability, in contravention of *Praprotnik* and its observation that as much amounts to *respondeat superior* liability.

Even if Plaintiff could theoretically prevail on proof of an individual decision of a policymaker acquiescing in a supposedly deficient IA investigation, the evidence belies his claim. There was no allegation of officer misconduct at the time of the internal affairs investigation. The internal affairs investigation was completed in July 2002. ECF 251-18, D06754. Plaintiff alleged officers planted a gun on him for the first time four months later when he testified in his own defense. ECF 251-8, 31–34. There was no complaint of officer misconduct in any form before Plaintiff testified.

17

By the time the internal affairs investigation reached its conclusion, the internal affairs investigator had available to him overwhelming evidence establishing that Plaintiff possessed a gun and that police shot him after they saw him raping the victim. The victim's statement established that the person who pistol whipped her, dragged her to a secluded area, and raped her was still on top of her when the police arrived. ECF 251-18, D006770–73. Statements from Officers Vinson and Zungolo corroborated that Hicks was on top of the victim when they arrived and that Hicks refused officer commands to take his hand out of his pocket. *Id.* at D006779–80, D006794–99. Statements from Officers Zungolo and Ellis that Officer Ellis recovered a gun from Hicks's pocket. *Id.* at D00679–80, D006787–88. Moreover, statements from neighbors corroborated the officers' statements that they repeatedly ordered Plaintiff to take his hand out of his pocket before the shooting. ECF 251-18, D006777. Accordingly, clear and consistent evidence corroborated the officer statements that Plaintiff raped the victim, possessed a gun, and refused officers' commands before the shooting.

Yet Plaintiff faults the internal affairs investigator for not concluding the officers lied based on the discrepancies in their statements. For instance, Plaintiff elicited testimony at trial pointing to the discrepancy between Officer Vinson's statement to internal affairs that he recovered the gun from Plaintiff and the statement of multiple other witnesses and police records showing that Officer Ellis recovered the gun. Of course, this evidence is consistent in the only respect that matters: it establishes the police recovered a gun from Plaintiff. Plaintiff makes no attempt to explain why the identity of the officer who recovered the gun is material to the IA investigation's ultimate conclusions that Plaintiff possessed a gun and the shooting was justified. Neither can Plaintiff establish that the investigator's decision to ascribe this inconsistency to Officer Vinson's faulty memory (and not part of a malicious scheme to frame him for rape) constitutes deliberate

18

indifference.[2]  In other words, Plaintiff would hold the City because Commissioner Timoney may have declined to draw the same fantastical inference he asks the jury to draw: inconsistent statements of police officers are evidence of an unlawful scheme to frame him for rape.

Accordingly, Plaintiff's *Monell* claim based on a ratification theory is waived because he raised it for the first time at summary judgment and meritless because it involves a single instance of a policymaker signing off on the discretionary decision of a subordinate and contrary to the evidence adduced at trial.  The City is entitled to entry of judgment on this claim.

> ii.    *Plaintiff's criticisms of the Philadelphia Police Department's IA system are too broad to establish the City was deliberately indifferent to the alleged harm here.*

Plaintiff alleges the police framed him for rape, falsely attributing a firearm to him and falsely stating they saw him rape the victim.  According to Plaintiff, this was done in an effort to conceal an unjustified police shooting.  Yet his expert brings sweeping allegations against the PPD's IA system, claiming there were "systematic failures on the part of the City of Philadelphia [and] the Philadelphia Police Department" in officer discipline and supervision. N.T. 8/14/25, 135. Because Plaintiff has failed to adduce evidence of a history of misconduct similar to the claims he

---

[2]    We know this decision was not just constitutionally permissible but also perfectly reasonable because the prosecutor and jury reached the same conclusion.  The jury at his criminal trial heard the supposed inconsistencies in the officers' statements and convicted him.  Plaintiff's criminal defense attorney cross examined Officer Vinson regarding his statement to internal affairs, which he gave six months after the shooting, that he recovered the gun from Hicks.  ECF 251-5, 12 (explaining to the jury "I didn't retrieve the gun from his coat pocket.").  In closing argument, Plaintiff's criminal defense attorney asked the jury to discredit Officer Vinson's testimony describing Hicks's conduct prior to the shooting because it was inconsistent with that of Officer Zungolo.  ECF 251-7, 156–59.  The jury also heard testimony about the origin of the gun Hicks used to assault the victim.  Officer Valerie Brown testified that she purchased the gun from a police corporal named Curtis Santner in 1989, stored it in her basement closet, and did not know it was missing until a police investigator contacted her after Hicks used the gun to assault the victim. ECF 251-5, 133, 135.  Plaintiff faults the internal affairs investigator for not viewing the same evidence the jury concluded established his guilt beyond a reasonable doubt and coming to Plaintiff's desired conclusion that it actually proved a vast police conspiracy.

brings in this case, he cannot prove that the City was deliberately indifferent to the likelihood that his injury would occur.

Courts have repeatedly rejected such broad and amorphous formulations of Monell liability. See, e.g., Thomas v. City of Markham, Illinois, No. 16 CV 08107, 2017 WL 4340182, at *4 (N.D. Ill. Sept. 29, 2017) ("finding that allegations of general past misconduct or allegations of dissimilar incidents are not sufficient to allege a pervasive practice and a defendant's deliberate indifference to its consequences"); citing Strauss v. City of Chi., 760 F.3d 765, 768-69 (7th Cir. 1985) (finding plaintiff failed to meet Monell pleading burden where plaintiff alleged general data on citizen complaints and the city's acquiescence to the misconduct); Karney v. City of Naperville, No. 15 C 4608, 2016 WL 6082354, at *13 (N.D. Ill. Oct. 18, 2016) (noting that a prior unlawful search of an apartment was "only marginally similar" to the plaintiff's allegation of an unlawful search of his vehicle in assessing failure-to-train Monell claim; Monell requires "a larger number [than one instance] of similar constitutional violations before deliberate indifference based on failure to train could be inferred"); see also City of Canton v. Harris, 489 U.S. 378, 391 (1989) (the allegedly deficient policy must be "closely related to the ultimate injury"); Connick v. Thompson, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). To forego the requirement of specificity would blur the line "between respondeat superior liability and truly unconstitutional municipal conduct." Piotrowski v. City of Houston, 237 F.3d 567, 580 fn.27 (5th Cir. 2001). As explained by the Fourth Circuit:

> Unfocused evidence of unrelated constitutional violations is simply not relevant to the question of whether a municipal decisionmaker caused the violation of the specific federal rights of the plaintiff before the court. Permitting plaintiffs to splatter-paint a picture of scattered violations also squanders scarce judicial and municipal time and resources. As a practical matter, a case involving inquiries into various loosely related incidents can be an unruly one to try.

20

Carter v. Morris, 164 F.3d 215, 218–19 (4th Cir. 1999).

      In any event, Plaintiff's reliance on the IAO reports is misplaced.  Plaintiff's expert cites criticism of the police department contained in a series of reports IAO reports from 1997, 2001, and 2003, to support his conclusion that the City was deliberately indifferent to a flawed IA system. But the cited reports show the opposite of deliberate indifference.  They show the City was committed to identifying problems in the police department and working to fix them.  The fact that the reports exist shows the City was committed to transparency in the relevant time period.  To hold the City liable on the basis of these reports would create a monetary incentive to avoid investigating and reporting on problems in the department.  The act of refusing to conduct systematic reviews could, in and of itself, itself constitute deliberate indifference and could form the basis of a Monell claim. See Forrest v. Parry, 930 F.3d 93, 106 (3d Cir. 2019) (failure to supervise Monell claim requires proof of "deliberate indifference to the constitutional rights of those affected.").

      Accordingly, Plaintiff's various theories of Monell liability cannot prevail, and the City of Philadelphia is entitled to judgment as a matter of law with respect to his Monell claim.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants, the City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, as personal representative of the estate of Brian Smith, deceased, respectfully request entry of judgment in their favor.

Respectfully submitted:

<u>/s/</u>
Benjamin T. Jackal
Raymond Escobar
Daniel V. Cerone
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Counsel for City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, Administrator of the Estate of Brian Smith*

Augst 25, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **TERMAINE HICKS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action** |
| | : | **No. 2:22-cv-0977** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below Defendants' Rule 50(a) Motion for Judgment as a Matter of Law filed on behalf of Defendants, the City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, as personal representative of the estate of Brian Smith, deceased, was filed via the Court's electronic filing system and is available for downloading.

Respectfully submitted:

/s/
Benjamin T. Jackal
Raymond Escobar
Daniel V. Cerone
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

*Counsel for City of Philadelphia, Arthur
Campbell, and Mary Bridget Smith,
Administrator of the Estate of Brian Smith*

Augst 25, 2025