**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERMAINE HICKS,** | : |
| | : |
| | : **CIVIL ACTION** |
| **Plaintiff,** | : |
| | : **No. 22-0977** |
| **v.** | : |
| | : |
| **CITY OF PHILADELPHIA, et al.** | : |
| | : |
| **Defendants** | : |
| | : |

## ORDER

AND NOW, this _____ day of _____, 2026, upon consideration of

the Plaintiff's Motion for Attorneys' Fees and Costs, and any responses thereto, it is **HEREBY**

**ORDERED** that the Motion is **DENIED**.

BY THE COURT:

_____
MURPHY, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERMAINE HICKS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 2:22-cv-0977 |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

## TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ..................................................................................................... 2

II.  STANDARD ......................................................................................................................... 5

III.  ARGUMENT ....................................................................................................................... 5

    A.  The Court can disregard New York rates because Plaintiff plainly has not met his burden to prove the Interfaith exception applies ...................................................................................... 5

    B.  Plaintiff's fee petition is so outrageously excessive that it should be denied in its entirety. 9

        a.  Billing judgment generally ............................................................................................ 10

        b.  Inadequate records ........................................................................................................ 11

        c.  Overstaffing ................................................................................................................... 13

        d.  Conservative Adjustment ............................................................................................... 15

        e.  Hourly Rate .................................................................................................................... 15

        f.  Excessive Expenses ....................................................................................................... 16

        g.  Other Factors corroborating Mr. Tasher ....................................................................... 17

        h.  Denial or Reduction of Fees .......................................................................................... 20

    C.  If The Court Awards Any Fees, the Court Should Further Reduce Plaintiff's Fees and Costs to Reflect His Partial Success .......................................................................................... 21

IV.  CONCLUSION .................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

Beastie Boys v. Monster Energy Co., 112 F. Supp.3d 31 (S.D.N.Y. 2015) .................................. 26

Beattie v. Line Mountain Sch. Dist., No. 4:13-CV-02655, 2014 WL 3400975 (M.D. Pa. July 10, 2014) ...................................................................................................................................... 7

Becker v. ARCO Chemical Co., 15 F. Supp. 2d 621 (E.D. Pa. 1998)................................... 13, 19

Blum v. Stenson, 465 U.S. 886 (1984) ..................................................................................... 18

Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598 (2001)........................................................................................................................................ 26

Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396 (3d Cir. 2018)................. 11, 12, 13

Dennis v. City of Philadelphia, 18-2689 (E.D.Pa. ................................................................... 22

Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346 (3d Cir. 2001) ............................................. 6

Fair Hous. Council of Greater Washington v. Landow, 999 F.2d 92 (4th Cir. 1993) ................. 11

Farrar v. Hobby, 506 U.S. 103 (1992) ................................................................................. 24, 25

Halderman by Halderman v. Pennhurst St. Sch. & Hosp., 49 F.3d 939 (3d Cir. 1995) ............... 15

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ........................................................ 5, 12, 15, 24

Hicks v. DiGuglielmo, No. CIV.A. 09-4255, 2013 WL 4663266 (E.D. Pa. Aug. 29, 2013) ......... 3

Howard v. City of Durham, No. 1:17-cv-477 (M.D.N.C.) ....................................................... 21

Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694 (3d Cir. 2005) .................... 5, 6, 7, 10

J.S. ex rel. Snyder, 2014 WL 1321116 (M.D. Pa. March 31, 2014)........................................... 10

Lohman v. Duryea Borough, 574 F. 3d 163 (3rd Cir. 2009) ..................................................... 24

Ninox Television Ltd. v. Fox Entm't Grp., Inc., No. 04 Civ. 7891 (DLC), 2006 WL 1643300 (S.D.N.Y. June 13, 2006)......................................................................................................... 26

Ogrod v. Detective Martin Devlin, at al., 21-cv-2699 (E.D.Pa.) ............................................... 9

Petrunich v. Sun Bldg. Systems, Inc., 625 F. Supp. 2d 199 (M.D. Pa. 2008). ...................... 13, 25

Restivo v. Nassau County, No. 2:06-cv-06720 (E.D.N.Y.)................................................... 20, 21

Riverside v. Rivera, 477 U.S. 561, 585 (1986)........................................................................ 24

Rosario v. City of New York, No. 1:18-cv-4023 (S.D.N.Y. filed Oct. 7, 2022) ...................... 1, 20

Sabinsa Corp. v. Herbakraft, Inc., 2022 WL 1166581,(D.N.J. Apr. 20, 2022) ........................... 7

Schwarz v. Folloder, 767 F.2d 125  (5th Cir. 1985) ................................................................ 26

Sheffer v. Experian Information Solutions, Inc., 290 F. Supp. 2d 538 (E.D. Pa. 2003)............... 24

Stokes v. City of Philadelphia, et al., 22-cv-00338 (E.D.Pa.) .................................................... 9

Terrance Lewis v. City of Philadelphia, et al., 19-cv-2847 (E.D.Pa.) ......................................... 9

United States ex rel Sharon McKinney v. DHS Techs., LLC, No. 3:11-CV-146, 2015 WL 11675668, (M.D. Pa. Oct. 27, 2015), report and recommendation adopted sub nom. United States v. DHS Techs., LLC, No. 3:11-CV-146, 2016 WL 4592175 (M.D. Pa. Feb. 4, 2016) ... 6

Washington v. Philadelphia Cnty. Ct. of Common Pleas, 89 F.3d 1031 (3d Cir. 1996)........ 17, 18

Young v. Smith, 905 F.3d 229 (3d Cir. 2018) .......................................................................... 11

**<u>DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u>**

Defendants the City of Philadelphia, Martin Vinson, Robert Ellis, Arthur Campbell, Dennis Zungolo, and Mary Bridget Smith, as Personal Representative of the Estate of Brian Smith, oppose Plaintiff's motion for attorneys' fees and costs, and respectfully ask the Court to deny the motion in its entirety due its patently inflated valuation, or otherwise reduce it to an award that reflects reasonable fees, Plaintiff's partial success, and the Third Circuit's guidance to dissuade attorney fee demands that function as opening bids.

Plaintiff's motion seeks $8,544,789.72 incurred by counsel Neufeld Scheck Brustin Hoffman & Freudenberger, LLP (NSBHF) and Kairys, Rudovsky, Messing, Feinberg & Lin LLP (KRMFL). Defendants do not seek complete denial lightly. But Defendants also cannot take lightly the presentation of an inflated request for fees, which Defendants unavoidably view as settlement tactic, both in the instant case and in other cases Plaintiff's counsel are litigating against the City of Philadelphia. This conclusion is borne out by comparison to fees sought or obtained in other comparably matters litigated by Plaintiff's counsel, notably <u>Rosario v. City of New York</u>, in which Plaintiff sought less than half this amount, $4,239,510.99. Mem. Law in Support of Fee Petition, <u>Rosario v. City of New York</u>, No. 1:18-cv-4023 (S.D.N.Y. filed Oct. 7, 2022) (Ex. 1).

This conclusion is corroborated by the opinion of Defendant's expert Steven Tasher, which is supported in detail in Mr. Tasher's report. Declaration of Steven Tasher, Esq, with Exhibits (Ex. 2). Mr. Tasher concludes, conservatively, and without addressing Plaintiff's partial success, that the lodestar (at Philadelphia rates) and expenses are reasonably reduced to a combined total of $3,829,627.93. Mr. Tasher's opinion is based in part on undeniably problematic red flags in the

1

motion, including a birthday treat from an ice cream store for a paralegal, and a $90, remote-controlled lamp for an attorney's hotel room.[1]

To reiterate, Defendants do not make this request lightly and are wary that the Court may view it cynically. However, Defendants are left with the conclusion that the attorneys in this case are claiming to be owed roughly 4 million dollars more than a conservatively reasonable amount, and must ask the Court to remove the compelling but hazardous incentives to make such fee requests.

Should the Court award fees, for the reasons discussed herein, Philadelphia rates are appropriate and Defendants propose a further reduction of 50% to account for Plaintiff's limited success, notably an award that Plaintiff characterizes as "a small fraction of what is typically awarded for similar injuries." ECF 449, 10.

## I.    FACTUAL BACKGROUND

This civil litigation comes at the conclusion of two decades of criminal litigation.[2] Contrary to Plaintiff's characterization of this case as challengingly complex in all respects, when Plaintiff filed his complaint in 2022, he had the benefit of a developed record replete with factual and legal theories already.  Plaintiff had the investigative files of the police department, e.g., ECF 251-17 (SVU file), and the record of an eight-day criminal trial, at which twenty-two witnesses testified, ECF 251-2–9 (criminal trial transcripts).  He had criminal defense briefing raising

---

[1]    On January 16, 2026, NSB emailed Defendants with adjustments to 10 fee line items (apparently to mitigate select block-billing or phantom costs) and withdrew $464.93 in expenses, including the lamp. This last minute, negligible adjustment after weeks of challenges, only supports NSB's lack of billing judgment, and may not be specifically addressed at all times in this motion or in Mr. Tasher's report.

[2]    Because the record and procedural history are well known to the Court, Defendants set forth only the following factual background that is relevant to this filing.

2

numerous claims post-trial.  See, e.g., Hicks v. DiGuglielmo, No. CIV.A. 09-4255, 2013 WL 4663266 (E.D. Pa. Aug. 29, 2013). Plaintiff had the benefit of a detailed factual concessions by the Philadelphia District Attorney's Office ("DAO").  On December 15, 2020, Plaintiff's criminal defense attorneys from the Innocence Project and the DAO jointly stipulated to a version of the case that favored Plaintiff. ECF 251-30 (joint stipulations of fact). Attorney Peter Neufeld, a timekeeper in this case, represented Plaintiff in these proceedings and "was [already] intimately familiar with the complex legal and factual background underlying Mr. Hicks 42 U.S.C. § 1983 claims" from prior representation. Neufeld Decl., at 4–5, ECF 466-20.

Attorneys from NSBHF and KRFML initiated this lawsuit on Plaintiff's behalf in 2022. The complaint asserted five claims against the City of Philadelphia and eleven individual defendants: Martin Vinson, Robert Ellis, Dennis Zungolo, Arthur Campbell, Mark Webb, Mary Bridget Smith (as personal representative of the Estate of Brian Smith), Michael Youse, Frank Holmes, Douglas Vogelman, Kevin Hodges, and Duane Watson.  ECF 23.  Plaintiff's factual allegations largely mirrored the DAO's concessions. E.g., ECF 23, ¶ 30 (disparaging the victim's testimony identifying Hicks as her rapist because she was "confused").

On November 15, 2023, the Court approved a stipulation to dismiss "[a]ll claims against defendant, Duane Watson, [with prejudice], with each party to bear its own fees and costs."  ECF 132, 1.  Plaintiff litigated claims against the remaining individual defendants.  He opposed motions for summary judgment filed by Defendants, Vogelman, Hodges, Holmes, Webb, and Youse, which were premised on their lack of involvement in the underlying criminal investigation.  ECF 222; 284, 22–26.

But it was not until August 9, 2025, on the eve of trial, that Plaintiff dropped his claims against Defendants Webb, Youse, Holmes, and Hodges, and his malicious prosecution claims

3

against all individual defendants. The Court approved a stipulation of dismissal, "with each party to bear its own fees and costs." ECF 379. After calling Defendant Vogelman to testify about his internal affairs history, Plaintiff also dropped the claims against him.

Plaintiff's counsel conveyed a mid-trial demand to Defendants of $20,000,000. On August 27, 2025, at the conclusion of a thirteen-day trial, the jury found in Plaintiff's favor on each count and awarded him $3,000,000 in compensatory damages against the remaining Defendants. The Court entered judgment on August 28, 2025. ECF 413. On September 25, 2025, Plaintiff filed a Motion for a New Trial on Damages only. ECF 499.

On October 30, 2025, Plaintiff filed a motion for attorneys' fees and costs. ECF 466. It seeks compensation for the work of 38 timekeepers, who claim they spent more than 14,000 hours prosecuting Plaintiff's claims. Id. at 9. Counsel swore out declarations that they reviewed the fee submission before filing it. ECF 466-8, 23 (Hoffman declaration); 466-9, 14 (Freudenberger declaration); 466-10, 15 (Green declaration). Plaintiff seeks nearly three times the amount of the jury award. ECF 466, 2. Plaintiff's motion included no backup documentation for its claimed costs and expenses, nor any invoices or receipts from vendors and experts.

On November 20, 2025, Defendants filed a motion to compel materials in connection with the Fee Motion. ECF 467. The filing identified numerous suspicious and improper claims, including for "Lamp for A. Green's Hotel Room," $319.27 for a weekend meal at Buddakan, $252.22 for "Travel Meal for E. Freudenberger." Id. at 5–6. On December 2, 2025, filed an opposition to the Motion to Compel, in which counsel stated in the opposition that if the defense identifies hours or costs "that Plaintiff agrees are unreasonable, ***Plaintiff will withdraw those requests***, thereby narrowing the issues to be decided by the Court in any event." ECF 469, at 5 n.3 (emphasis added).

The Court generally granted the relief sought but the parties continued to contest the scope of production.  ECF 472. Pursuant to the Court's order, Plaintiff disclosed supporting documentation for a small fraction of the fees that they claim.  In explaining the absence of available supporting records, counsel repeatedly cited a firm policy that receipts for business expenses are not required to be maintained.  See Paras E-mail, 1/13/26 (Ex. 3) (supplying second round of production and explaining "[p]ursuant to NSBHF policy, the underlying receipts for items purchased on partners' firm credit cards are not required to be maintained" and "[p]ursuant to NSBHF policy, submission of [an associate's personal] credit card statements enumerating the items sought for reimbursement is sufficient, and original receipts need not be kept.").

## II.    STANDARD

A fee award must be reasonable.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "A party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005), as amended (Nov. 10, 2005).  "Counsel for the prevailing party should make a good faith effort to exclude from a fee requested hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434.  When faced with a challenged fee petition, "a district court must conduct 'a thorough and searching analysis.'" Interfaith, 426 F.3d at 703 n.5, quoting Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001).

## III.    ARGUMENT

### A.    The Court can disregard New York rates because Plaintiff plainly has not met his burden to prove the Interfaith exception applies

NSBHF asks to be compensated at New York City rates because certain declarants did not think local counsel could have handled this case.  ECF 466, 20–22.  But that is not the test—the

Third Circuit requires evidence that an actual "significant search" for local counsel was conducted. But that did not happen here and, as such, Plaintiff has not met his burden with adequate proof. Thus, Philadelphia rates apply.

The Third Circuit has held that "in most cases, the relevant rate [for out-of-town attorneys] is the prevailing rate in the forum of the litigation." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005), as amended (Nov. 10, 2005). The Interfaith court recognized two exceptions to this rule: "first, when the need for the special expertise of counsel from a distant district' is shown; and, second, when local counsel are unwilling to handle the case." Id. (citations and quotations omitted). It is the prevailing party's burden to prove entitlement to either exception. E.g., United States ex rel Sharon McKinney v. DHS Techs., LLC, No. 3:11-CV-146, 2015 WL 11675668, at *5 (M.D. Pa. Oct. 27, 2015), report and recommendation adopted sub nom. United States v. DHS Techs., LLC, No. 3:11-CV-146, 2016 WL 4592175 (M.D. Pa. Feb. 4, 2016); Sabinsa Corp. v. Herbakraft, Inc., 2022 WL 1166581, at *6 (D.N.J. Apr. 20, 2022). To be entitled to out of forum rates, Plaintiff must prove a "substantial" local search occurred. See Beattie v. Line Mountain Sch. Dist., No. 4:13-CV-02655, 2014 WL 3400975, at *9 (M.D. Pa. July 10, 2014). The test is whether plaintiff "conducted a significant search". Interfaith, 426 F.3d at 705.

Here, NSBFH claims "qualified local counsel were unavailable or unwilling to handle this case alone." ECF 466, 20, 20–22. The only evidence they cite in support of this proposition are the self-serving declarations of Plaintiff's local counsel and the declaration of Philadelphia attorney Alan Tauber. ECF 466, 21–22 (citing Feinberg and Tauber's declaration). These are inadequate. These "opinion" declarations far from states that an actual "significant search" for local counsel in Philadelphia was conducted, and discovery produced by Plaintiff produced no records related to tests or searches to support this. We simply must take Mr. Feinberg and Mr.

Tauber's backward-looking assumptions on faith.  That alone is dispositive that Philadelphia rates should apply.

In any event, Mr. Feinberg and Tauber's declarations are highly dubious in what they do say and should be given little weight.  For one, Mr. Feinberg's discussion of the "various challenges" in this case largely parrot NSBHF's motion. See Feinberg Decl., ECF 466-12, ¶¶ 13–16. As discussed below, the case might have been difficult, but there is nothing novel in litigating two factual issues (arising from the same set of circumstances) in one litigation, in dealing with Defendants who pursue their defense rather than accepting Plaintiff's version of events, in litigating a Monell claim, or in suing several police officers who respond to a scene.[3] Mr. Feinberg's qualifications bear this out and belie his other averments. He has obtained "record-breaking awards" in wrongful conviction cases, which are a significant focus of his, and was lead counsel in protest litigation involving 300 plaintiffs. Id. at ¶ 8–9. He ultimately opines he did not have the capacity to take on this case, because he was immersed in seven other wrongful conviction cases docketed between 2022 and 2025. Id. at ¶ 18. The fact that Mr. Feinberg clearly was capable of taking on this case but was too busy with others should impress upon the Court the necessity of the significant search that is lacking here to bear out that local counsel was unwilling to take on

---

[3] Citation in the declarations and memorandum of law to COVID-19 is a red herring that demonstrates the kitchen-sink, after-the-fact justification by Plaintiff.  While Defendants concede COVID-19 presented litigation challenges generally, Plaintiff fails to explain with any specificity how it factors in here. Civil litigation generally stalled but was largely accommodated by the courts. In some respect COVID-19 allowed more time to do work that did not require court engagement or formal depositions (presumably, like pre-filing document review and informal investigation). Plaintiff's case was thoroughly investigated in criminal proceedings. He filed suit on March 15, 2022, by which time restrictions had loosened. Most relevant, New York City lawyers, good as they are, were not in possession of a cure for COVID-19 they withheld from their Philadelphia counterparts.

the case. Ultimately, he essentially says that "it would have been very difficult" for him to obtain counsel. Feinberg Decl., ECF 466-12, ¶ 20.

Mr. Tauber opines "I think it is unlikely qualified Philadelphia counsel would have been willing to take this case alone at the time when Mr. Hicks sought representation, around December 2020." Tauber Decl., ECF 466-7, ¶ 4. These fall short of the affidavit in Interfaith. Contrary to Plaintiff's assertion that the affidavits are similar, the affiant in Interfaith contended no local firms did defense work in the particular field of law, and five local attorneys had *in fact* recently declined to represent the defendant in a similar suit. Interfaith, 426 F.3d at 707. This was not just the speculation of two attorneys readily available to NSBHF—one because he was co-counsel. At best, both opinions suggest not that out-of-forum counsel was not necessary, just that more attorneys were. Perhaps had Mr. Feinberg or Mr. Tauber been solicited, they could have teamed up.

Or Plaintiff could have consulted plenty of other attorneys doing overturned conviction work at this time or ready to enter the field. Local attorneys represented plaintiffs in the vast majority of overturned conviction cases against the City, and those attorneys routinely achieved far greater success for their clients than NSBHF did here. E.g., Stokes v. City of Philadelphia, et al., 22-cv-00338 (E.D.Pa.) (lead counsel for the plaintiff was Philadelphia attorney Joshua Van Naarden; the plaintiff settled claims against the City for $9,620,000); Ogrod v. Detective Martin Devlin, at al., 21-cv-2699 (E.D.Pa.) (lead counsel for the plaintiff was Philadelphia attorney Michael D. Pomerantz; the plaintiff settled claims against the City for $9,100,000); Terrance Lewis v. City of Philadelphia, et al., 19-cv-2847 (E.D.Pa.) (the plaintiff was represented by the Philadelphia law firm Ross, Feller, Casey, LLP; the plaintiff settled his claims for $6,250,000). These cases categorically involve the same "unique" characteristics NSBHF argues make Hicks an outlier: large records, evidence of Plaintiff's guilt, Monell litigation, and contentious litigation.

Moreover, it is no secret why Plaintiff retained NSBHF.  It was not because he searched far and wide for willing local counsel and could find none.  The Innocence Project represented Plaintiff in his PCRA petition, so he hired the same lawyers to pursue his civil claims.  See Neufeld Declaration, ECF 466-20, ¶ 5 (because he was Plaintiff's criminal defense attorney, Neufeld was "intimately familiar with the complex factual and legal background underlying Mr. Hicks's 42 U.S.C. § 1983 claims, making my consultation on this case and at trial all the more valuable.").  Plaintiff was, of course, entitled to hire whoever he wanted, but his decision to hire New York lawyers does not *ipso facto* justify compensating NSBHF at higher, out-of-forum rates.

The declarations are insufficient to meet the burden to prove an Interfaith exception to the Forum Rate Rule.  See J.S. ex rel. Snyder, 2014 WL 1321116, at *5 (M.D. Pa. March 31, 2014) (declaration opining that "there is a lack 'of highly skilled civil rights litigators in the Middle District of Pennsylvania'" was insufficient to overcome the presumption of the forum rate rule, at least without evidence of some search having been conducted).  Accordingly, Plaintiff fails to establish the Interfaith exception to the forum rate rule he seeks because he has not demonstrated a reasonable search for local counsel occurred.  Thus, Philadelphia rates apply.  Interfaith, 426 F.3d at 705.

**B.  Plaintiff's fee petition is so outrageously excessive that it should be denied in its entirety.**

The Third Circuit has held, "where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously excessive.'" Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396, 398 (3d Cir. 2018); see also Young v. Smith, 905 F.3d 229, 236 (3d Cir. 2018) (holding district courts have authority to deny petitions for attorneys' fees under Section 1988 in their entirety, "where the request is so outrageously excessive that it shocks the

conscience of the court."). The <u>Clemens</u> court reasoned that denial was justified because, *inter alia*, the billing records were not contemporaneously recorded, "were so vague that there is no way to discern whether the hours billed were reasonable," sought compensation for tasks that appear "'purely clerical'" in nature and should not be billed at a lawyer's rate," and for excessive hours, including "multiple attorney 'roundtables.'" <u>Clemens</u>, 903 F.3d at 400–02.

Without this discretion, "claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place." <u>Id.</u> at 403 (citing <u>Fair Hous. Council of Greater Washington v. Landow</u>, 999 F.2d 92, 96 (4th Cir. 1993)). "When a party submits a fee petition, it is not the opening bid in the quest for an award." <u>Clemens</u>, 903 F.3d at 403 (quotation omitted). "Rather, it is the duty of the requesting party to 'make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'" <u>Id.</u> (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)). Here, the record shows NSBHF did what the Third Circuit forbids: filed an inflated fee petition as "an opening bid in the quest for an award." <u>Id.</u> Defendant's expert Stephen A. Tasher, Esq. notes NSBHF "has no incentive to do anything but maximize its fee recovery," and Mr. Tasher demonstrates how NSBHF took a kitchen-sink approach to billing. Tasher Decl. ¶ 43 (Ex. 2).

        a.      <u>Billing judgment generally</u>

An important through-line to Mr. Tasher's opinions is NSBHF's lack of billing judgment. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant must exercise 'billing judgment' with respect to hours worked, . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." <u>Hensley</u>, 461 U.S. at 424. Billing judgment "is an

10

important component in fee setting . . . Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." Id. at 434 (emphasis in original).

It is unsurprising that Mr. Tasher looks to expenses, where abuse can most easily be ascertained with the right paperwork, as a telltale sign of billing judgment. He categorizes red flags as "phantom charges," "treats' or sundries," "overhead charges," and "lavish expenses," each of which he finds in Plaintiff's expenses. Tasher Decl. ¶ 45–46 (Ex. 2) (citing birthday treats, in-room meals, expensive dinners, furniture, and charges from an apparently absent attorney). The point is not *necessarily* that these expenses don't exist, or that counsel is prohibited from such things, but that "reasonable paying clients would not pay them for these charges." Id. Compounding this problem are the declarations of NSBHF attorneys that they reviewed these records for reasonableness (and billed for it). Id. at ¶¶ 47–49.

      b.     Inadequate records

Although contemporaneous time records are not strictly required, they are the "preferred practice." Clemens, 903 F.3d at 400–01, see Tasher Report at ¶ 56. Reconstructed records may warrant "more exacting scrutiny," and must be sufficiently specific. Clemens, 903 F.3d at 401. Similarly, fee applicants must substantiate the reasonableness of all costs being sought with proper documentation. Petrunich v. Sun Bldg. Systems, Inc., 625 F. Supp. 2d 199, 211 (M.D. Pa. 2008). Courts routinely deny any cost recovery without the provision of receipts to support the reasonableness of costs. Becker v. ARCO Chemical Co., 15 F. Supp. 2d 621, 637 (E.D. Pa. 1998). A party cannot submit a Bill of Costs for considerably more discrete expenditures without such supporting documentation. See E.D. Pa. L.R. Civ. Proc. 54.1(a)(1) (directing submission of "required supporting documentation.").

11

Plaintiff has conceded—contrary to their initial moving papers—they do not rely on contemporaneous records, noting in argument they may enter time days or weeks after the event. See Tasher Report ¶ 58 (Ex. 2). But this creates accuracy problems that are borne out in NSBHF's records. First, there are numerous instances where attorneys appeared to cut-and-paste round numbers into their timesheet, ultimately billing to attend the trial for more hours, without deviation across days, than court was in session Id. at ¶ 60. Notably, on August 21, 2025, five attorneys billed two and half more hours than the 5.7 hours the trial day ran. Id. Mr. Tasher notes similar problems such as Ms. Paras' unlikely series of 20-hour plus days, id. at ¶ 62, various deposition entries exceeding the deposition time, id. at ¶ 65, block billing, id, at ¶ 67, Ms. Rogachevsky billing for depositions she did not attend, id. ¶¶ 69–70, and 8 attorneys billing for a hearing with varying times, most of which at least 2 hours in excess of the hearing, id. at ¶¶ 71–72.  Mr. Tasher similarly calls into question several charges that appear to be, in his parlance, phantoms. Id. at ¶ 76.

This issue with billing is exacerbated and exemplified by Plaintiff's belated, January 16, 2025 email adjusting hours. See Paras Email 1/16/25 (Ex. 4). Time entries for August 21, 2025 was amended for 6 attorneys, presumably each separately entering their time but making identical mistakes. Mr. Brustin originally submitted 11.8 hours, 8 of it devoted to trial. His amended hours retain the total, reduce trial to 4 hours and move the balance to "trial prep." ECF 466-11 at ECF p. 18–19.  Ms. Cion reduced her total hours from 14 to 12, with trial time to 4 and trial prep at 6. ECF 466-22 at ECF p. 17. Ms. Freudenberger retained 16.5 hours, transferring 4 hours from trial to trial prep. ECF 466-9 at ECF p. 115. Ms. Green's total goes from 13.2 to 12.7, moving 2 hours from trial and site visit to a now more fully described trial prep. ECF 466-10 at ECF p. 89. Ms. McCarthy retains 15.1 hours, but moves 4 from trial to trial prep. ECF 466-18 at ECF p. 17–17. Ms. Paras' total goes from 20 hours total to 18.9 and amends the descriptions from "in court for trial,

12

arguments" and trial prep" to "6.9 hours travel to/attendance in court or site visit, working at courthouse post-trial; 12 hours of trial preparation." ECF 466–15 at ECF p. 23.

The discrepancy with August 21, 2025 trial times to the record were pointed out by Defendants in their motion to compel. NSBHF would not be able to more accurately reconstruct these hours now than they were when they swore out declarations. If 6 separate timekeeping attorneys chose a total time for a given day, they have given no reason for the Court to blindly accept that—whenever they chose that time—they did so with more accuracy than how they apportioned it. And now all 6 are conforming this particular day to avoid what can be disproven on the record. Because of the short trial day, this is one of only a handful of areas where Defendants can demonstrate a serious billing inaccuracy that may be replicated in hundreds of more opaque fee entries.

> c. <u>Overstaffing</u>

"In many cases, the attendance of additional counsel representing the same interests as the lawyers actually conduct the deposition is wasteful and should not be included in a request for counsel fees from an adversary." <u>Halderman by Halderman v. Pennhurst St. Sch. & Hosp.</u>, 49 F.3d 939, 943 (3d Cir. 1995) (discounting in part excess attorney for lack of coordination and reducing award where overly qualified attorney did tasks that could be handled by paralegal) (citing <u>Hensley</u>, 461 U.S. at 434).

Mr. Tasher opines that overstaffing by Plaintiff in this case was a serious problem. At a high level, Mr. Tasher observes that Plaintiff seeks compensation for 38 timekeepers, 15 of whom are attorneys and 6 of whom are partners or of counsel. Tasher Report at ¶ 81. He points out that ancillary timekeepers performed work that was "duplicative of work performed by others, generally non-substantive, or overdone." <u>Id.</u> at ¶ 87. A non-lawyer intern billed to attend three depositions. <u>Id.</u>  Non-lawyer interns consistently billed time digesting depositions that was

13

multiple times longer than the deposition itself. Id. Mr. Tasher characterizes Mr. Neufeld as a very expensive "passive biller," who did little of substances, but still partially accounts for his value as a senior attorney. Id. at ¶ 88. One example includes Mr. Neufeld being one of seven timekeepers who consulted a pathologist. Id.

Mr. Tasher also identifies discrete projects that were overstaffed, including "nine timekeepers billed for work responding to the Court's Order to Show Cause and ultimate sanction . . . regarding the September, 2024 scream test," and 15 timekeepers working on the motion for summary judgment. Id. at ¶ 90. Mr. Tasher opines that staffing 9-10 timekeepers at trial "is excessive and isolated on its face," particularly when less than half that number appeared on the record. Id. at ¶ 93. This pattern plays out in depositions and hearings as well, where, for example, 8 timekeepers appeared in each of three depositions but only 2-3 did any talking. Id. at ¶¶ 95–100.

Mr. Tasher also criticizes excessive conferencing, attributing "roughly 10% of the bill" to entries listed with "meeting," but not accounting for other designations for internal meetings. Id. at ¶ 102. In 15 minutes, 7-10 timekeepers billed to attend. Id. at ¶ 103. "Paying clients do not expect to be charged for the entire team (particularly junior timekeepers and paralegals) to attend every team meeting." Id. at ¶ 104.

This overstaffing did not result in sensible distribution of the work, as it was divided up in a top-heavy manner. Id. at ¶ 110–16 ("When a partner seeking $900 per hour . . . is researching and drafting a Motion for a New Trial, then four other partner-level of counsel-level timekeepers bill for their review and revisions . . . , it unreasonable inflates the partner-side ratio." Id. at ¶ 115.

Mr. Tasher similarly calls into question KRFML's role. They did not act purely as local counsel, despite NSBHF's asserted expertise and Plaintiff's asserted inability to find local counsel

14

that was willing to take the case. Id. at ¶ 122–24. Ms. Harris was purely passive, and an ancillary biller. Id. at ¶ 124.

        d.      Conservative Adjustment

Mr. Tasher proceeds to make adjustments for these and the interrelated issues discussed above, using methods more fully discussed in his report. Id. at ¶ 134 et seq. But it is critical to point out his approach is conservative:

> Plaintiff overstaffed nearly every aspect of this matter by a degree of no less than 30%. In other words, if 30% fewer timekeepers from Plaintiff's Counsel had (i) billed to attend trial, the number billing in attendance would be 7 rather than 9-10; (ii) billed to attend either the Ellis, Vinson, or Vogelman depositions, the number billing to attend each deposition would be 5-6 instead of 8; (iii) billed to attend the myriad of internal conferences . . . the number billing to confer would be 5–7 rather than 7–10; (iv) billed to attend the March 24, 2025 Oral Argument, the number billing to attend would be 7 rather than 10; (v) billed to work on the Motions for Summary Judgment, the number billing to work on the motion papers would be 10-11 instead of 15; (vi) billed to work on the Scream Test Response, Daubert Motions, or the Motion for a New Trial, the number of timekeepers billing to work on each of these three tasks would have been 6–7 instead of 9–11; and  (vii) billed to work on the opening fee application, the number billing for this work would have been 9 timekeepers instead of thirteen timekeepers. Even at a 30% reduction, each of these tasks . . . would have still been overstaffed, but far less so, making a 30% reduction for this and other issues conservative.

Id. at ¶ 142. Mr. Tasher concludes that the total adjusted hours should be 9,394.73 for 15 timekeepers.

        e.      Hourly Rate

In calculating the lodestar, the prevailing party bears the burden of establishing the rates they request are the "the prevailing market rates in the community." Washington v. Philadelphia Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996), citing Blum v. Stenson, 465 U.S. 886, 895–96 n. 11 (1984).  This requires submission of "satisfactory evidence in addition to the attorney's own affidavits." Washington, 89 F.3d at 1035 (quotation omitted).

15

Mr. Tasher criticizes Plaintiff's Philadelphia rates as inflated. Tasher Report, at ¶ 147 et seq. (Ex. 2). While he relies on several metrics, including a more complete version of the rate report used by Plaintiff, his central rationale is that Plaintiff seeks New York City market rates "as a mid-sized civil rights firm" that "is differently situated from these large commercial comparators, with somewhat lower overhead and a different clientele." Id. at ¶ 150. Nonetheless, Plaintiff fails to account for this in seeking Philadelphia rates: "The Philadelphia rates are sought are very close to the sought New York rates, which does not reflect the [reality] of the disparity between the two markets." Id. at ¶ 154.[4]

        f.        Excessive Expenses

Mr. Tasher's discussion of excessive and undocumented fees expands on his comments on expenses regarding billing judgment, discussed above. Id. at ¶ 175 et seq. Defendants emphasize, as Mr. Tasher has, that the absence of detailed supporting documents for nearly all these charges makes reasonableness difficult to evaluate. Where Defendants have identified discrepancies from the limited receipts or invoices received, it is reasonable to believe many more exist in the receipts or invoices NSBHF simply doesn't maintain because these reflect poor billing judgment or accuracy generally. At bottom, "[I]n a private attorney-client relationship with a real paying client, the client reviewing the charges [ ] would reject a substantial quantum of the charges sought here." Id. at ¶ 179.

"The cost of office supplies is not recoverable as a cost." Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 636 (E.D. Pa. 1998). There is no reason that Plaintiff should be reimbursed for office supplies they would routinely keep on hand for use in any case and, in so many cases, are

---

[4] In addition to Mr. Tasher's observations concerning the differences in Dennis, id. at ¶ 170 n. 190, the City of Philadelphia in Dennis did not obtain, and the Court did not benefit from, an expert who authored a detailed rate analysis. The Dennis plaintiff also sought a fraction of what NSBHF seeks here.

reusable. See Tasher Report at ¶ 185–86 (itemizing such examples, including USB adapters, tissues, flashdrives, chargers, scissors, hand sanitizer, Advil, cables, wi-fi hot spots, snacks and gum). Coffee was excessively billed, even when many attorneys had access to free coffee in their hotel, or when attorneys were billing trial time to go on a coffee run. Id. at ¶¶ 187–89.

Expensive and unnecessary luxuries appear in the records supplied, particularly when it comes to meals, often delivered.[5] Id. at ¶¶ 193–195. Plaintiff secured a "war room" despite billing for KFRML attorneys who had an office a block from the courthouse. Id. at ¶ 197. One attorney billed for a priority car service between Newark Penn Station and Jersey City, when a train would have cost $3. Id. at ¶ 198. Several timekeepers billed expenses on days where they seemingly had no fee activity. Id. at ¶¶ 202–04. These discrepancies reflect both inaccuracy in the final number generally and, as discussed, a lack of overall billing judgment that likely affects more opaque fees and costs.

g.    Other Factors corroborating Mr. Tasher

As Defendants previewed, the amount sought here is shockingly higher than comparable cases. In Rosario, NSBHF sought $4,238,910.99, less than half their requested rates here.[6] Rosario Fee Petition at ECF p. 10 (Ex. 1). Rosario took 4 years to litigate (including during the beginning of COVID-19 which delayed trial), involved 500 docket entries, "hostile and hard-to-locate third-party witnesses: 34 depositions including multiple two-day depositions," dispositive motions, "and ultimately a 3-week trial including the presentation of 20 witnesses." Id. at 20.

---

[5] Plaintiff's January 16, 2026 email withdrew a charge for alcohol at a single meal that happened to be listed as such on an internal billing record. See Paras Email 1/16/26 (Ex. 4). There is no apparent reduction for any other meal, and no line-item receipts to assess if alcohol was billed at just the one meal we have some visibility into or several.

[6] Defendants note that they mistakenly overstated the Court's reduction of these fees in the motion to compel briefing, based on the report and recommendation that was partially rejected.

17

This instant case took 3 years to litigate, "27 depositions of fact witnesses in total, with several spanning multiple days," and 14 expert depositions. ECF 466 at ECF p. 16–17. The trial encompassed 13 days and 21 witnesses. Id. at 17. At the filing of the motion for fees and costs, this case amounted to 466 docket entries. By these metrics, Hicks and Rosario are comparable, yet, if Mr. Hicks were a paying client, he would have gotten a 4 million dollar more expensive service (for a 2 million dollar less valuable outcome).

In Restivo v. Nassau County, No. 2:06-cv-06720 (E.D.N.Y.), NSBHF sought $4,962,779.55. Restivo Fee Petition at ECF p. 10 (Ex. 5). Restivo is certainly higher than Rosario and certainly an older case, but it was more complex on these basic metrics (which NSBHF has relied on). It contains a caption with 6 plaintiffs and 19 defendants, resulted in an award for 2 plaintiffs totaling 36 million dollars. "It included . . . six separate rounds of dispositive motions, . . . a five-day *Daubert* hearing, and two separate trials." Id. at 9. The police investigation involved 400 witnesses. Id. at 10. "The case was tried twice. The first trial . . . lasted for 31 trial days over 11 weeks and included the presentation of 42 witnesses . . . The second . . . lasted 17 trial days over almost five weeks, divided into separate phases. It included the presentation of 40 witnesses . . . ." Id. at 11. That is, Restivo involved 35 *more* days of trial and 61 more trial witnesses. Restivo was a monster compared to Hicks.

Plaintiff's seeming explanations for Hicks's singular complexity is incredible. Defendants are accused of, well, putting up a defense by opposing—along with the victim, several neighbors, and the DAO—a theory of Plaintiff's innocence and by filing motions for summary judgments. Documentation was extensive and the case probed old issues. These features are present in Rosario and Restivo, and likely most cases NSBHF litigates. NSBHF is on the one hand one of "the premier civil rights firms in the country," but on the other hand is daunted by the fact that this case

18

"combined *both* a wrongful conviction suit *and* a police shooting suit." But these issues arose out of the same set of facts. And forensic evidence involving firearm discharges, gunshot resiude, and bullet trajectory, is common in overturned conviction cases, which typically involve shootings, just not necessarily by police. It is hardly an excuse to double a fee request because the factual circumstances are slightly different.

Plaintiff's only real distinction is his claim that he had to litigate a Monell claim. But that distinction apparently had little to no mitigating effect on the length of trial, number of depositions, number of witnesses, or length of litigation compared to Rosario and Restivo. In any event, in Howard v. City of Durham, No. 1:17-cv-477 (M.D.N.C.), NSBHF stipulated to a $3,500,000 attorney fees, costs, *and interest* award in a case where Monell survived up to summary judgment.[7] Howard Fee Stip. & MSJ Opinion (Ex. 6) (opinion excerpted). And NSBHF, as they indicate, are not strangers to litigating cases in Philadelphia, where theories of Monell investigating the same evidence is always litigated.  Ms. Freudenberger, to take one example, appears on 8 other cases in E.D.Pa. currently, four of which are resolved.

These cases, Rosario, Howard, and, accounting for its complexity, Restivo, are much closer to Mr. Tasher's conservative figure than Plaintiff's request. And the degree to which these were opposed, and on what theories, may make even these comparators too high. Recently in this district, NSBHF's co-counsel, KRFML, including, albeit not as lead attorney, achieved considerably more success in Dennis v. City of Philadelphia, 18-2689 (E.D.Pa.). There, Plaintiff also developed Monell evidence and sought $1,859,241.93 in fees and costs. Dennis Fee Petition (Ex. 7).

---

[7] NSBHF cites to such stipulations favorably in support of Rosario. See Rosario Fee Pet. at 32.

If anything, NSBHF desired to overcomplicate this litigation. Cynically speaking, why not do so when attorney fees could be wielded in settlement negotiations and you claim to have a revenue flow of record-setting settlements and awards? Ms. Freudenberger admitted that her purpose in taking Defendant Zungolo's deposition was not to develop a factual record but rather to accuse him of lying. See Zungolo Deposition, 360:8–10 (to Sergeant Zungolo "Sir, you understand, I'm not actually asking for answers here, I'm accusing you of lying."). Ms. Freudenberger and Ms. Green used the length of the deposition to punish Defendant Zungolo for denying her repeated allegations of misconduct. Id. at 373:15–23 ("I was going to be done but actually I think I will keep going" after having her hostility challenged by the witness.) Counsel's disinterest in finding out what a witness knows is a common theme across all of Plaintiff's depositions, which consisted of *ad nauseum* confrontations of witnesses with Plaintiff's theory of the case. Rather than seeking out who, what, why, when, how, counsel spoke in narrative form, asking the witness to adopt their confusing, compound, and factually erroneous premises.

h.      Denial or Reduction of Fees

Defendants acknowledge the complete denial of attorneys fees in rare. A prudent attorney should be given leave to make mistakes. And a Court resolving a fee petition must inherently rely on some estimation. But a prudent attorney should not recklessly seek to enrich themselves by millions of more dollars than they are entitled. NSBHF's billing judgment is apparent in their stubborn adherence to charges involving tissues, chargers, and endless coffee on someone else's dime, and in their sloppy reconstruction of fees, and in their submission of a fee petition that contains such obvious excesses as high-end lamps, which presumably did not get trashed after trial. Each of these is real money, indicative of bigger problems, and not a rounding error. NSBHF billed recklessly because they expect no consequences other than reduction to a reasonable lodestar. In addition, other firms—such as KRFML—who litigate better results at lower costs,

20

should not be emboldened to become less efficient.  In sum, Plaintiff's fee petition is conscious shocking and "outrageously excessive" both in general (requesting $8.5 million it supposedly cost to obtain a verdict of $3,000,000), and in particular (considering the hundreds of line items of unwarranted hours and expenses).  These are the billing practices identified by the Third Circuit as warranting denial of a fee request.

If the Court is not inclined to deny the fee petition entirely, it should nonetheless add a reduction for the sole purpose of deterrence, *in addition to* both a reduction to a reasonable amount *and* the further reduction for degree of success discussed below. If the Court has discretion to deny 100% of the petition to punish egregious billing practices, it certainly has discretion to impose a lesser reduction for the same purpose.

### C.    If The Court Awards Any Fees, the Court Should Further Reduce Plaintiff's Fees and Costs to Reflect His Partial Success

Assuming the Court does award fees, it should account for the issues outlined above, especially by Mr. Tasher, in reaching a reasonable lodestar amount, based on billing judgment that would be applied to real customers. In addition the Court should impose a reduction for the reasons discussed in section II.B above, and make a reduction for Plaintiff's degree of success.

In a calculating the lodestar amount, "the most critical factor is the degree of success obtained."  Hensley, 461 U.S. at 436.  "The concept of having reduced fees awarded based on partial success is not a new one—indeed, it is well settled in our jurisprudence." Lohman v. Duryea Borough, 574 F. 3d 163, 168 (3rd Cir. 2009), citing Hensley, 461 U.S. at 436.  "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."  Farrar v. Hobby, 506 U.S. 103, 114 (1992), quoting Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)).  This "assessment is distinct from a

21

proportionality analysis between the amount of damages awarded and the amount of counsel fees requested, which is an impermissible basis upon which to reduce a fee award." Sheffer v. Experian Information Solutions, Inc., 290 F. Supp. 2d 538, 550-551 (E.D. Pa. 2003) (collecting cases where court reduced fees because damages were less than amounts sought).  Where there is a substantial "difference between" the amount of damages awarded compared to the amount sought, the court may "justifiably dispense with the lodestar calculation and simply award low fees or no fees." Petrunich v. Sun Bldg. Systems, Inc., 625 F. Supp. 2d 199, 206 (M.D. Pa. 2008), citing Farrar, 506 U.S. at 115. "[A] substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical." Id. at 121 (O'Connor, J., concurring).

Here, while more than a pittance and not a technical victory, by Plaintiff's accounting, the jury's $3,000,000 award was "a small fraction of what is typically awarded for similar injuries" (ECF 449, 1). Where it suits Plaintiff, $3,000,000 is an "exceedingly low damages award" (id.); "plainly inadequate" (id. at 8); only 15% of the "reasonable and typical" benchmark for similar cases (id. at 9); and "so far outside the reasonable range of compensation" that a new trial was required (id. at 12).  These are not nuanced statements, they are clear, certified by counsel, and pointed at achieving judicial action to enrich Plaintiff and his counsel. The going-rate Plaintiff claims, and the value Plaintiff *expected*, is that these cases are worth millions of dollars for year of incarceration, and Plaintiff received $150,000 per year. To be clear, this is not a prohibited proportionality argument. Plaintiff does not say that the award must be a ratio of the verdict. But the Court is obligated to consider the amount, relative to Plaintiff's expectation, in adjusting for degree of success. And it is relevant that the requested fees are nearly 2.5 times the verdict and 15% (or less) of what Plaintiff believes is appropriate. Plaintiff's fee award must be lowered to reflect this limited recovery.

In addition, Plaintiff is not the prevailing party as to the claims he brought against the defendants he voluntarily dismissed before trial.  A "prevailing party" is "[a] party in whose favor a judgment is rendered."  Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 603 (2001), quoting Black's Law Dictionary 1145 (7th ed.1999); Ninox Television Ltd. v. Fox Entm't Grp., Inc., No. 04 Civ. 7891 (DLC), 2006 WL 1643300 *2 (S.D.N.Y. June 13, 2006), ("a dismissal of an action with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action.") (quotations and alterations omitted); Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir. 1985) ("Because a dismissal with prejudice is tantamount to a judgment on the merits, the [defendant in this case] is clearly the prevailing party and should ordinarily be entitled to costs."); see also Beastie Boys v. Monster Energy Co., 112 F. Supp.3d 31, 50 (S.D.N.Y. 2015) (denying fees associated with claims voluntarily dismissed before trial).

Here, Plaintiff obtained a verdict against only five of the eleven individual defendants he sued.  Plaintiff stipulated to dismiss his claims against Defendants Watson, Webb, Youse, Holmes, and Hodges, with prejudice and with each party to bear its own fees and costs.  See ECF 132, 1.

Even though Plaintiff did not prevail against these six defendants, NSBHF seeks compensation for thousands of hours it spent pursuing claims against them.  Likewise, after opposing Defendants' motions to dismiss malicious prosecution at summary judgment, see, e.g., ECF 259, 23 ("The individual defendants are liable for malicious prosecution."), Plaintiff voluntarily withdrew that claim on the eve of trial.  Plaintiff is not the prevailing party as to malicious prosecution, and he is not entitled to recover for the time spent pursuing the claim.

Accordingly, because Plaintiff recovered a small fraction of what he sought against five of the eleven individual defendants he sued, Defendants are entitled to a further reduction from the

23

lodestar of 50%. This is not unreasonable where Plaintiff unequivocally claims he achieved 15% of his expected verdict, and the Court should weigh this most important factor heavily.

Assuming the Court does not deny the award in full, these requested adjustments would amount half of Mr. Tasher's conservative $3,829,627.93, i.e., $1,914,813.97, plus a further reduction, at the Court's discretion, to reflect and deter Plaintiff's egregious billing practices.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's fee petition in its entirely or, in the alternative, award fees of

.

Respectfully submitted,

*/s/ Benjamin T. Jackal*
*/s/ Andrew Pomager*
Benjamin T. Jackal
Raymond Escobar
Daniel Cerone
Andrew Pomager
City of Philadelphia Law Department
1515 Arch Street, 14th Floor Philadelphia, PA 19102

*Counsel for Defendants, the City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, as Personal Representative of the Estate of Brian Smith*

*/s/ Katelyn Mays*
Katelyn Mays
Joseph Zaffarese
Aleena Y. Sorathia
Ahmad Zaffarese LLC 1 S. Broad St., Suite 1910 Philadelphia, PA 19107

*Counsel for Robert Ellis, Martin Vinson, and Dennis Zungolo*

January 20, 2026

24

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TERMAINE HICKS, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 2:22-cv-0977 |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the foregoing Defendants' Response in Opposition to Plaintiff's Motion for Attorneys' Fees, has been filed on ECF and is available for viewing and downloading.

Respectfully submitted:

Date: January 20, 2026

/s/ *Benjamin T. Jackal*
Benjamin T. Jackal
Senior Attorney
Attorney Identification No. 319274
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102-1595
(215) 683-5434
*ben.jackal@phila.gov*

*Counsel for Defendants, the City of Philadelphia, Arthur Campbell, and Mary Bridget Smith, as Personal Representative of the Estate of Brian Smith*