**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| TERMAINE HICKS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PHILADELPHIA, et. al.,<br><br>　　　　　Defendants. | Civil Action No. 2:22-cv-00977 (JFM) |

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

   I.  Plaintiff's rates are reasonable. .................................................................... 1

      A.  Plaintiff has established entitlement to New York rates. ................................. 1

      B.  Defendants concede the reasonableness of Plaintiff's New York rates. ........................... 3

      C.  Plaintiff's Philadelphia rates are reasonable, while Defendants' proposal is
         unreasonably low. .......................................................................................... 3

   II.  Plaintiff's hours are reasonable. ................................................................... 6

      A.  There was no overstaffing. ............................................................................. 7

      B.  Plaintiff's hours were appropriately documented, with only de minimis errors. ............ 11

   III. There is no basis to reduce for limited success. ...................................................... 12

   IV. There is no basis to deny Plaintiff fees. ................................................................. 14

   V.  Plaintiff's expenses are reasonable and adequately supported. ........................................ 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694 (3d Cir. 2005) .................................. 2

*Abel v. Town Sports Int'l, LLC*, No. 09-Civ.-10388, 2012 WL 6720919 (S.D.N.Y. Dec. 18, 2012) ...................................................................................................................................... 14

*AECOM Tech. Servs., Inc. v. Flatiron*, No. 19-CV-2811-WJM-KAS, 2025 WL 722893 (D. Colo. Mar. 6, 2025) ........................................................................................................................ 9

*Buck v. Stankovic*, No. 07 Civ. 0717, 2008 WL 4072656 (M.D. Pa. Aug. 27, 2008) .................. 14

*City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ........................................................... 6

*Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396 (3d Cir. 2018) ........................ 11, 14

*Cockerill v. Corteva, Inc.*, No. 21 Civ. 3966, 2025 WL 1523002 (E.D. Pa. May 27, 2025) .......... 7

*Davis v. Riddle & Assocs., P.C.*, 579 F. Supp. 2d 692 (E.D. Pa. 2008) ........................................ 4

*Dennis v. Jastrzembski*, No. CV 18-2689, 2025 WL 1582452 (E.D. Pa. June 4, 2025)  4, 6, 11, 13

*Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-14464, 2025 WL 3771284 (D.N.J. Dec. 31, 2025) ....................................................................................................................... 9

*Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001) ........................... 6

*J.S. ex rel. Snyder v. Blue Mountain Sch. Dist*. No. 07-cv-585, 2014 WL 1321116 (M.D. Pa. Mar. 31, 2014) ........................................................................................................................ 2

*Jefferson v. City of Camden*, No. 01 Civ. 4218, 2006 WL 1843178 (D.N.J. June 30, 2006) ......... 9

*Lanni v. New Jersey*, 259 F.3d 146 (3d Cir. 2001) .................................................................. 5, 12

*Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001) .................................................................. 4

*Mancini v. Northampton Cnty.*, 836 F.3d 308 (3d Cir. 2016) ....................................................... 12

*McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143 (3d Cir. 2009) ........................................... 1, 3

*Minehan v. McDowell*, No. 21 Civ. 5314, 2023 WL 8701296 (E.D. Pa. Dec. 15, 2023) .............. 9

*Moorehead v. Sch. Dist. For the City of Allentown*, No. 22-Civ.-03959, 2025 WL 1618144 (E.D. Pa. June 6, 2025) ..................................................................................................................... 13

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ..................................................... 7

*Ogrod v. Detective Martin Devlin, et al.*, No. 21 Civ. 2499 (E.D. Pa.) ........................................ 3

*Oross v. Kutztown Univ.*, No. 21 Civ. 05032 (JLS), 2025 WL 3644245 (E.D. Pa. Dec. 16, 2025) ................................................................................................................................ 5, 6

*Rosario v. City of New York,* No. 18 Civ. 4023 (LGS), 2023 WL 2523624 (S.D.N.Y. Mar. 15, 2023) ............................................................................................................................. 4, 13

*Restivo v. Nassau County*, No. 06 Civ. 6720, 2015 WL 7734100 (E.D.N.Y. Nov. 30, 2015) ....... 4

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09CV3312PKCVMS, 2018 WL 2766139 (E.D.N.Y. June 8, 2018) ..................................................................................................................... 9

*Sec. & Data Techs., Inc. v. Sch. Dist. of Philadelphia*, No. 12-Civ.-2393, 2016 WL 7427758 (E.D. Pa. Dec. 20, 2016) ......................................................................................................... 6

*Shin Da Enters. Inc. v. Yong*, No. 21-CV-03384, 2024 WL 22074 (E.D. Pa. Jan. 2, 2024) .......... 3

*Simring v. Rutgers*, 634 F. App'x 853 (3d Cir. 2015) .................................................................. 10

*Stokes v. City of Philadelphia, et al.*, No. 22 Civ. 00338 (E.D. Pa.) ............................................ 3

*T.H. v. New York City Dep't of Educ.*, No. 21-Civ-10962, 2022 WL 16945703 (S.D.N.Y. Nov. 15, 2022) .................................................................................................................................. 5

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93 (3d Cir. 2006) ...................... 4, 9

*Terrance Lewis v. City of Philadelphia, et al.*, 19-cv-2847 (E.D. Pa.) .......................................... 3

*Victory v. Berks Cnty.*, 452 F. Supp. 3d 185 (E.D. Pa. 2020) .............................................. 1, 6, 13

*Warner v. Twp. of S. Harrison*, No. 09-cv-6095, 2013 WL 3283945 (D.N.J. June 27, 2013) ..... 10

*Washington v. Philadelphia Cnty. Ct. of Common Pleas,* 89 F.3d 1031 (3d Cir. 1996*) .............. 12*

*Y.S. v. New York City Dep't of Education*, No. 21-Civ-711, 2022 WL 3572935 (S.D.N.Y. Aug. 19, 2022) .................................................................................................................................. 5

*Young v. Smith*, 905 F.3d 229 (3d Cir. 2018) .............................................................................. 14

iii

**INTRODUCTION**

Defendants have mounted an impassioned and aggressive defense at every stage of this case. It is no surprise that they continue to do so now. But at every stage, scrutiny has demonstrated that their factual assertions are inaccurate and their legal arguments unsupported, and they have lost. The same flaws affect their audacious opposition—which goes so far as to request the award of no fees at all—and the same result should obtain. Indeed, Defendants' accusations about allegedly poor billing judgment are premised on flat-out false representations, charitably due to an apparently sloppy review of the discovery Plaintiff produced.

We acknowledge that the fee request here is higher than in some other § 1983 wrongful conviction suits. But that issue is one of Defendants' making, not Plaintiff's. Defendants fought tooth and nail at every stage. Multiple Defendants swore that Plaintiff was a rapist and the officers all did nothing wrong—assertions a jury has now found were false. The City would not commit to paying any verdict without a *Monell* finding—which had never previously been obtained in any § 1983 wrongful conviction suit in the district. Of course, Defendants were entitled to bet on a vigorous defense. But when they lose, and the fee bill comes due, they cannot then complain about the fees incurred in opposition to those aggressive tactics.[1]

**ARGUMENT**

**I. Plaintiff's rates are reasonable.**

**A. Plaintiff has established entitlement to New York rates.**

Defendants argue Plaintiff has not established his entitlement to New York rates, claiming that "the Third Circuit requires evidence that an actual 'significant search' for local counsel was conducted." DI 480 at 10. Not so; Defendants get the *Interfaith* standard 180 degrees wrong. In *Interfaith* a district court awarded out-of-district rates based on a finding that local counsel were unwilling to handle the case; on appeal, the defendants (like Defendants here)

---

[1] Plaintiff's reply is limited to issues raised in the opposition. *See McCutcheon v. Am.'s Servicing Co.,* 560 F.3d 143, 150–51 (3d Cir. 2009) (noting district court's review of fee petition is limited to factors raised by opposing party); *Victory v. Berks Cnty.*, 452 F. Supp. 3d 185, 198 (E.D. Pa. 2020) ("Our Court of Appeals precludes us from reducing counsel fees *sua sponte*…in the absence of a sufficiently specific objection to the amount of fees requested.") (cleaned up).

argued the district court could not make that finding where it was undisputed the plaintiff had not conducted an unsuccessful search for in-district counsel. 426 F.3d 694, 706–07 (3d Cir. 2005). But the Third Circuit *rejected* that challenge and *affirmed* the award of out-of-district rates. *Id.*[2] What the Third Circuit found persuasive is almost identical to this record: a declaration from co-counsel, with demonstrated market knowledge, that given the case's risks and requirement for substantial advance of expenses, no local counsel would have been willing to take it alone at the time Plaintiff was seeking representation. Here, the record is even stronger as in addition to co-counsel, Jonathan Feinberg, DI 466-12 (Feinberg Decl.) ¶¶ 12–23, whose expertise Defendants concede, we also have the declaration of another experienced local practitioner, Alan Tauber, affirming the same point, DI 466-7 (Tauber Decl.) ¶¶ 2–4.

Defendants counter this evidence with *no* record evidence of their own. Notably, Mr. Tasher does not offer any opinion on this issue, merely recounting that he was instructed to assume Philadelphia rates should apply. DI 480-1 ¶¶ 136, 148. In the absence of any actual evidence of the availability or willingness of any local lawyer to take *this* case,[3] Defendants point to local lawyers who have litigated *other* § 1983 wrongful conviction suits. DI 480 at 12. But the presence of qualified counsel in the district goes to the first *Interfaith* exception ("need for special expertise" from out of district), not the second exception (local counsel were "unwilling to handle the case"); as the Third Circuit itself held, even the presence of hundreds of qualified in-district counsel does not prevent the second exception from being satisfied. *Interfaith*, 426 F.3d at 705–07. Defendants cannot dispute the predictable extraordinary labor and expenses required to litigate this case successfully or the risk of defeat—all of which made it uniquely undesirable at precisely a moment during the COVID-19 pandemic when plaintiff's

---

[2] The Third Circuit also held the plaintiff failed to show the first exception to in-district rates—a demonstrated need for special expertise from out-of-district counsel—applied. 426 F.3d at 705–06. But Plaintiff has never argued that exception applies here, making that part irrelevant here.

[3] By contrast, in *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, the case Defendants highlight where the court rejected a request for out-of-forum rates, the defendants submitted an uncontested affidavit from a local civil rights attorney that local lawyers could have adequately represented the plaintiff. No. 07-cv-585, 2014 WL 1321116, at *5 (M.D. Pa. Mar. 31, 2014).

firms were particularly risk-averse.[4] Notably, the three cases Defendants highlight each reached a substantial settlement before summary judgment,[5] whereas in this case, Defendants took a scorched-earth approach to their defense and never offered a nickel pre-trial, demonstrating that Defendants themselves recognized the cases were not comparable.[6]

### B. Defendants concede the reasonableness of Plaintiff's New York rates.

Although Defendants contest our entitlement to out-of-district rates, they do not dispute the reasonableness of the specific New York rates that we propose. Indeed, their own fee expert specifically describes these rates as "high" but not "out of line with prevailing market rates" in New York. DI 480-2 at ¶ 150. Thus, should the Court find Plaintiff has demonstrated entitlement to out-of-district rates, it must award the requested rates, whose reasonableness is uncontested, and well-established in our opening brief. *See McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 150–51 (3d Cir. 2009) (opponent bears burden of producing record evidence to contest requested rates); *Shin Da Enters. Inc. v. Yong*, No. 21-CV-03384, 2024 WL 22074, at *1 (E.D. Pa. Jan. 2, 2024) ("In the absence of appropriate record evidence that the rates are improper, plaintiffs must be awarded attorneys' fees at their requested rate.") (cleaned up); DI 466 at 33–43.

### C. Plaintiff's Philadelphia rates are reasonable, while Defendants' proposal is unreasonably low.

As demonstrated in Plaintiff's fee petition and supported by Plaintiff's fee expert, Marc

---

[4] Defendants claim the reference to COVID-19 is a "red herring." DI 480 at 11 n.3. Not at all. During COVID-19, particularly during 2020 while litigation stalled and trials were delayed, fewer cases resolved. For plaintiff's side firms who work on contingency, that made their financial situation precarious and their tolerance for financial risk particularly low at this time.

[5] *Stokes v. City of Philadelphia, et al.*, No. 22 Civ. 00338 (E.D. Pa.) (settled a few months into discovery); *Ogrod v. Detective Martin Devlin, et al.*, No. 21 Civ. 2499 (E.D. Pa.) (settled before end of discovery); *Terrance Lewis v. City of Philadelphia, et al.*, 19-cv-2847 (E.D. Pa.) (settled over 3 months before end of discovery).

[6] Even after the verdict, Defendants have not made a settlement offer approaching the verdict plus what their own expert found to be the reasonable lodestar and costs (which as shown is grossly and unreasonably below the actual compensable fees and costs).

Sonnenfeld, as well as prior court decisions, the Philadelphia rates Plaintiff proposes are reasonable for the high-end of the Philadelphia market for civil rights litigation. *See generally* Ex. 1 (Sonnenfeld Reply Decl.); *id.* Ex. A (Rate Comparison Chart); DI 466-6 (Sonnenfeld Decl.). Courts have consistently found NSBHF's skill, experience, and reputation merit rates "at the high end of the market for civil rights litigation." *See Rosario v. City of New York,* No. 18 Civ. 4023 (LGS), 2023 WL 2523624, at *2 (S.D.N.Y. Mar. 15, 2023); *Restivo v. Nassau County*, No. 06 Civ. 6720, 2015 WL 7734100, at *3 (E.D.N.Y. Nov. 30, 2015), *aff'd sub nom Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017). Defendants do not contest the evidence justifying counsel's skill, experience, and reputation as leaders in the field, and concede the reasonableness of NSBHF's New York rates, which are at the high end of that relevant market. *Cf. Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 97–98 (3d Cir. 2006) (holding requested rate for out-of-district lawyer was reasonable under New Jersey rates even where it would "place him among the few top-earning partners in New Jersey [where] it is plain from his qualifications and experience that he is worthy of such a stature were he practicing in New Jersey").[7] Nevertheless, Defendants propose Philadelphia rates ranging from the low end to well below the un-inflation-adjusted CLS range. *Cf. Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (describing CLS rates as one "fair reflection of the prevailing market rates in Philadelphia.").[8] Despite this marked departure, Defendants' brief does not attempt to defend these individual proposed rates at all, and Defendant's proffered expert, Steven Tasher, whose knowledge of both the civil-rights and Philadelphia markets is questionable, does not attempt to defend any of the proposed rates by

---

[7] Notably, as defense counsel knows, NSBHF has the top four wrongful conviction settlements in Philadelphia, three of them as co-counsel with KRMFL. *See* DI 466-10 (Green Decl.) ¶ 44.

[8] Courts have frequently found the CLS schedule itself artificially low when it comes to skilled attorneys with particularly relevant experience. *See Davis v. Riddle & Assocs., P.C.*, 579 F. Supp. 2d 692, 694 (E.D. Pa. 2008) (noting the CLS fee schedule can be a "useful starting point" but does not take into account factors such as an attorney's particular "skill, experience, and reputation"); *Dennis v. Jastrzembski*, No. CV 18-2689, 2025 WL 1582452, at *3 (E.D. Pa. June 4, 2025) ("[C]ourts may depart from the CLS fee schedule to account for factors…including [] specialized skills, subject matter expertise, and the level of work performed.").

comparison to rates for comparable services actually charged or awarded in Philadelphia. [9] It is clear that Defendants' proposal is wildly low, and that Plaintiff's is reasonable.

For example, Plaintiff supported the $950/hour requested Philadelphia rate for Mr. Brustin—an undisputed titan in the field with 30 years' experience—by reference to the inflation-adjusted CLS schedule ($925), a recent award to a Philadelphia employment lawyer with 30 years' experience ($960), and current rates at comparably top-tier law firms, which start for junior partners at $1075 and span to over double the requested rate ($1950). *See* DI 466 at 47 (citing sources); *see also* Ex. 1 (Sonnenfeld Reply Decl. ¶¶ 7–8); *id.*, Ex. A (Rate Comparison Chart). Defendants do not address any of this authority but propose a rate for Mr. Brustin of $670—well below the bottom of the un-adjusted CLS range for his experience level.

Similarly, the $800/hour proposed Philadelphia rate for Ms. Hoffmann, a nationally recognized expert in § 1983 wrongful conviction law, is supported by the inflation-adjusted CLS schedule for her level of experience ($775) and a recent award to an employment lawyer with 20 years' experience ($870) as well as much higher comparable rates at top-tier Philadelphia firms. Defendants propose $600 an hour—again well below the bottom of the un-adjusted CLS band. Defendants justify their departure in part by selecting a lower CLS band as a point of comparison, because at an earlier time in the litigation Ms. Hoffmann had less experience. That is plainly incorrect: "When attorney's fees are awarded, the current market rate must be used…[which is] the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259 F.3d 146, 149–50 (3d Cir. 2001); *Oross v. Kutztown Univ.*, No. 21 Civ. 05032 (JLS), 2025 WL 3644245, at *3–4 (E.D. Pa. Dec. 16, 2025) (same).

---

[9] *See, e.g., T.H. v. New York City Dep't of Educ.*, No. 21-Civ-10962, 2022 WL 16945703, at *7 (S.D.N.Y. Nov. 15, 2022) (noting "courts in this District have found [Tasher's fee opinion] to be of limited persuasion on multiple occasions"); *Y.S. v. New York City Dep't of Education*, No. 21-Civ-711, 2022 WL 3572935, at *6 (S.D.N.Y. Aug. 19, 2022) (giving "comparatively low weight" to Tasher's declaration where he "does not make a showing of 'scientific, technical, or other specialized knowledge' related to IDEA fees litigation"); *see also* Ex. 1 (Sonnenfeld Reply Decl.) ¶ 4 (noting Tasher does not appear to have any particular expertise with § 1988 litigation or the Philadelphia legal market or even admitted to practice in Pennsylvania.).

Defendants' proposed rate for Mr. Feinberg is even more baffling. Defendants themselves laud Mr. Feinberg's reputation and history of results, *see* DI 480 at 11, and he has over 24 years of experience, over 23 of them at the pre-eminent Philadelphia civil rights firm. *See Dennis v. Jastrzembski*, No. CV 18-2689, 2025 WL 1582452, at \*3 (E.D. Pa. June 4, 2025). Last year he was awarded \$715. *Id.* Without explanation, Defendants propose a \$540 rate here.[10] These are only examples; as demonstrated in Mr. Sonnenfeld's reply declaration and chart, Defendants' proposals are unreasonably low across the board. *See* Ex. 1 & Ex. A.

## II.  Plaintiff's hours are reasonable.

Defendants' opposition notably ignores the most significant factor increasing the amount of time spent on this case: the persistent, resolute opposition by Defendants at every turn. Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (cleaned up); *see also Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001) ("After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [defendant] to castigate the plaintiffs for putting too many troops into the field."); *Oross*, 2025 WL 3644245, at \*5 ("KU fought this matter tooth and nail from the day the case was filed…. After steadfast [opposition] …throughout the litigation, Defendant cannot now complain that the hours expended by Attorneys…in [proving their case]…were unreasonable."); *Victory v. Berks County*, 452 F. Supp. 3d 185, 224–25 (E.D. Pa. 2020) ("Berks County chose to pay its lawyers to vigorously…defend…[its position] while knowing the civil rights plaintiffs, should they prevail, are entitled to reasonable fees and costs. Having made its choice of litigation strategies, we will not now second-guess Class Counsel's need to represent their clients with vigor as well."); *Sec. & Data Techs., Inc. v. Sch. Dist. of Philadelphia*, No. 12-Civ.-2393, 2016 WL 7427758, at \*5 (E.D. Pa. Dec. 20, 2016) (Goldberg, J.) ("[D]efense counsel's litigation

---

[10] These proposals are particularly unreasonable given Tasher's own admission in other contexts that rates have risen substantially recently. Ex. 2 (2025 Arbitration Order) at 9 n.3 ("As Steven Tasher…explained, there was a significant increase in hourly rates in recent years[.]")

approach was to contest most issues and agree to few. Many of the hours [Plaintiff's counsel] expended over the past four and a half years were the direct result of [this] litigation conduct.").

Defendants also cannot dispute that, unlike lawyers who bill paying clients monthly, we had absolutely no incentive to spend extra hours during the life of the case. To the contrary, given our busy docket (the vast majority of our which resolve in a settlement without a fee petition), our own economic incentive was to litigate as efficiently as possible while still winning. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("It would…be the highly atypical civil rights case where plaintiff's lawyer engages in churning."). Now that we have won, over steadfast resistance, Defendants' opposition is "basically a combination of hindsight, sour grapes, nitpicking, and unrealistic afterthoughts." *Cockerill v. Corteva, Inc.*, No. 21-Civ.-3966, 2025 WL 1523002, at \*3–4 (E.D. Pa. May 27, 2025).

## A.  There was no overstaffing.

The specific claims Defendants raise about alleged overstaffing are meritless. For example, Defendants claim there was a pattern of serious overstaffing at depositions and focus on three days: Vinson, Vogelman, and Ellis Day 1. *See* DI 480-2 at 40–41. This is the epitome of cherry-picking, because as the chart attached as Exhibit 3 shows, those were *the only* 3 deposition days—out of 46 days total—where the number of billing representatives of Plaintiff's team outnumbered the number of representatives for Defendants' team. For the vast majority of depositions there were more from Defendants' team than Plaintiffs' side, sometimes lopsidedly so.[11] And that leaves aside that, particularly given Zoom access, attendees on either side need not appear on the record—meaning this is an apples-to-oranges comparison of *all* billing attendees on Plaintiff's side to only on-the-record attendees for Defendants. At bottom, Plaintiff's

---

[11] For example, Plaintiff's deposition of Frank Holmes, where Plaintiff had 1 attendee and Defendants had 6; Plaintiff's deposition of victim W.L., where Plaintiff billed for 1 attendee and Defendants had 6; and Defendants' deposition of Tomekia Gaskins, where Plaintiff billed for 1 attendee and Defendants had 7. Although Defendants criticize Plaintiffs for having supporting attorneys and paralegals present who did not speak on the record, Defendants did the same. For example, of the 7 on the defense side at the Gaskins deposition, only 2 ever spoke on the record.

judgment about how to staff this case was comparable to Defendants'. At most, several extra junior billers could be cut from the three deposition days Defendants point to; there is absolutely no basis for broader cuts across depositions, let alone the entire case, as Defendants request. Indeed, this is a pattern across Defendants' opposition—they make largely inaccurate complaints primarily about junior billers, and then use those to suggest there should be major across-the-board cuts to all hours, including partner hours whose reasonableness they never challenge.

Defendants' claims about trial-staffing are similarly misleading. Tasher again compares Defendants' on-the-record appearances from select days to Plaintiffs' billing attendees (including paralegals). *See* DI 480-2 at ¶ 132. But Defendants also had far more in attendance: at least five other lawyers, up to and including senior management including the City Solicitor herself, attended many trial days when they didn't appear on record. *See* DI 466-9 ¶ 30 (Freudenberger Decl.).[12] Of course, Plaintiff has no way to know how much time was spent by others on Defendants' team outside of court, but the mid-trial addition of several attorneys who had never before entered an appearance, *see* DI 393 (Emily Hoff), DI 397 (Andrew Pomager), but nonetheless represented they were fully familiar with the case, demonstrates there was some. This iterative staffing presumably reflects a real-time judgment that the defense would benefit from additional hands. Defendants can hardly fault Plaintiff for correctly making that call earlier.

In support of the claimed overstaffing, Tasher makes internally inconsistent complaints. On the one hand, he says there should have been a core working group for consistency. On the other hand, he claims we should have delegated more to more junior attorneys. Neither charge has merit. There *was* a core group staffed for most of the case—almost all the depositions were taken by partners Freudenberger and Green, with discovery work handled by associates Romo and Rogachevsky, supported by paralegal Taylor. But the team had to ramp up to handle the enormous volume of work under the time constraints for summary judgment, *Daubert* motions,

---

[12] To the best of Plaintiff's counsel's recollection this includes Ben Jackal and Emily Hoff, as well as supervisors including Chief Deputy City Solicitor of the Civil Rights Unit Danielle Walsh, Chair of the Litigation Group Anne Taylor, and City Solicitor Renee Garcia.

trial preparation and trial. "It is eminently reasonable for multiple attorneys to work on the same assignments, especially where the filings are urgent or important." *Minehan v. McDowell*, No. 21 Civ. 5314, 2023 WL 8701296, at *3 (E.D. Pa. Dec. 15, 2023), *aff'd,* No. 23-2737, 2024 WL 4403873 (3d Cir. Oct. 4, 2024); *Jefferson v. City of Camden*, No. 01 Civ. 4218, 2006 WL 1843178, at *9–10 (D.N.J. June 30, 2006) (rejecting argument that the involvement of multiple counsel on the same tasks demonstrated overstaffing, noting it is "customary" to have multiple lawyers involved in dispositive motions); *see also Tenafly Eruv Ass'n, Inc.*, 195 F. App'x at 100 (rejecting argument the involvement of multiple senior lawyers to "draft, review, and file the briefs, and argue" a "complex constitutional case" was excessive).[13] Again, Defendants had similar staffing at these times, further demonstrating reasonableness.

Defendants then claim some of the work was too partner-heavy.[14] The only example they give is work by a partner researching for and drafting dispositive motions. As other courts have noted, such "criticism is misguided and undervalues legal research and writing, which are often decisive, especially when dealing with complex and unusual issues." *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-14464, 2025 WL 3771284, at *12–13 (D.N.J. Dec. 31, 2025) ("[T]he Court declines Defendants' offer to instruct Class Counsel—two undisputed preeminent law firms with developed experience handling complex class action lawsuits—about

---

[13] A number of the specific complaints Tasher raises about the number of attorneys working on specific tasks are inaccurate or highly misleading. For example, Tasher claims both Brustin and Neufeld billed for work on the summary judgment response, but that's demonstrably false: neither of them billed a single hour between October 2024 and February 2025 (summary judgment motions were filed October 15, 2024 and the opposition filed December 12, 2024). Tasher also claims nine timekeepers billed work on the response on the Order to Show Cause, but that includes four minimal billers who collectively billed 5.4 hours. Notably, Tasher does not identify a single task where he claims the total hours worked were excessive for the task.

[14] Other courts have rejected similar opinions offered by Tasher. *See, e.g., AECOM Tech. Servs., Inc. v. Flatiron*, No. 19-CV-2811-WJM-KAS, 2025 WL 722893, at *11–12, *14 (D. Colo. Mar. 6, 2025) (rejecting Tasher's opinion that senior attorney should not draft briefs and rejecting Tasher's proposed over-30% global fee reduction as too high); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09CV3312PKCVMS, 2018 WL 2766139, at *17, *22 (awarding requested fees in full over Tasher's objections, specifically rejecting his opinion partners did associate-level work) (E.D.N.Y. June 8, 2018), *aff'd,* 790 F. App'x 289 (2d Cir. 2019).

how it should have staffed this case."); *Warner v. Twp. of S. Harrison*, No. 09-cv-6095, 2013 WL 3283945, at \*13 (D.N.J. June 27, 2013) ("Whether [legal research] was more appropriate for an associate or a partner is a question of discretion. While a partner has a higher billing rate,…[he may be] able to research the civil rights issues presented in this case more efficiently due to his expertise and ultimately save the client time and money."); *see also Simring v. Rutgers*, 634 F. App'x 853, 861 (3d Cir. 2015) ("Legal research is an essential part of a lawyer's job and should not always be deemed 'associate level' work.").[15]

At the same time, Defendants complain about time billed by lower-level timekeepers. *See, e.g.,* DI 480-1 (Tasher Decl.) ¶¶ 86–88 (complaining about 27.8 hours spent by Sara Morrison reviewing audio of Mr. Hicks's prison phone calls). Yet Defendants insisted these calls be produced over Plaintiff's burden-based objection, DI 92 at 1; Defendants cannot now object that the calls were reviewed by the lowest rate billers at the firm. Had Plaintiff assigned attorneys to this task, Defendants undoubtedly would have objected this was below their paygrade. So too with deposition digesting, which saves time (and costs) for higher-billers. *Cf.* DI 480-1 (Tasher Decl.) ¶ 88. In other words, even where Defendants' own litigation strategy required *someone* on Plaintiff's team to bill, Defendants improperly criticize *any* assignment as poor billing judgment.

Defendants also compare the total fee request in prior wrongful-conviction cases with this one, to argue the total number of hours should be lower. Again, their argument is fatally flawed. In *Restivo*, the total number of attorney-hours awarded and affirmed was similar; the difference in totals is largely explained by the rate increase over the intervening 11 years. While *Restivo* was in some ways *more* complicated than this case (e.g., two trials, a contested *Daubert* hearing), in others it was far *less* complicated (the second trial was against only two defendants, one of

---

[15] The complaints about alleged "ancillary billers" are similarly inaccurate, for example claiming that Ms. Harris did not speak on the record at any court appearances she attended, DI 480-1 (Tasher Decl) ¶ 124, which is demonstrably false, *see, e.g.* DI 174. Furthermore, that certain lawyers had limited roles where they added value—such as Mr. Neufeld on forensic evidence— is not a basis for discounting their time. Similarly, junior attorneys and paralegals that joined or left the firm over the five-year span the case were not for that reason "ancillary."

whom was deceased, and did not require litigation of a *Monell* claim). Similarly, in *Rosario*, we proceeded to trial only against three defendants (winning against one), never had a *Monell* claim, and had far less contentious document and expert discovery.[16]

### B.  Plaintiff's hours were appropriately documented, with only de minimis errors.

Defendants point to a handful of alleged errors in time records, which they claim support sweeping cuts across the board. But most of Defendants' charges are baseless, and the few actual errors among thousands of entries (which have been corrected) in no way justify further cuts.[17]

Both at trial and at deposition, Defendants compare the time billed to the on-the-record hours, suggesting a discrepancy indicates the billing records are inaccurate. The suggestion that counsel should be in court solely for the minutes recorded on the record is completely divorced from the reality of litigation. Diligent counsel must be in court or at a deposition longer than the hours recorded on the record—sometimes far longer. Different judgment about what time to record as "at a deposition" or "in trial" vs "prepping for a deposition/trial" in no way demonstrates the hours are inaccurate, as Defendants claim. Nor do discrepancies between how long different timekeepers billed to attend depositions or hearings suggests errors. Not so; it just means different billers were present for different periods of time.

Defendants also highlight minor errors with time recorded on one trial day. No one can dispute Plaintiff's counsel worked extremely long hours during trial. Indeed, the Court received briefing submissions and emails over the weekend or late at night before arguments before court the next day and watched the presentation of numerous witnesses which demonstrated hours of

---

[16] In *Dennis*, the application specifically did not include any time spent solely on the *Monell* claim, which was dismissed. *Dennis*, 2025 WL 1582452, at \*4. Moreover, by agreement liability discovery was extremely limited due to pending criminal prosecutions of the officer-defendants. Notably, despite Defendants' lauding that case as "considerably more successful" than this one, DI 480 at 23, the City has thus far refused to pay the judgment due to the absence of the *Monell* finding. In *Howard*, trial was against one defendant and the *Monell* theory—which wasn't tried—was exceptionally narrow and did not require evaluation of past cases or IA records.

[17] Although contemporaneous time-keeping is not required, our hours *are* so recorded. *See Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 400–01 (3d Cir. 2018) (contrasting contemporaneous records kept in litigation with reconstructed ones created for the fee petition).

preparation. Amid these long hours, counsel admittedly made some small errors—particularly in the division of time worked between in-court time and trial preparation time. Defendants cannot demonstrate that these minor errors, since corrected,[18] are indicative of any broader problem. They certainly are not a basis for the sweeping reduction in hours Defendants suggest. While courts are permitted to apply a percentage cut where warranted, any such cut must be reasonably related to its justification. *See Lanni*, 259 F.3d at 152–53 (vacating reduction in costs that appeared excessive and arbitrary). Here, any errors are de minimis and have been specifically addressed; they do not justify an across-the-board reduction, let alone one of 30%.

## III. There is no basis to reduce for limited success.

Defendants repeatedly intone that the requested fees are larger than the damages awarded, suggesting that the Court should reduce the fee award on that basis. That argument is directly barred by the Third Circuit, which expressly held that "the district court cannot adjust counsel fees to maintain a certain ratio between the fees and damages—to insure, for instance, that fees not exceed three times the amount of damages." *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996).

It is true that the Court may consider the degree of success obtained, and if that success is only partial, reduce the fees on that basis. But by every measure other than the extent of the damage award, Plaintiff's success was total. Plaintiff achieved an exceptional *Monell* verdict, on multiple bases, which Defendants do not dispute is the first of its kind in a wrongful conviction case. Plaintiff won on every claim against every trial defendant. And Plaintiff even received a jury finding of his actual innocence, over Defendants' vigorous opposition. This is not limited success. *See Mancini v. Northampton Cnty.*, 836 F.3d 308, 320–21 (3d Cir. 2016) (district court properly declined to reduce for limited success even though plaintiff prevailed on only one out of 15 claims and received a jury award that was 5% of damages requested, where claims shared a common core of facts and plaintiff won on the central issue); *Moorehead v. Sch. Dist. For the*

---

[18] Corrections are recorded in Exhibit 5.

*City of Allentown*, No. 22-Civ.-03959, 2025 WL 1618144, at *4 (E.D. Pa. June 6, 2025) (declining to reduce fee award where plaintiff successfully vindicated his constitutional rights, even though plaintiff rejected $2.5 million settlement offer and received only $131,500 in damages); *Victory*, 452 F. Supp. 3d at 207–08 (rejecting argument fee should be reduced even though plaintiff was awarded $2,800 in damages after making settlement demand of $160,000, where defendant never made a meaningful counter). [19] Defendants do not point to a single example of a court finding limited success in a remotely comparable circumstance.[20]

Defendants' damages argument is internally inconsistent. Plaintiff respectfully submits that the higher verdicts and settlements obtained in other cases only underscore that a new trial on damages is merited. Obviously should the Court grant that motion, that would moot Defendants' argument. But should the Court deny that motion, it would necessarily require a finding that the jury award fairly compensated Plaintiff for the damages he incurred, including 19 years of wrongful imprisonment. And a plaintiff who won on all claims against all trial defendants and received a damages award compensating him for all injuries he suffered achieved an excellent result, not limited success. *See Rosario*, 2023 WL 2523624, at *5 (rejecting similar argument that fees should be reduced for limited success where plaintiff won at trial against only

---

[19] Defendants' argument that the fee should be reduced because several peripheral claims and defendants were dismissed does not even cite the governing standard—perhaps because it is clear they cannot meet it. Where, as here, the claims all "involve a common core of facts or are based on related legal theories," fee reduction is not appropriate merely because plaintiff failed to win on all claims. *See Dennis*, 2025 WL 1582452, at *4 (rejecting City's argument fee award in § 1983 wrongful conviction suit should be reduced because plaintiff lost on one theory at trial and dismissed *Monell* claim). Moreover, Plaintiff had to make strategic judgments to narrow his case given the time limitations imposed at trial.

[20] The few examples Defendants cite involve nominal or near-nominal damages, or where Defendants had made a prior offer many times the verdict—none of which applies here. *See Lohman v. Duryea Borough*, 574 F.3d 163, 165–69 (3d Cir. 2009) (court properly reduced fee award where plaintiff prevailed on only 1 out of 6 claims and received damages award of $12,205—one sixth of previously rejected $75,000 settlement offer); *Sheffer v. Experian Info. Sols., Inc.*, 290 F. Supp. 2d 538, 551 (E.D. Pa. 2003) (reducing fee award for limited success where plaintiff sought $300,000 damages and received $1,000); *Petrunich v. Sun Bldg. Sys., Inc.*, 625 F. Supp. 2d 199, 207–11 (M.D. Pa. 2008) (denying attorney fees for limited success where suit had no public purpose, plaintiff sought $150,000 and received only a nominal award of $1).

one defendant and received lower-than-requested § 1983 wrongful conviction damage award).

## IV. There is no basis to deny Plaintiff fees.

Defendants' request that the Court award no fees barely merits response. Such an extreme sanction would not be remotely supported even if Defendants' objections all had merit (they don't). *See Young v. Smith*, 905 F.3d 229, 236 (3d Cir. 2018) (finding "high threshold" to reject fees entirely met where it was "grossly excessive and absurd, but also fraudulent"); *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 402–03 (3d Cir. 2018) (finding fee request "outrageously excessive" where counsel were entitled to only 13% of the fees they requested).

## V. Plaintiff's expenses are reasonable and adequately supported.

As an initial matter, Defendants' claim that any expenses are undocumented is not true—all expenses were supported by contemporaneous records, including from Plaintiff's counsel's bookkeeping software, supported by a sworn declaration attesting that such figures were actually and reasonably expended. *See, e.g., Buck v. Stankovic*, No. 07-Civ.-0717, 2008 WL 4072656, at *20 (M.D. Pa. Aug. 27, 2008) (describing how declaration itemizing incurred costs, without receipts, is sufficient documentation to support award of costs); *Abel v. Town Sports Int'l, LLC*, No. 09-Civ.-10388, 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 18, 2012) (holding declaration that specific costs were incurred was adequate documentation to support award of costs).

Nor is there any basis for Defendants' accusations of systematic issues with expenses. Ironically, Defendants have made more factual errors in their opposition than they accurately identify in Plaintiff's petition. For example, Defendants repeatedly call out a paralegal's "birthday treat" as a key factor supporting their claim that Plaintiff's counsel lacks billing judgment. DI 480-1 (Tasher Decl.) ¶¶ 43, 140, 229; DI 480 at 2, 11. But that item was never included in Plaintiff's fee request; it is present in the underlying cost records (which Plaintiff produced) but in an exercise of billing judgment was *not included* in the fee petition. Similarly, Defendants complain about an Acela upgrade, *see* DI 480-2 at ¶ 198, that was also never included in Plaintiff's fee petition. Tasher claims Plaintiff submitted for duplicative meals on

14

August 24, 2025, DI 480-2 at ¶ 194, but as is clear from the submission, *see* DI 466-10 at 40–41, this date reflects when Grubhub charges for multiple dates were incurred, not when the meals happened. Despite devoting an entire exhibit to what he terms coffee charges, Tasher ignores more than a dozen descriptions listing these costs as (modest) *meals*. *See* DI 480-10 (Tasher Coffee Exhibit). Defendants also consistently mis-represent the cost of the hotel and war room by summarizing base charges before a negotiated 40% discount (which was reflected in the produced bill). And Defendants dispute the entirety of Plaintiff's trial consultant expenses even though 60% of this expenditure was for a trial technician, something Defendants themselves used as well for the length of trial. *See* DI 480-1 (Tasher Decl.) ¶¶ 210–11; DI 466-10 at 29. [21]

The costs Defendants have identified which we agree should be withdrawn amount to $521.85–or approximately 0.15% of all submitted expenses.[22] That those entries were overlooked in the initial review is understandable; it in no way suggests poor billing judgment. Ex. 1 (Sonnenfeld Reply Decl.) ¶ 12. These issues do not come close to supporting Defendants' proposed reduction of 45% in costs, let alone their proposed reduction of over 50% in fees. Neither Defendants nor Tasher cite any authority for the proposition that disallowing certain costs would justify a reduction in fees at all. Logically, that simply does not follow.

## CONCLUSION

For the reasons stated herein, Plaintiff seeks a reasonable fee award of $8,051,300.00 on the merits, $53,323.75 for travel, and $131,207.50 for the fee petition (under New York rates) or $6,956,910.00 on the merits, $46,464.25 for travel, and $112,779.00 for the fee petition (under Philadelphia rates). Plaintiff also seeks $336,583.31 in compensable costs. In sum, Plaintiff seeks $8,572,414.56 applying New York rates or $7,452,736.56 applying Philadelphia rates.

---

[21] Defendants likewise remain fixated on a single lamp counsel purchased to enable work in the hotel, DI 480 at 2, 4, 20—a cost that, though reasonable in the first place, Plaintiff has nonetheless withdrawn. Ex. 1 (Sonnenfeld Reply Decl.) ¶ 13.

[22] As indicated in Exhibit 4, attached, an updated chart with corrected totals, we identified arithmetic errors in two of the expense charts, in addition to removing certain costs. The updated correct expense totals are $70,951.25 for Chart 2 (depositions/discovery), $70,647.61 for Chart 9 (travel) and $126,874.90 for Chart 10 (trial), for an updated total of $336,583.31.

Dated: February 3, 2026

Respectfully submitted,

*/s/ Anna Benvenutti Hoffmann*
Anna Benvenutti Hoffmann*
Emma Freudenberger*
Amelia Green*
Nick Brustin*
Katrina C. Rogachevsky
Mary Katherine McCarthy*
Grace Paras*
Katherine Cion*
Neufeld Scheck Brustin Hoffmann &
   Freudenberger, LLP
200 Varick Street, Suite 800
New York, NY 10014
(212) 965-9081
*Attorneys admitted to the Eastern
   District of Pennsylvania pro hac vice*

Jonathan H. Feinberg
Susan M. Lin
Grace Harris
Kairys, Rudovsky, Messing, Feinberg & Lin
   LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

*Counsel for Plaintiff Termaine Hicks*

16

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record and serve a copy of the same filing via electronic mail on all parties.

/s/ Joanne Park
Joanne Park
Paralegal

17