# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERMAINE HICKS                                    CIVIL ACTION

v.

CITY OF PHILADELPHIA, et al..                     NO. 22-977

REPLY DECLARATION OF MARC J. SONNENFELD

1. The law firm of Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP ("NSBHF") has requested that I reply to Defendants' Response in Opposition to Plaintiff's Motion for Attorneys' Fees ("Response") and to the Declaration of Steven A. Tasher, Esq. in support thereof filed January 20, 2026.

2. I have carefully reviewed the Response and Mr. Tasher's Declaration and nothing therein causes me to change or modify any of the opinions I expressed in my Declaration filed in this matter October 30, 2025 as to the reasonableness of Plaintiff's request to award attorneys' fees under 42 U.S.C. §1988 with respect to fourteen NSBHF attorneys and two attorneys from Kairys, Rudofsky, Messing, Feinberg & Lin LLP ("KRMFL") as well as their interns, law clerks and paralegals.

3. I supplement the Experience and Qualifications section of my previous declaration to note one subsequent event. On December 4, 2025, under the auspices of the Administrative Office of the Pennsylvania Courts and the American College of Trial Lawyers, I taught a two-hour continuing legal education program by Webex for Pennsylvania state court judges on the subject of what Pennsylvania state court judges should know about the Pennsylvania Business Corporation Law of 1988, as amended ("PABCL"), emphasizing the important differences between the PABCL and the Delaware General Corporation Law. Approximately 200 Pennsylvania state court judges registered for this program.

4. At the outset, I note that Mr. Tasher does not appear to be admitted to practice in the Commonwealth of Pennsylvania, nor does Mr. Tasher appear ever to have practiced law in this judicial district and nor does Mr. Tasher appear to have any direct experience with the award of fees under 42 U.S.C. §1988. In contrast, I have been admitted to the Pennsylvania bar since November 17, 1971 (not 1974 as incorrectly suggested by Mr. Tasher at Paragraph 162 of his Declaration), and I was thereafter actively engaged in the practice of law in Pennsylvania for 50 years before my retirement. Since my retirement, I served as an expert witness on the award of fees in this Court and in the Court of Common Pleas of Philadelphia, and have served as a judge

1

pro tem in that Court and as an arbitrator and as a member of a "special litigation committee" for a public company in a matter pending before this Court.

5. In paragraphs 216 to 230 at pages 86 to 91 of his Declaration, Mr. Tasher purports to offer a "Rebuttal to the Sonnenfeld Declaration." In paragraph 216, Mr. Tasher expressly acknowledges ". . . I do not dispute his credentials and many years of experience in practice . . . ." Nonetheless, in this section of his Declaration, Mr. Tasher challenges the following four specific aspects of my Declaration: (a) my opinions about the results obtained (paragraphs 218-221), (b) my opinions about complexity/novelty (paragraphs 222-223), (c) my staffing and billing judgment opinions (paragraphs 224-227) and (d) my alleged lack of review of work product/expenses (paragraphs 228-229). Notably, this section of Mr. Tasher's declaration does not mention my opinion that all of the hourly billing rates for which recovery is sought are reasonable.

6. Mr. Tasher purports to evaluate the hourly rates of plaintiff's counsel in paragraphs 147 to 172 at pages 61 to 70 of his Declaration. In paragraph 150 at page 62 of his Declaration, Mr. Tasher concedes with respect to plaintiff's sought New York rates, ". . . . I do not believe they are out of line with prevailing market rates for smaller firms in greater New York City." Nor could Mr. Tasher reasonably opine otherwise as to plaintiff's sought New York rates since, as I noted in paragraph 15 at page 5 of my Declaration, the reasonable hourly rates for seven of the fourteen NSBHF lawyers for whom compensation is sought in this case were addressed by Judge Lorna G. Schofield of the United States District Court for the Southern District of New York in another action under 42 U.S.C. §1983 against the City of New York and several of its police officers. *Richard Rosario v. City of New York*, et al., No. 18 Civ. 4023 (LGS) (S.D.N.Y. March 15, 2023). Here, plaintiff's sought New York rates are entirely consistent with those approved by Judge Schofield in *Rosario* with a modest upward adjustment reflecting the passage of more than two and a half years.

7. Nonetheless, in paragraphs 154 to 166 at pages 64 to 68 of his Declaration, Mr. Tasher challenges plaintiff's sought Philadelphia rates because, "The Philadelphia rates sought are very close to the sought New York rates." (Paragraph 154 at page 64). However, nowhere in his Declaration does Mr. Tasher consider the recent decision of Judge Juan R. Sanchez of the EDPA, discussed in paragraph 16 at pages 5-6 of my Declaration, addressing the reasonable hourly rate for Jonathan Feinberg of KRMFL, who is co-counsel with NSBHF in this case, in another action under 42 U.S.C. §1983 against two Philadelphia police officers. *James Dennis v. Detective Frank Jastrzembski and Detective Manuel Santiago*, Civil Action No. 18-2689 (EDPA June 4, 2025), and in which I served as plaintiff's fee expert. In *Dennis*, consistent with my opinion and adjusting the underlying Community Legal Services rates for inflation, Judge Sanchez approved an hourly rate of $715 for Mr. Feinberg, as well as hourly rates of $1,150 and $1,000, respectively, for two other KRMFL partners not involved in this case - David Rudovsky and Paul Messing. Mr. Tasher also overlooks the recent decision of Judge Cynthia Rufe of the United States District Court for the Eastern District of Pennsylvania in *Tzvia Wexler v. Charmaine Hawkins and James Koenig*, Civil Action No. 19-5760, 2024 WL 3557438 at *2 (E.D.P.A. July 25, 2024), in which Judge Rufe applied the CLS fee schedule in approving as reasonable under 42 U.S.C. §1988 an hourly rate of $725 for a lawyer with considerably less experience than Mr. Feinberg or the senior NSBHF partners here. So too with *In re Suboxone (Buprenorphine*

2

*Hydrocholride and Naloxone) Antitrust Litigation*, No. 13 MD 2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024), where Judge Goldberg approved an hourly rate of $1550/hour for co-lead class counsel as appearing "well within the reasonable range for Class Counsels' experience and for the region." *Id.* at *17. And Mr. Tasher's assertions cannot account for the rates awarded by Judge Slomsky in *Meigs v. Care Providers Insurance Services, LLC*, No. 21 Civ. 867, 2024 WL 21792 (E.D. Pa. Jan. 2, 2024), a civil rights matter dealing in employment discrimination. There, in what was a significantly less complicated matter than the instant one, Judge Slomsky approved a $960/hour rate for a firm's founder and co-managing member with 30 years of experience focused on employment law, and $870/hour for a co-managing member with 20 years of experience in employment law. Adjusted for inflation, these rates are perfectly commensurate with the Philadelphia rates requested by the senior partners here, all of whom have dedicated their careers to civil rights work of exactly this type. Surprisingly, Mr. Tasher nowhere in his report cites any of the abundant case law from the Eastern District of Pennsylvania or elsewhere on reasonable hourly rates for the award of counsel fees.

8.  In paragraphs 167 to 172 at pages 68 to 70 of his Declaration, Mr. Tasher offers what I consider to be a reverse-engineered "counter-proposal" to plaintiff's sought Philadelphia rates.  Here, Mr. Tasher concocts with no cited authority a ratio he applies to plaintiff's sought New York rates to adjust plaintiff's sought Philadelphia rates.  This contrivance leads to the absurd results set forth in the chart at paragraph 173 at page 70 of Mr. Tasher's Declaration.   The absurdity is perhaps best shown by Mr. Tasher's proposed $540 rate for Mr. Feinberg in contrast to the rate of $715 per hour recently approved by Judge Sanchez for Mr. Feinberg in *Dennis*. Or consider Mr. Tasher's proposed rate for Mr. Neufeld, a co-founding partner of NSBHF with nearly half a century's experience litigating wrongful conviction cases: $770/hour. That is far below the $1,150 or $1,000 awarded to Mr. Rudovsky and Mr. Messing, respectively, Mr. Neufeld's analogues in *Dennis*, and at the low end of the Community Legal Services schedule range that, according to the *Dennis* court, offered artificially deflated rates that failed to consider Plaintiff's counsel's significant experience and expertise in civil rights work in particular. *Dennis*, 2025 WL 1582452, at *3. These inconsistencies with both past awards and the Community Legal Services schedule apply across the board to Mr. Tasher's "counter-proposal." *See* Ex. A (Rate Comparison Chart). At bottom, based on my knowledge and experience, as well as all of the evidence I have reviewed regarding this case in particular, Mr. Tasher's proposed Philadelphia rates are simply inconsistent with the realities of the Philadelphia legal market.

9.  At pages 5-9 of their Response, defendants wrongly argue that the Court can disregard the sought New York rates that Mr. Tasher finds reasonable "because Plaintiff has not met his burden to prove the *Interfaith* exception applies."   In *Interfaith*, the Third Circuit affirmed the District Court's conclusion that the plaintiff there had satisfied the second exception to the "forum rate rule" declaring, "What persuades us is the Lloyd affidavit, insofar as it states that no attorney in northern New Jersey would have been willing to handle this case without an immediate advance of out of pocket costs, which is this case, foreseeably amounted to over one million dollars." *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.2d 694, 707 (3d Cir. 2005).  This excerpt from the Lloyd affidavit in *Interfaith* is virtually indistinguishable from comparable statements in the declarations of Jonathan H. Feinberg of KRMFL and Alan J. Tauber of Wiseman & Schwartz here that it would have been very difficult

3

if not impossible, for Mr. Dennis to retain civil rights counsel in Philadelphia who would accept the risk of taking a leading role in the litigation presenting the challenges involved in this case. Indeed, as I said in paragraph 12 of my Declaration, "I agree with Mr. Feinberg and Mr. Tauber, inter alia, that given the challenges and risks posed by this case, I do not believe Plaintiff would have been able to secure representation from a Philadelphia-based attorney or law firm willing to on its own assume the risk of litigating a case of this nature without contemporaneous payment for their services and expenses."

10. Mr. Tasher faults my "comments in passing that [I] 'considered the excellent result obtained.'" (Paragraphs 218-221 at pages 87-88) This is disingenuous. Mr. Hicks won on all claims against all defendants, and specifically prevailed on all of his *Monell* claims, a result to my understanding previously unheard of in wrongful conviction cases against the City of Philadelphia. This is, by all accounts, an excellent result. The jury awarded $3 million dollars - a substantial amount. That it is less than a hypothetical amount hoped for or amounts awarded in other cases does not detract from it being an excellent result. *See Rosario v. City of New York*, No. 18 Civ. 4023, 2023 WL 2523624, at *4 (S.D.N.Y. Mar. 15, 2023) ("reasonable people may disagree about whether [a multimillion dollar damages award] is sufficient compensation for twenty years of wrongful incarceration, but it is a lot of money by any metric. . . . The award here reflects the jury's view that the deprivation of Plaintiff's rights was very serious. It would create a seriously perverse incentives if a lawyer's zealous advocacy that a jury should place a high value on their clients' life and liberty meant that the lawyer would get paid less if the jury awarded a lower, but still substantial, amount."). Indeed, prevailing on the issue of liability over an extraordinarily aggressive defense is an excellent result regardless of the amount of damages awarded.

11. Mr. Tasher also challenges my opinions about complexity and novelty. (Paragraphs 222-223 at pages 88-89). However, it is undisputed that this was a 13-day jury trial. Moreover, as noted in paragraph 20 at pages 6-7 of my Declaration, plaintiff survived defendants' motions to dismiss and for summary judgment. NSBHF also prepared and litigated numerous pretrial motions involving complex and novel issues of law, including preparing and responding to Daubert motions and motions in limine. Pretrial discovery was extensive, including the depositions of plaintiff and the victim as well as 14 defendants and Philadelphia police department officers, 14 experts, 9 damage witnesses and two third party witnesses. At the 13-day trial, at least 20 fact and 13 expert witnesses testified. Then, both sides filed and briefed post-trial motions.

12. In paragraphs 224-227 at pages 89-90 of his Declaration, Mr. Tasher criticizes my staffing and billing judgment opinions. This is a hindsight analysis. After D-Day, surely there were those who thought that Eisenhower could have won with fewer troops. That is easy to say in hindsight. Here, NSBHF had no incentive to be inefficient or overstaff. There was no guarantee of payment. They were not submitting monthly bills for payment by a solvent client or insurance carrier. Here, NSBHF was advancing the salaries of its lawyers and was completely at risk for payment after carrying this advancement for several years. This was not a risk Mr. Tasher ever bore in his distinguished career.

4

13. In paragraphs 228-229 at pages 90-91, Mr. Tasher faults my lack of review of work product and expenses. Specifically, Mr. Tasher suggests I should have reviewed motions, pleadings and transcripts. I must ask what purpose would be served by this? There is no genuine dispute here as to the quality of NSBHF's work product. As to expenses, I did not offer an opinion on them, and therefore had no need to conduct what would be tantamount to an audit of them. Mr. Tasher does seem to cherry-pick what he faults. He seems obsessed with the purchase of a lamp for a hotel room, a purchase that Plaintiff's counsel have now removed from their bill. Having spent many nights in hotel rooms while traveling for my practice over past 50 years, I have frequently found that these hotel rooms were poorly lit for the reading and preparation I had to do in the evening. Indeed, just last month while staying at the recently renovated Waldorf Astoria Hotel in New York City for the annual dinner of the Pennsylvania Society, my room (for which I was charged $1,600 plus taxes) was so dimly lit, even taking into account my age, that I had to request guest service at the hotel to provide me with a flashlight! Further, to the extent that adequate lighting in her hotel room saved even 15 minutes of a partner's time (otherwise to be spent squinting at papers), the relatively modest expenditure on the lamp undoubtedly saved more money in unbilled attorney hours than it cost. In any event, the purchase of the lamp certainly has no bearing on counsel's billing judgment, as Mr. Tasher opaquely suggests.

14. Implicit in the Response is defendants' argument that the fees sought are disproportionate to the jury award. However, when a defendant engages in "trench warfare" and there is a statutory fee-shifting provision, the defendant takes the risk that attorneys' fees awarded may exceed the value of the underlying claim. *Mountain View Condominium Association v. Bomersbach*, 734 A.2d 468, 469-71 (Pa Cmwlth. 1999). *Accord, Richards v. Ameriprise Financial, Inc.*, 217 A.2d 854, 870 (Pa. Super. 2019) (holding that attorneys' fees awarded are often a multiple of actual damages). In *Rosario*, Judge Schofield expressly held, "reasonable attorneys fees under Section 1988 . . . need not be proportionate to an award of money damages." 2023 WL 2523624, at *4.

15. The foregoing are my opinions to a reasonable degree of professional certainty.

16. I reserve the right to modify or amend my opinions upon receiving additional information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 30th day of January, 2026, in Philadelphia, Pennsylvania.

Marc J. Sonnenfeld

5

**Exhibit A: Rate Comparison Chart**

| | Plaintiff's Proposed Philadelphia Rates | CLS Schedule (adjusted for inflation) | *Dennis v. Jastrzembski*[1] | *Meigs v. Care Providers Ins. Servs.*[2] | *Cockerill v. Corteva, Inc.*[3] | *In re Suboxone*[4] | *Braun v. Philadelphia Inquirer*[5] | *In re Viropharma Inc., Sec. Litig.*[6] | *Fulton-Green v. Accolade, Inc.*[7] | Tasher's Proposed Philadelphia Rates |
|---|---|---|---|---|---|---|---|---|---|---|
| Senior Partners/ 30+ years of experience | $950–$1050 | $796–$920 | $1000–$1150 | $960 | $1175–$1275 | $1550 for co-lead counsel, working downward | $750–$975 | $610–$925 | $765–$975 | $670–$770 |
| Senior Partners/ 20+ years of experience | $800 | $682–$774 | $715 | $870 | $1175–$1275 | | $750–$975 | $610–$925 | $765–$975 | $540–$600 |
| Junior Partners/ 10+ years of experience | $550 | $454–$568 | | | $900 | | | | | $440 |
| Counsel/10-20 years of experience | $475–$550 | $454–$568 | | | $900 | | $675 | $475–$750 | | $390–$400 |
| Associates/2-10 years of experience | $350–$450 | $287–$449 | | | | | $450–$595 | $350–$700 | $550–$748 | $300–$350 |
| Paralegals | $205 | $205–$260 | | | | | $210–$320 | | $202–$450 | $190 |

[1] No. 18 Civ. 2689 (E.D. Pa. June 4, 2025)
[2] No. 21 Civ. 867 (E.D. Pa. Jan 2, 2024)
[3] No. 21 Civ. 3966, DI 386-1
[4] No. 13 MD 2445 (E.D. Pa. Feb. 27, 2024)
[5] No. 22 Civ. 4185, DI 70-3
[6] No. 12 Civ. 2714 (E.D. Pa. Jan. 25, 2016)
[7] No. 18 Civ. 274, DI 32

1