# Exhibit 2

Case 2:22-cv-00977-JFM    Document 489-2    Filed 02/03/26    Page 2 of 16

## AMERICAN ARBITRATION ASSOCIATION

|  |  |  |
|---|---|---|
| **In the Matter of Arbitration** | ) | |
| **Between:** | ) | |
| | ) | |
| David Duquette; Chris Hayes; Erik | ) | |
| Rodie; Laura Rodie; David J. | ) | |
| Schwartz; James B. Sharpe, Jr.; James | ) | |
| Sharpe, Sr.; Rob Steir; Donald Teague; | ) | |
| and Buckner Woodford IV, | ) | |
| | ) | |
| Claimants, | ) | AAA Case No. 01-20-0019-3259 |
| | ) | |
| v. | ) | |
| | ) | |
| Lux Capital Management, LLC, f/k/a | ) | |
| Lux Capital Group, LLC; Joshua H. | ) | |
| Wolfe; and Peter J. Hebert, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## <u>ARBITRATION ORDER</u>

On September 11, 2024, the Panel issued a final award (the "Award") in this arbitration proceeding in favor of Respondents Lux Capital Management, LLC, f/k/a Lux Capital Group, LLC ("LCM"), Joshua H. Wolfe, and Peter J. Hebert (together, "Respondents"). In the Award, the Panel ordered that Claimants David Duquette, Chris Hayes, Erik Rodie, Laura Rodie, David J. Schwartz, James B. Sharpe, Jr., James Sharpe, Sr., Rob Steir, Donald Teague, and Buckner Woodford IV ("Claimants," and, together with Respondents, the "Parties") pay "Respondents their reasonable fees and expenses." Award at 32. The Panel based its fee award on

Section 13.7 of LCM's Operating Agreement of December 17, 2017, which provides that "[i]f the Company or any Member retains counsel for the purpose of enforcing or preventing the breach or any threatened breach of any provision of this Agreement or for any other remedy relating to it, then the prevailing party will be entitled to be reimbursed by the nonprevailing party for all costs and expenses so incurred (including reasonable attorney's fees, costs of bonds, and fees and expenses for expert witnesses)." JX9. The Panel further ordered Respondents to provide information regarding the fees and expenses for which they were seeking reimbursement.

On September 25, 2024, Respondents submitted their fee application (the "Fee Application"). Respondents requested payment of $21,648,514.29 for three categories of fees and expenses: First, $15,501,613.25 in fees; second, $5,499,039.86 in expenses, and third, $647,861.18 in arbitration costs. After the submission of the Fee Application, the parties engaged in discovery.

On January 23, 2025, Claimants submitted an opposition to the Fee Application (the "Opposition"). The Opposition asserted that Claimants should not need to pay any sum to Respondents. *See* Opposition at 2.

On February 13, 2025, Respondents' submitted a reply in support of the Fee Application (the "Reply").

The Panel has conferred regarding the Fee Application.

2

**FEES AND EXPENSES RESPONDENTS' INSURERS REIMBURSED**

The Fee Application stated "Lux's insurance carrier reimbursed Lux for $10 million in Arbitration-related expenditures, which was the limit of the relevant policies." Fee Application at 23 n.11. Claimants argue that the Panel should not award Respondents this sum. Claimants assert that an order of a previous arbitration panel (the "Prior Arbitration Order") interpreting Section 13.7 bars reimbursement of those fees. The Prior Arbitration Order found that the claimants in that arbitration were not responsible for certain sums which the respondents' insurers had paid on their behalf.

The Panel finds that the Prior Arbitration Order does not bar fee shifting. "Collateral estoppel does not apply when the essential facts of the earlier case differ from the instant one, even if they involve similar legal issues." *Travelers Indem. Co. v. Northrop Grumman Corp.,* 2021 WL 4255073, at *34 (S.D.N.Y. Sept. 17, 2021) (citing *Kudla v. Kudla,* 105 N.Y.S.3d 546, 548 (2d Dep't 2019)). That is the case here. Critically, the Prior Arbitration Order concerned fees which the Respondents' insurers advanced, and which the Respondents themselves never paid. Here, however, the fees at issue are those for which Respondents paid, and then were subsequently reimbursed by their insurers. Thus, the Prior Arbitration Order's conclusion "Respondents never 'spent' anything for most of their costs and expenses," Prior Arbitration Award at 32, is not applicable.

3

Case 2:22-cv-00977-JFM   Document 489-2   Filed 02/03/26   Page 5 of 16

Section 13.7 provides for shifting of fees and expenses the prevailing party "incurred." Here, the Panel concludes that Respondents "incurred" the $10 million for which Lux's insurance carrier reimbursed Lux. The Operating Agreement does not define "incur." "Under New York law, to 'incur' means 'to become liable or subject to'; to incur a charge, one 'must at some point be legally liable to pay that charge.'" *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 60–61 (2d Cir. 2021). *See also Metz v. U.S. Life Ins. Co. in City of New York*, 662 F.3d 600, 602 (2d Cir. 2011) ("The parties do not dispute that this appeal is controlled by New York substantive law, which defines 'incurred' for insurance purposes as 'to become liable or subject to.' New York precedent makes clear that in this context liability for a charge begins at the time of treatment for which the charge is imposed, and that an insured may be considered liable for a charge even if the insured does not ultimately pay that charge in full or in part.").[1]

Consequently, the Panel finds that Claimants are responsible for fees and expenses which Respondents' insurers reimbursed (with the exception of fees and expenses which the Panel has found to be unreasonable as detailed below).

---

[1] The Panel discussed whether Section 13.7 would limit Respondents' recovery to the sums they spent out-of-pocket to obtain the insurance that reimbursed the $10 million. However, neither party presented that argument, and the Panel declines to reach that conclusion.

## REASONABLENESS OF RESPONDENTS' FEES

Under New York law, a party seeking an award of fees must show that the fees it requests are reasonable. *See EVUNP Holdings LLC v. Frydman*, 154 A.D. 3d 558, 559 (1st Dep't 2017). Claimants assert numerous reasons why Respondents' fees are unreasonable, including the amount of attorneys staffing certain tasks, Respondents' counsel's hourly rates, expert fees, and certain costs.

The Panel can "exclude ... hours that are excessive, redundant, or otherwise unnecessary." *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 28 (N.D.N.Y. Mar. 11, 2015). Both Respondents and Respondents' insurers ultimately reviewed and approved some of the requested fees. At the time Respondents' incurred the fees and expenses at issue, there were no guarantees that the Panel would find in their favor and order fee shifting. Thus, Respondents had the incentive to ensure that the fees incurred were reasonable, as they may have been ultimately liable for some or all of those fees. Similarly, their insurers had the incentive to ensure that they were not paying unreasonably high attorneys' fees and expenses. Under New York law, where a client agrees to pay an attorneys' fees, those fees are presumptively reasonable. *See Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003) ("Here, the amounts expended by Wells Fargo are presumptively reasonable. In contracting for legal services, it had ample incentive to negotiate a favorable hourly rate and to monitor the appropriateness of the number of hours

5

billed."). Thus, the Panel finds that the fees Respondents request are presumptively reasonable. However, the Panel addresses certain objections specifically below, and it has found that certain fees Respondents have requested are not reasonable.

**Attorney Staffing And Work**

Claimants raise numerous objections regarding the staffing of Respondents' counsel and the work that counsel performed. As a general matter, the Panel is loath to second guess the staffing decisions of counsel, particularly where sophisticated clients have approved of the staffing decisions and paid the resulting fees. Further, this arbitration was a complex matter raising issues of contract law and governance with millions of dollars at stake, necessitating substantial staffing. Claimants cannot be heard to complain regarding many of Respondents' counsel's decisions when their own tactical decisions, such as bringing certain motions or refusing to provide certain discovery, necessitated additional staff. Reply at 18-20. Therefore, the Panel generally rejects Claimants' objections that Respondents' performed duplicative or unnecessary work. However, there are certain instances where the Panel finds that Claimants have raised valid objections regarding staffing.

The Panel held a hearing in this proceeding from February 26-29, 2024 (the "Hearing"). At the Hearing, Respondent had six attorneys examine or cross-

examine witnesses or present to the Panel.[2]  The Panel finds that the fees for hearing attendance for those attorneys was reasonably incurred.  However, the Panel holds that fees for attorneys who attended the Hearing but did not present or examine witnesses is not reasonable.  Thus, the Panel holds that Claimants do not need to pay any of the fees for those attorneys' attendance.

The Panel also finds that the costs of having its experts attend the Hearing for time other than when they were testifying is not reasonable, and Claimants need not pay those fees.

The Panel also concludes that the costs of having attorneys who attended oral argument on the dispositive motions who did not argue or the costs of attorneys attending depositions who were not questioning or defending and Claimants need not pay those costs.

Claimants argue that Respondents seek reimbursement for administrative tasks that their counsel billed at attorney or paralegal rates.  Opp. at 23-25.  The Panel finds that it was unreasonable to bill these administrative tasks at these rates.  While Respondents argue that Claimants have not sufficiently identified the relevant entries, Reply at 24, Respondents' counsel's use of block billing prevented the Panel

---

[2] Those six attorneys were Philippe Selendy, Alan Levine, Philip Bowman, Oscar Shine, Laura King, and Claire O'Brien.

from being able to properly evaluate what portion of the fees were related to these tasks. The Claimants need not pay these fees.

The Panel also finds that hours Respondents' counsel spent working on a summary judgment motion for which the Panel did not grant leave to file is unreasonable, as the Panel has the discretion to refuse to award fees for "submissions that were never filed." *Stanbro Palou Stanbro v. Westchester Cnty. Health Care Corp.*, 2024 WL 1214560, at *10 (S.D.N.Y. Mar. 21, 2024).

### Block Billing and Descriptions

Claimants object to the Respondents' use of block billing for certain fees and some descriptions. However, as Respondents point out, block billing is permissible unless it impedes the Panel's ability to determine the reasonableness of the fees. Here, the Panel does not find that the use of block billing or the descriptions that Respondents' counsel used impede the ability to evaluate the reasonableness of the fees, particularly where these invoices were sufficient for the clients and insurers who actually paid the fees at first, with limited exceptions discussed below.

### Respondents' Counsel's Hourly Rates

Claimants assert that the hourly rates for certain of Respondents' attorneys are excessive and unreasonable. Opposition at 7-12. The Respondents agreed to pay these rates, and they are presumptively reasonable. *See Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003). Claimants

8

Case 2:22-cv-00977-JFM    Document 489-2    Filed 02/03/26    Page 10 of 16

cite certain cases where courts have approved lower rates or reduced rates comparable to those for Respondents' attorneys. *See* Opposition at 8-9. However, Respondents' rates are largely within the range of fees that courts in both New York and Delaware have approved for complex commercial litigation. *See Tasher Aff.* at ¶¶83-84.[3] Claimants' expert, Knapton, also cites to the Real Rate Report as evidence that the rates are not reasonable. However, the use of the Real Rate Report in this matter suffers from significant flaws. For example, the Real Rate Reports uses a New York Metropolitan Area rate, which includes rates for geographic areas where attorneys would typically have lower rates than those located in New York City. *See* Tasher Aff. at ¶106. The Real Rate Report also fails to address significant increases in attorneys' rates in recent years for similar litigation. *See id.* at ¶¶110-112. Given the complexity of this matter, the Panel cannot conclude the rates charged were unreasonable.

**Expert Fees and Expenses**

Claimants have multiple objections to the fees and expenses of Respondents' four witnesses. Opp. at 26-28. The Panel notes that Section 13.7 specifically applies to "fees and expenses for expert witnesses." Thus, Claimants are liable for those

---

[3] While some of the fees requested here exceed those ranges, those awards were from a few years ago. As Steven Tasher, Respondents' expert, explained, there was a significant increase in hourly rates in recent years, Tasher Aff. at ¶111, and the Panel does not find that the requested rates are unreasonable.

9

Case 2:22-cv-00977-JFM   Document 489-2   Filed 02/03/26   Page 11 of 16

fees and expenses as long as they are reasonable. Respondents had two expert witnesses testify, Paul Gompers and Charles Moore. The Panel cited to both of them in its ruling. The Panel finds that their testimony and the related expenses were reasonable. While Wayne Guay did not testify, the Panel finds that his work rebutting the compensation opinion of Claimants' expert, Marc Brown, was reasonable.

However, the Panel finds that the fees for Charles Nathan were not reasonable. Ultimately, Respondents did not present him at trial. The Panel did not rely upon his testimony in its ruling. Further, Nathan was testifying regarding a legal issue, whether the Merger should be treated as a single-step transaction, instead of on factual matters as to which the Panel required expert assistance.

### Arbitrators' Fees

The parties dispute whether, under the Operating Agreement, Claimants are liable for the entirety of the fees and expenses of the arbitrators. The Panel finds that Claimants are liable for the arbitrators' fees and expenses. While Section 13.6 provides that the parties must split arbitrator fees during the pendency of the litigation, Section 13.7 provides that the non-prevailing party is liable for "all costs and expenses" the prevailing party incurs, with no exceptions for arbitrators' fees and expenses. Thus, the plain reading of the Operating Agreement is that, once a

Case 2:22-cv-00977-JFM    Document 489-2    Filed 02/03/26    Page 12 of 16

decision has been made regarding the prevailing party, the non-prevailing party is liable for the share of the arbitrator fees that the prevailing party originally paid.

### CONCLUSION

The Panel orders that Respondents provide an updated fee and expense total reflecting this Order with fourteen days.

_____
Myron T. Steele, Chair

_____
Paul Vizcarrondo

**Arbitrator Platt In Dissent:**

**FEES AND EXPENSES RESPONDENTS' INSURERS REIMBURSED**

I disagree with the Panel's conclusion on page 4 of the Order that that "Claimants are responsible for fees and expenses which Respondents' insurers reimbursed…."

Section 13.7 of the Operating Agreement provides that Respondents are entitled to be reimbursed for costs and expenses that they incurred when they retained counsel in this proceeding. In particular, Section 13.7, titled "Costs," provides in relevant part:

> "If the Company or any Member retains counsel for the purpose of enforcing or preventing the breach or any threatened breach of any provision of this agreement or for any other remedy relating to it, then the prevailing party will be entitled to be *reimbursed* by the non-

11

geographical areas where attorneys would typically have lower rates than those located in New York City. *See* Tasher Aff. at ¶106. The Real Rate Report also fails to address significant increases in attorneys' rates in recent years for similar litigation. *See id.* at ¶¶110-112. Given the complexity of this matter, the Panel cannot conclude the rates charged were unreasonable.

### Expert Fees and Expenses

Claimants have multiple objections to the fees and expenses of Respondents' four witnesses. Opp. at 26-28. The Panel notes that Section 13.7 specifically applies to "fees and expenses for expert witnesses." Thus, Claimants are liable for those fees and expenses as long as they are reasonable. Respondents had two expert witnesses testify, Paul Gompers and Charles Moore. The Panel cited to both of them in its ruling. The Panel finds that their testimony and the related expenses were reasonable. While Wayne Guay did not testify, the Panel finds that his work rebutting the compensation opinion of Claimants' expert, Marc Brown, was reasonable.

However, the Panel finds that the fees for Charles Nathan were not reasonable. Ultimately, Respondents did not present him at trial. The Panel did not rely upon his testimony in its ruling. Further, Nathan was testifying regarding a legal issue, whether the Merger should be treated as a single-step transaction, instead of on factual matters as to which the Panel required expert assistance.

### Arbitrators' Fees

The parties dispute whether, under the Operating Agreement, Claimants are liable for the entirety of the fees and expenses of the arbitrators. The Panel finds that Claimants are liable for the arbitrators' fees and expenses. While Section 13.6 provides that the parties must split arbitrator fees during the pendency of the litigation, Section 13.7 provides that the non-prevailing party is liable for "all costs and expenses" the prevailing party incurs, with no exceptions for arbitrators' fees and expenses. Thus, the plain reading of the Operating Agreement is that, once a decision has been made regarding the prevailing party, the non-prevailing party is liable for the share of the arbitrator fees that the prevailing party originally paid.

### CONCLUSION

The Panel orders that Respondents provide an updated fee and expense total reflecting this Order with fourteen days.

_____
Myron T. Steele, Chair

*Paul Vizcarrondo*
Paul Vizcarrondo

**Arbitrator Platt In Dissent:**
**FEES AND EXPENSES RESPONDENTS' INSURERS REIMBURSED**

I disagree with the Panel's conclusion on page 4 of the Order that that "Claimants are responsible for fees and expenses which Respondents' insurers reimbursed…."

Section 13.7 of the Operating Agreement provides that Respondents are entitled to be reimbursed for costs and expenses that they incurred when they retained counsel in this proceeding. In particular, Section 13.7, titled "Costs," provides in relevant part:

> "If the Company or any Member retains counsel for the purpose of enforcing or preventing the breach or any threatened breach of any provision of this agreement or for any other remedy relating to it, then the prevailing party will be entitled to be *reimbursed* by the non-prevailing party for all costs and expenses *so incurred* …." (Emphasis added.)

Respondents have not shown that they have actually incurred the fees and expenses for which they have already been reimbursed by their insurers. Even if Respondents did become liable for, or subject to an obligation to pay, those costs and expenses, that liability or obligation was reduced by the $10 million that they received for those costs and expenses.

Moreover, even if Respondents were still deemed to have *incurred* the $10 million of costs and expenses, they are claiming entitlement to be *reimbursed* twice for the same $10 million in costs and expenses that they only incurred once.

Case 2:22-cv-00977-JFM    Document 489-2    Filed 02/03/26    Page 14 of 16

prevailing party for all costs and expenses *so incurred ….*" (Emphasis added.)

Respondents have not shown that they have actually incurred the fees and expenses for which they have already been reimbursed by their insurers. Even if Respondents did become liable for, or subject to an obligation to pay, those costs and expenses, that liability or obligation was reduced by the $10 million that they received for those costs and expenses.

Moreover, even if Respondents were still deemed to have *incurred* the $10 million of costs and expenses, they are claiming entitlement to be *reimbursed* twice for the same $10 million in costs and expenses that they only incurred once. Nothing in the plain language of Section 13.07 supports that interpretation. The definition of the word "reimbursed" in Section 13.07, means to pay back someone for an amount they spent, or to make restoration of an amount spent (*see, e.g.,* https://www.merriam-webster.com/dictionary/reimburse). That word does not support Respondents' theory that they can seek "pay back" for costs and expenses for which they are no longer out of pocket, or restoration for costs and expenses for which they have already been made whole.

The *Utica* and *Metz* decisions cited by the Panel do not support a different result. The *Utica* decision addressed whether a primary insurance company (Utica) could recover from its reinsurers the defense costs that Utica had actually paid *but*

*not been reimbursed* for. The issue was not whether Utica could be reimbursed twice for the same defense costs it incurred.

Similarly, the *Metz* decision does not address whether an insured could be reimbursed twice for medical charges "incurred." The Court in *Metz* concluded that plaintiff had *not* incurred a medical charge because her physicians agreed prior to her treatment to charge her any amount exceeding the Medicare-approved fee. It did not conclude that, if plaintiff had incurred that charge, it would be entitled to reimbursement for that charge from one insurance company after already being reimbursed by another.

## ARBITRATORS' FEES

I also disagree with the Panel's conclusion on page 10 of the Order that Claimants are liable for the entirety of the fees and expenses of the Arbitrators.

The plain language of Section 13.6 mandates specifically that the parties "shall pay their pro rata (by number) share of the costs of the Neutral Arbitrator…." Section 13.6 says nothing about those costs being re-allocated after the arbitration is complete.

Section 13.7 does not provide otherwise. It states instead that "[i]f the Company or any Member *retains counsel* …then the prevailing party will be entitled to be reimbursed by the non-prevailing party for all costs and expenses *so incurred* (including reasonable attorney's fees, costs of bonds, and fees and expenses for

– and not the costs of the Neutral Arbitrator, who necessarily has very different costs than those incurred in retaining counsel.  The parenthetical in Section 13.7 confirms this interpretation by specifying the types of costs and expenses associated with retaining counsel but not mentioning any costs and expenses of retaining the Neutral Arbitrator.

*Charles C. Platt*

_____
Charles Platt