**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERMAINE HICKS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-977** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                    **February 23, 2026**

  This hotly contested wrongful conviction case went to trial last summer.  Mr. Hicks accused several current and former Philadelphia police of framing him for rape and getting him sent him to jail for 19 years for a crime he didn't commit.  For over two weeks, witnesses of all stripes — responding officers, detectives, eyewitnesses, the accused, the victim, lawyers, experts — struggled to answer questions about what they were doing and thinking one terrible morning 25 years ago.  The lawyers brought an intensity to the trial that left little, if any, dry powder behind.  The jury rendered a verdict for Mr. Hicks, finding the officers and the City of Philadelphia liable, and including a special finding that more likely than not, Mr. Hicks did not commit the rape.  It awarded Mr. Hicks $3 million.  But the litigation did not end with the verdict.  Now, both sides want the verdict overturned.  Defendants argue that the liability verdict lacks substantial evidence and is fatally infected by as many errors as human ingenuity could fit into 40 pages of double-spaced text.  And the City wants us to sanction Mr. Hicks's lawyers while we're at it. Mr. Hicks disagrees but wants a new trial on damages because, on the theory that $3 million is a legally insufficient sum, the jury must have been led astray or just plain got it wrong.  We deny all motions because no relief is warranted.  The jury in this case had a tough job, but they could not possibly have had a more searching examination of evidence from a more

passionate group of advocates.  And as set out in the accompanying order, we will hold off

entering final judgment until we can incorporate a final determination of Mr. Hicks's $8.5

million request for fees and costs.

## I.    FACTUAL BACKGROUND

In 2022, Termaine Hicks filed a civil-rights lawsuit in our court, against the City of

Philadelphia and several members of the Philadelphia Police Department.  This wrongful-

conviction lawsuit arose out of Mr. Hicks's 2002 conviction for rape in Pennsylvania state court

and his subsequent release from prison, eighteen years later, after a Pennsylvania judge granted

him post-conviction relief.  Mr. Hicks has always maintained his innocence.  Our earlier

opinions in this litigation provide a review of some of the significant facts and pretrial disputes.

*Hicks v. City of Philadelphia*, 783 F. Supp. 3d 834 (E.D. Pa. 2025); *Hicks v. City of*

*Philadelphia*, 753 F. Supp. 3d 409 (E.D. Pa. 2024); *Hicks v. City of Philadelphia*, 2023 WL

5278713 (E.D. Pa. Aug. 16, 2023).  Following a remarkably contentious two-and-a-half-week

trial, the attentive jury briefly deliberated and returned a verdict in favor of Mr. Hicks, finding

that (1) Officers Vinson, Smith, and Zungolo, and Detectives Ellis and Campbell, fabricated

evidence and engaged in a conspiracy to violate Mr. Hicks's constitutional rights; (2) Officer

Zungolo and Detective Campbell concealed and/or suppressed evidence as part of a larger

scheme; and (3) the City of Philadelphia's policy or custom, and its failure to supervise and/or

discipline its police officers, caused the violation of Mr. Hicks's constitutional rights.  DI 413 at

1-4.  For these violations, the jury awarded Mr. Hicks $3 million in damages.  *Id.* at 4.  At trial,

the defendants endeavored to show, among other things, that Mr. Hicks committed the rape.  So

the jury was also asked to resolve any lingering doubts about whether Mr. Hicks was wrongfully

2

convicted for a crime he nonetheless probably committed.  Asked whether preponderant evidence showed that Mr. Hicks had committed the rape, the jury answered "no."  DI 412.

Ever determined, the parties filed numerous post-trial motions, three of which are before us now: the City's motion for sanctions against plaintiff's counsel (DI 414), defendants' joint motion for judgment as a matter of law and/or a new trial (DI 451), and plaintiff's motion for a new trial on damages (DI 449).  We deny each of these motions.

## II.    MOTIONS AT ISSUE

### A.    The City's motion for sanctions

The City asks us to revoke the *pro hac vice* status of Nick Brustin, Esq., one of plaintiff's attorneys, due to "patently false accusations that defense counsel made misrepresentations to the Court and suborned perjury" and "suggestion[s] that defense counsel are racist."  DI 414 at 3.  At a minimum, the City asks us to admonish Mr. Brustin "for his failure to conform to minimum professional standards during the litigation of trial."  *Id.*  In its reply to plaintiff's response in opposition, the City expands its request for sanctions to all counsel for plaintiff, averring that plaintiff's response in opposition constituted further abusive, sanctionable conduct.  DI 434 at 5. The City cites the following examples of purported misconduct: (1) an accusation on August 13, 2025, on the record in open court, by Mr. Brustin and his partner Amelia Green, Esq., that City attorney Daniel Cerone, Esq. made affirmative misrepresentations to the Court; (2) Mr. Brustin's accusation on August 20, 2025, that Mr. Cerone coached a witness to provide false testimony; (3) Mr. Brustin's insinuation that Mr. Cerone's defense of his client's cross-examination revealed racial bias on the part of Mr. Cerone and other defense counsel; and (4) Mr. Brustin's remark to a colleague, while the jury was empaneled, that one of the defense attorneys was "a

piece of shit." *Id.* at 4-5, 8. The City insists that these were false accusations and that this constituted unprofessional, disrespectful behavior. *Id* at 4-5, 8. The City believes that these misrepresentations amounted to violations of the Pennsylvania Rules of Professional Conduct, specifically Rule 8.4. *Id.* at 9-10; 204 Pa. Code Rule 8.4.

Plaintiff's counsel oppose the City's motion, asserting that the comments highlighted by the City "do[] not come close to justifying the extreme relief" requested and that the City fails to cite authority supporting the imposition of any sanctions against Mr. Brustin. DI 431 at 6. They insist that Mr. Brustin made no knowing misstatements to the court, arguing that any such misstatements were inadvertent and understandable given the complexity of the case, and emphasizing Mr. Cerone's failure to correct the record — despite him being in the best position to do so. *Id.* at 9-10. And, in any event, plaintiff's counsel observe that Mr. Brustin acknowledged the mistake once he realized it had been made, while he also fairly attributed the confusion to Mr. Cerone. *Id.* at 11-12. Nor, they insist, was it unreasonable for Mr. Brustin to allege, at side bar, possible witness coaching given the context of the testimony. *Id.* at 14-16. As for Mr. Brustin's "piece of shit" comment, plaintiff's counsel note that Mr. Brustin apologized immediately to the defense attorney who overheard the comment, that this comment was made privately to co-counsel, out of frustration with defense counsel's conduct toward co-counsel earlier that day, and that such an isolated example of profanity is not sanctionable. *Id.* at 17-18. Finally, plaintiff's counsel maintain it was not inappropriate for Mr. Brustin to seek to make a record of his perception that defense counsel disparately reacted to his black, female colleague's cross-examination compared to his reaction to Mr. Brustin's cross-examination, despite Mr. Brustin perceiving his own cross-examination as more argumentative. *Id.* at 18-19.

4

**B.      Plaintiff's motion for a new trial on damages**

Plaintiff moves for a new trial on damages on three grounds: (1) the verdict resulted from juror confusion that damages must relate to monetary loss; (2) the damages award was inadequate and against the great weight of the evidence; and (3) it is reasonably probable that defense counsel's improper argument tainted the damages verdict.  DI 449 at 12-27.

First, plaintiff asserts that "the damages instructions failed to give clear direction on how the jury should assess damages for non-pecuniary harms such as those at issue here—loss of liberty, emotional pain and suffering, physical harm or discomfort, and loss of a normal life— and may have misled the jury into believing that only out-of-pocket losses were compensable." *Id.* at 12.  He notes that we declined to give his requested instruction (which would have addressed this issue, but which is admittedly not included in the Third Circuit's model instructions), and that we instead gave the defendants' proposed instruction that the jury could not consider litigation costs or attorney's fees when assessing damages.  *Id.*  Plaintiff cites *Hurley v. Atlantic City Police Department*, 174 F.3d 95, 124 (3d Cir. 1999), as an example where the Third Court determined that the district court's instructions did not "provide proper guidance for the jury on a fundamental question" involving the punitive damages award, such that it vacated that portion of the damages award and ordered a new trial on that question.  DI 449 at 14 (citation omitted).  He also cites *Greenleaf v. Garlock*, 174 F.3d 352, 357 (3d Cir. 1999), as another example where the Third Circuit ordered a partial new trial because the verdict evidenced juror confusion, as well as *Ramsey v. Buchanan Auto Park, Inc.*, 2022 WL 673737, at *8 (M.D. Pa. Mar. 7, 2022), as a case in which a district court granted a new trial solely with respect to damages issues that seemingly arose from juror confusion.  DI 449 at 14-15 (citation

omitted).  Here, plaintiff insists that there was juror confusion given the disparity between the

liability found and the damages awarded.[1]  *Id.* at 12-15.

Relatedly, plaintiff urges that the $3 million damages award was inadequate and contrary

to the great weight of the evidence.  *Id.* at 15.  He points to numerous cases from other districts

and circuits in which courts have granted or affirmed a grant of a new damages trial due to the

clear inadequacy of the damages awarded.  *Id.* at 16-17 (citations omitted).  And plaintiff

highlights two cases from other circuits in which an appellate court determined the district court

abused its discretion by failing to order a new damages trial because the award was plainly

inadequate and inconsistent given the trial evidence.  *Id.* at 17 (citations omitted).  Plaintiff

maintains that "[t]his is such a case" and that the award was "so far outside the reasonable range

of compensation for [his] undisputed injuries" because the jury found that five defendants caused

him to be deprived of a fair trial and to spend 19 years wrongfully incarcerated, despite his actual

innocence, resulting in severe harm that will continue to plague him.  *Id.* at 17, 20-21.  Again

citing decisions from other circuits, plaintiff proffers that such courts have long recognized an

approximate benchmark of $1 million per year of wrongful imprisonment as a reasonable and

typical award in similar cases.  *Id.* at 18 (citing *Gilliam v. Allen*, 62 F.4th 829, 845-47 (4th Cir.

2023); *Restivo v. Hessemann*, 846 F.3d 547, 588 (2d Cir. 2017); *Parish v. City of Elkhart*, 702

---

[1] Plaintiff also emphasizes that he was neither required — nor even allowed — to
introduce evidence or argument regarding the value of the nonpecuniary injuries for which he
sought damages.  DI 460 at 2.  He asserts that our jury instruction clearly was not harmless,
given it went "directly to the damages assessment the jury had to make[,]" and that the
instruction could be reversible error because it "omitted clarifying information sufficient to
adequately inform the jury of the applicable law, because the jury will not 'know without being
told.'"  *Id.* at 3 (citing *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 278–82 (3d Cir. 1998)).
Moreover, plaintiff maintains that model jury instructions still can constitute error.  *Id.* at 3-4
(citing *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 190 (3d Cir. 2019)).

F.3d 997, 999 (7th Cir. 2012); *Limone v. United States*, 579 F.3d 79, 103–07 (1st Cir. 2009);

*Newsome v. McCabe*, 319 F.3d 301, 302 (7th Cir. 2003)).  And he highlights numerous cases in

which much higher yearly awards have been approved as reasonable.  *Id.* at 18-19 (citations

omitted).  Plaintiff also represents that, though there have been a small number of cases in which

lower awards were approved, to his knowledge none have been approved that are as low as his

award that (1) were not vacated later; and (2) otherwise did not contain "case-specific factors

[that] explain the deviation from the norm."  *Id.* at 19 n.5 (discussing the $5 million award for 20

years of wrongful incarceration in *Rosario v. City of New York*, 2023 WL 2908655 (S.D.N.Y.

March 15, 2023) as resulting from unique challenges with the plaintiff).

 Finally, plaintiff argues that it is reasonably probable that defense counsel's improper

arguments tainted the verdict.  DI 449 at 21.  He insists that defense counsel made various

improper remarks throughout trial, seemingly to inflame the jury's passions and obtain a verdict

based on sympathy for the crime victim and the officers involved, or to instill fear in the jurors.

*Id.* at 22.  Plaintiff highlights defense counsel's arguments, in which they discussed the trauma to

the crime victim, as well as their cross examination of her in which she stated that she "live[s] in

fear now" because the man convicted of raping her was released from prison.  *Id.* at 23-24

(citation omitted).[2]  Plaintiff further objects to defense counsel's improper emphasis on the

---

 [2] Plaintiff objects to the following arguments by defense counsel:

 For [W.L.], this nightmare continues. The decision to overturn Mr. Hicks's
conviction, that was just another punch in the face. For her, hearing about this
lawsuit, having to testify again. Just another punch in the face.  [W.L.]'s wounds
have been reopened. You have the power to heal them. You have the power to give
her the closure that she needs. Making this decision, it's an important job. Because
each and every one of you sitting in that jury box, well, you have the power to right

suggested personal impact of the litigation on the defendant officers as an inappropriate appeal to sympathy, as well as a means of instilling fear in the public if officers must think twice about helping someone in need due to this sort of litigation. *Id.* at 25.[3]  He explains that he objected to

---

the real injustices in this case. You can correct the harm that's been done to [W.L.] You can listen to her screams and you can respond, just like these officers did.

*Id.* at 23 (citation omitted).

At the beginning of this trial, I got up here and I told you this case was about a rape. I told you that the evidence would prove that Mr. Hicks raped [W.L.] on November 27th of 2001. And I told you that this crime, that this violation, it didn't end when Officers Vinson and Zungolo ordered Mr. Hicks to get off of [W.L.] I told you that [W.L.] has continued to endure punch after punch, just like she endured getting up on that stand and telling you through her tears the horrific details of what happened to her that November morning. . . .

*Id.* at 24 (citation omitted).

Weeks ago I told you this case was about injustice. And this trial is just another injustice. This trial is just another punch in the face. It's another violation of [W.L.] She's endured enough punches. You can help heal her wounds. . . . [These officers] saved [W.L.]'s life on November 27th of 2001. They investigated a rape, they solved a rape, and they brought that rapist to justice. And that justice was stripped away from [W.L.] when that man was released from prison. . . . Each of you has the power to grant [W.L.] the justice that she deserves. Don't reward that man. Don't give him anything. Tell him that the injustice, it stops here. Find in favor of these police officers behind me.

*Id.* (citation omitted).

[3] Plaintiff specifically objects to this argument from defense counsel:

This case is about injustice. It's about injustice to all of these first responders here today who are being personally sued. Don't get it twisted. They are being sued for coming to [W.L.]'s rescue. You'll hear [W.L.] tell you that those officers, my clients, they saved her life. They will tell you that they didn't panic. She'll tell you that they didn't panic. And those officers assessed the dangerous situation and when they were in fear of [W.L.]'s life, of their own lives, they acted. Think about the chilling effect that this lawsuit will have on first responders. Think about how each

this argument during and after the opening but that we declined to allow him to proactively
address this argument, only allowing him to do so if defendants reiterated those arguments at
closing. *Id.* at 26 (citations omitted).

Defendants oppose plaintiff's motion for a new damages trial. DI 456. First, they
underscore that we provided the Third Circuit's model jury instruction on compensatory
damages, which included a list of non-monetary damages to which plaintiff asserted an
entitlement.[4] *Id.* at 2 (citation omitted). Defendants maintain that no additional instructions
were needed to clarify for the jury that it could award damages beyond out-of-pocket expenses
because our instruction (1) informed the jury of available non-monetary damages; (2) told the
jury it could compensate plaintiff for such harms; and (3) is presumed to be followed by the jury.
*Id.* at 3 (citation omitted). In defendants' view, plaintiff's requested instruction would have been
redundant. *Id.* (citation omitted). Nor, defendants emphasize, does plaintiff assert that any
portion of our instruction was legally erroneous. *Id.* (citations omitted). And defendants

---

of them may think twice before coming to someone's aid. [Objection overruled].
Before responding to somebody's screams. Knowing that no one has their back.

*Id.* at 25-26 (citation omitted).

[4] This instruction was as follows:

Mr. Hicks claims the following items of damages: Loss of liberty for the period he
spent in wrongful confinement, emotional pain and suffering, including fear,
humiliation or mental anguish Mr. Hicks has experienced, and the fear, humiliation
or mental anguish he is reasonably certain to experience in the future; physical harm
or discomfort; and loss of a normal life, including his loss of family connections
and family interactions, loss of relationships and loss of companionship.

N.T. 8/27/25 at 28:3-11.

highlight plaintiff's choice not to introduce any evidence regarding monetary damages, whether that be the costs of his criminal defense or lost wages, such that "[t]he jury could not have been distracted by evidence that was not introduced." *Id.* at 4.

Regarding plaintiff's weight of the evidence claim, defendants insist that the $3 million award comported with the weight of the evidence. *Id.* at 4. They contend that the awards from other cases cited by plaintiff "are not dispositive in analyzing whether a particular jury award is excessive or inadequate." *Id.* at 4-5 (citing *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987); *Delli Santi v. CNA Ins. Companies*, 88 F.3d 192, 206 (3d Cir. 1996)). And defendants assert that plaintiff's cases addressed excessiveness claims and that such cases established a ceiling for verdicts, but not a floor. *Id.* at 5 (citations omitted). They further note that other juries have awarded plaintiffs significantly lower damages (compared to Mr. Hicks) for liberty deprivations, and that two plaintiffs represented by plaintiff's counsel in other cases received less than the $1 million per year benchmark. *Id.* at 5-6 (citations omitted). Defendants further cite a study of 448 verdicts and settlements regarding overturned conviction cases from 1989-2017, which found that plaintiffs received an average of $305,000 in yearly compensation. *Id.* at 7 (citing Jeffrey S. Gutman & Lingxiao Sun, *Why Is Mississippi the Best State in Which to Be Exonerated? An Empirical Evaluation of State Statutory and Civil Compensation for the Wrongfully Convicted*, 11 NE. U.L. REV. 694, 699–700 (2019)). In their view, the $3 million award comported with the evidence adduced at trial, including the testimony of defendants' expert Dr. Michael Clark and plaintiff, which could have led the jury to conclude that plaintiff was "not a shell of a human" due to his wrongful incarceration. *Id.* at 9-10 (citation omitted).

Lastly, defendants contest plaintiff's assertion that they made any improper remarks at

trial. *Id.* at 10. They explain that plaintiff's guilt of the underlying crime was relevant to the question of liability (because defendants would have lacked a motive to frame plaintiff for a crime he committed) and damages (because if plaintiff committed the crime, a jury could discount claims of mental anguish, regardless of defendants' conduct). *Id.* at 10-11. And defendants maintain that their argument about the victim's experience was "fair response" to the plaintiff's closing argument that the victim was "wrong in her belief that someone was on top of her when the police arrived." *Id.* at 11 (citation omitted). As for their arguments about the individual defendant officers, defendants insist that "the officers' personal experiences were plainly relevant to the jury's assessment of their credibility and therefore properly admitted." *Id.* at 11-12. Defendants also question how plaintiff could have been prejudiced by such comments, given the jury returned a unanimous verdict in his favor and awarded him $3 million in damages. *Id.* at 12. And, again, defendants emphasize that we repeatedly instructed the jury that the lawyers' arguments were not evidence, and we presume the jury followed our instructions. *Id.* at 12-13.

## C.    Defendants' motion for judgment as a matter of law and/or a new trial

Defendants move for judgment as a matter of law or, alternatively, a new trial. DI 451. They ask us to enter judgment in favor of defendants Officer Zungolo, Detective Campbell, Officer Smith, and the City because the evidence of record did not support liability findings against them. *Id.* at 10. Defendants argue that judgment as a matter of law is warranted for Detective Campbell and Officer Smith on the evidence fabrication claim because the evidence did not establish that (1) Detective Campbell willingly, knowingly, nor with reckless disregard for the truth, submitted or formulated false evidence; nor that (2) Officer Smith testified with

11

reckless disregard for the truth nor with knowing falsity. *Id.* at 10-15. Defendants further assert that Detective Campbell and Officer Smith are entitled to judgment in their favor regarding the jury's liability finding on conspiracy because there was no record evidence that they had a meeting of the minds sufficient for a conspiracy claim. *Id.* at 18-19. In defendants' view, Officer Zungolo and Detective Campbell[5] also are entitled to judgment as a matter of law on the deliberate deception claim because the evidence did not establish that either defendant "intentionally concealed putatively exculpatory surveillance footage" nor was involved in "any false testimony to secure Mr. Hicks's initial conviction for rape and related crimes" connected to the surveillance footage. *Id.* at 15-18. And as for the claims against the City, defendants declare that judgment as a matter of law is warranted on all claims because the record evidence did not support a verdict on (1) the ratification theory, given insufficient evidence respecting the Philadelphia Police Department Commissioner's review of and decision regarding the internal affairs findings; nor (2) municipal liability, due to the lack of evidence regarding a municipal policy, practice, custom, or failure to supervise or discipline officers for similar conduct. *Id.* at 19-23.

Alternatively, defendants assert they are entitled to a new trial because (1) we made many, compounded prejudicial legal errors; (2) the verdict was against the weight of the evidence; and (3) unrestrained and prejudicial conduct tainted the verdict. *Id.* at 23-47. First, they contend that we abused our discretion by (1) declining to bifurcate the trial on plaintiff's individual and municipal liability claims because the purported *Monell* liability evidence

---

[5] Respecting the deliberate deception claim against Detective Campbell, defendants insist that plaintiff did not establish that the detective's conduct regarding the gray hoodie evidence was material. DI 462 at 1-4.

severely prejudiced the individual defendants; and (2) admitting and precluding certain evidence and testimony in a manner that prejudiced the individual defendants. *Id.* at 23-43. Second, and relying upon the above arguments, defendants aver that the verdicts were against the weight of the evidence. *Id.* at 44. Third, defendants insist a new trial is warranted because we abused our discretion by allowing plaintiff's counsel to engage in improper courtroom behavior, such as (1) their harassing and argumentative approach to examining certain defendants; and (2) insinuation during rebuttal closing argument that they had more evidence of plaintiff's innocence that they were precluded from presenting. *Id.* at 44-45. Defendants also take issue with us allowing plaintiff to submit his ratification theory of *Monell* liability to the jury because such a theory was not alleged in the amended complaint. *Id.* at 45-47.

Plaintiff opposes defendants' motion for judgment as a matter of law, asserting that his evidence — which must be credited and viewed favorably because he was the verdict winner — supports the jury's liability verdict. DI 461 at 8-9. Plaintiff also highlights that defendants do not dispute that there is sufficient evidence to support the jury's verdict that (1) plaintiff was actually innocent of the crime for which he was incarcerated; and (2) defendants Detective Ellis, Officer Vinson, and Officer Zungolo fabricated evidence that falsely implicated plaintiff and caused his wrongful conviction. *Id.* at 9. Moreover, plaintiff insists that neither Detective Campbell nor Officer Smith are entitled to judgment in their favor on the fabrication of evidence claim, noting that (1) we held at summary judgment that a reasonable jury could find these defendants liable for such fabrication based on the discovery record; and (2) plaintiff presented this same evidence, and more, at trial. *Id.* at 9-12. Nor, plaintiff says, are these defendants entitled to judgment notwithstanding the conspiracy finding against them, noting that (1)

defendants do not contest that the jury had a reasonable basis for finding that Officer Vinson, Detective Ellis, and Officer Zungolo were part of a conspiracy to deprive plaintiff of a fair trial; and (2) ample evidence supported the conclusion that Detective Campbell and Officer Smith joined that conspiracy, particularly given their lies about the gray hoodie. *Id.* at 15-16. Moreover, plaintiff asserts that neither Detective Campbell nor Officer Zungolo is entitled to judgment in their favor on the deliberate deception claim, highlighting that (1) the trial record supported the jury's finding that Detective Campbell fabricated evidence; (2) defendants do not challenge the sufficiency of the evidence supporting the finding that Officer Zungolo fabricated evidence; and (3) there was significant evidence that these defendants engaged in deliberate deception. *Id.* at 13-15. Finally, plaintiff rejects the City's argument that it is entitled to judgment as a matter of law, emphasizing (1) our summary judgment decision finding there was sufficient evidence from which a jury could find *Monell* liability against the city on multiple theories; (2) that the jury found the City liable on both theories — *i.e.*, that the City's custom of tolerating constitutional violations and failure to supervise and/or discipline its subordinates caused a violation of plaintiff's constitutional rights; and (3) that the Commissioner's decision to clear Officer Vinson of wrongdoing without further investigation was enough to establish liability under the ratification theory. *Id.* at 16-18.

Nor, plaintiff maintains, is a new trial on liability warranted. Plaintiff argues that we did not abuse our discretion in declining to bifurcate the trial because bifurcation, which is not the norm, would have neither promoted judicial economy nor avoided unfair prejudice given (1) the significant overlap between the liability claims and witnesses; and (2) our court calendar. *Id.* at 18-19. As for the purportedly prejudicial evidence defendants assert we should have precluded,

plaintiff maintains that much of the evidence supporting his municipal liability claims was

relevant and admissible for his individual liability claims — and that, additionally, we repeatedly

provided defendants' requested limiting and curative jury instruction. *Id.* at 19, 32-33. He also

insists that we did not err in admitting evidence regarding another case involving Defendant

Ellis's misconduct, and he points out that defendants failed to elicit evidence supporting the

argument they now make. *Id.* at 27-28. Nor, plaintiff insists, did we err in excluding or limiting

various evidence raised by defendants, such as (1) plaintiff's prior robbery convictions or

possession of a condom; (2) the responding medic's statement contained within a report; (3) the

cross examination of Attorney Nicholson[6] and plaintiff's audio expert; (4) the still images from

the surveillance video; (5) the photographs of the victim's injuries; (6) the testimony of

defendants' experts; (7) testimony regarding the post-conviction decision; and (8) the exclusion

of testimony from undisclosed witnesses. *Id.* at 21-31. Additionally, plaintiff highlights that

defendants never objected to several of the examples they list as evidence admitted over their

objection, such as the introduction of (1) concise officer histories for Defendants Sergeant

Vogelman and Detective Ellis; and (2) the 2003 and 2005 IAO reports. *Id.* at 20 n.6 (citations

omitted). Nor, he maintains, did plaintiff ever ask again the question to Officer Zungolo whether

Detective Ellis served as an "excellent resource" after weapon discharge. *Id.* And plaintiff

emphasizes that defendants never sought to introduce evidence of the trial court's post-

conviction decision or testimony, nor did they raise an argument that the trial court's decision

was admissible per Rule 1004. *Id.* at 16 (also asserting that the argument would not have

---

[6] Mr. Nicholson was plaintiff's defense counsel in his 2002 criminal trial which resulted in his conviction.

worked). Plaintiff also declares that the verdicts clearly were not against the great weight of the

evidence. *Id.* at 33. Nor, he urges, did we abdicate our gatekeeping role or otherwise permit

plaintiff's counsel to engage in improper courtroom conduct; instead, plaintiff faults defendants

for selectively quoting from plaintiff's rebuttal closing argument and failing to object to concerns

with the rebuttal contemporaneously. *Id.* at 33-34. And he insists that we did not err in rejecting

defendants' late objection to plaintiff's ratification theory because (1) plaintiff's pleadings were

not deficient regarding this theory; (2) even if they were, the Federal Rules allow us "to permit

amending of the pleadings during trial to conform to the evidence"; and (3) defendants never

objected to plaintiff's distillation of the ratification theory in plaintiff's summary judgment

response, nor sought to introduce any evidence on this issue. *Id.* at 34-35 (citing Fed. R. Civ. P.

15(b)(1)-(2)).

## III.    STANDARD OF REVIEW

### A.    Sanctions

"[A] federal court has the power to control admission to its bar and to discipline attorneys

who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted).

This "incidental" power must "be exercised with great caution[,]" "restraint[,] and discretion."

*Id.* at 43-44 (citations omitted). "A primary aspect of that discretion is the ability to fashion an

appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45. "[G]enerally,

a court's inherent power should be reserved for those cases in which the conduct of a party or an

attorney is egregious and no other basis for sanctions exists." *Saldana v. Kmart Corp.*, 260 F.3d

228, 238 (3d Cir. 2001) (citation modified) (citation omitted). For example, we typically reserve

the exercise of our inherent power to sanction via attorney's fees "when a party has acted in bad

faith, vexatiously, wantonly, or for oppressive reasons" such as by "practic[ing] a fraud upon the court[,] . . . delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 42, 45-46 (citations omitted). In *Saldana*, the Third Circuit held that the district court could not sanction an attorney *via* its inherent powers for her (1) "four uses of the word 'fuck,' two in telephone conversations with attorneys and two in asides to attorneys during depositions"; and (2) submission of a post-verdict letter in which she "concurred with a juror who described an expert witness as a 'Nazi[.]'" *Saldana*, 260 F.3d at 237.

And before using our inherent powers, we "should consider whether any Rule- or statute-based sanctions are up to the task." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 785 (3d Cir. 2001) (citation omitted). This includes our consideration of Rule 11 of the Federal Rules of Civil Procedure. *Sofaly v. Portfolio Recovery Assocs.*, 155 F.4th 289, 295 (3d Cir. 2025) (citing Fed. R. Civ. P. 11). Federal Rule of Civil Procedure 11 authorizes us to sanction attorneys "who file pleadings for an 'improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Sofaly*, 155 F.4th at 293 (citing Fed. R. Civ. P. 11(b)(1)). "Implicit in Rule 11 is a 'duty of candor, which attorneys violate whenever they misrepresent the evidence supporting their claims.'" *Id.* (citation omitted). As the Advisory Committee explains, Rule 11 "applies only to assertions contained in papers filed with or submitted to the court" and "does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time for study and reflection." Fed. R. Civ. P. 11 (1993 advisory committee note). Pennsylvania also has its own Rules of Professional Conduct. Rule 8.4 states that a lawyer commits professional misconduct when he, among other things, (1) "violate[s] or

attempt[s] to violate the Rules of Professional Conduct, knowingly assist[s] or induce[s] another to do so, or do[es] so through the acts of another"; (2) "engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation . . ."; (3) "engage[s] in conduct that is prejudicial to the administration of justice"; or (4) "knowingly engage[s] in conduct constituting harassment or discrimination based upon race, sex, gender identity or expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, or socioeconomic status."  204 Pa. Code. Rule 8.4(a), (c), (d), (g).

## B.    Requests for a new trial

Rule 59 of the Federal Rules of Civil Procedure permits us, following a jury trial, to grant a new trial on some or all tried issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The decision whether to grant a new trial rests almost entirely within the trial court's discretion.  *Shanno v. Magee Industrial Enterprises, Inc.*, 856 F.2d 562, 567 (3d Cir. 1988) (citation omitted).  In exercising our discretion, we must take care not to "substitute[] [our] judgment of the facts and the credibility of the witnesses for those of the jury."  *Id.* (citation omitted).  Generally, we may grant a new trial if (1) a new trial is necessary to prevent injustice or correct a verdict that went against the weight of the evidence; or (2) the verdict resulted from erroneous jury instructions, was clearly unsupported by the evidence or excessive, or was influenced by extraneous factors such as prejudice, passion, speculation, or sympathy.  *Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d 494, 498 (E.D. Pa. 2002), *aff'd* 107 Fed. Appx. 269 (citations omitted).

We should grant a new trial on the grounds that the verdict was against the weight of the evidence only when "a miscarriage of justice would result if the verdict were to stand" or where,

on the record, "the verdict . . . cries out to be overturned or shocks our conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991) (citations omitted).  And "[w]here the subject matter of the litigation is simple and within a layman's understanding," we have "less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations[.]"  *Id.* at 1352 (citation omitted).  We also have significant discretion in evaluating whether counsel's conduct was "so prejudicial as to require a new trial" and, in exercising that discretion, we examine whether the remarks "made it 'reasonably probable' that the verdict was influenced by prejudicial statements*."  Fineman v. Armstrong World Indus.*, 980 F.2d 171, 207 (3d Cir. 1992) (citation omitted).  We likewise have significant discretion regarding requests for a new trial based upon evidentiary rulings, and "a finding of reversible error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."  *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 180 (citation modified) (citations omitted).

## C.    Judgment as a matter of law

Rule 50 of the Federal Rules of Civil Procedure permits a party to move for judgment as a matter of law (JMOL) "at any time before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  We may grant such a motion "[i]f a party has been fully heard on an issue during a jury trial" and we "find[] that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  If we do not grant a JMOL motion under Rule 50(a), the movant may renew their JMOL motion and include an alternative or joint request for a new trial under Rule 59.  Fed. R. Civ. P. 50(b).  Upon receipt of a renewed JMOL motion, we may (1) permit judgment on the verdict if the jury returned a verdict; (2) order a new

trial; or (3) direct that judgment as a matter of law be entered.  Fed. R. Civ. P. 50(b)(1)-(3).

In reviewing a Rule 50 motion, "[w]e must view the evidence in the light most favorable to the non-moving party[] and determine whether the record contains the minimum quantum of evidence from which a jury might reasonably afford relief."  *Rodriguez v. SEPTA*, 119 F.4th 296, 298 (3d Cir. 2024) (citation modified) (citation omitted).  We assess "whether there is evidence upon which the jury could properly find for that party" and, in conducting this assessment, we must not "weigh evidence, determine the credibility of witnesses or substitute [our] version of the facts for that of the jury."  *Id.* (citations omitted).  We only may grant a Rule 50 motion "if upon review of the record, it can be said as a matter of law that the verdict is not supported by legally sufficient evidence."  *Id.* (citation omitted).  This is a "stringent standard."  *Id.*

## IV.  DISCUSSION

### A.  Sanctions against plaintiff's counsel are not warranted

The City has not presented a persuasive case for sanctions against Mr. Brustin nor any of plaintiff's counsel.  Early on, discovery disputes (and deposition videos submitted with those disputes) revealed that plaintiff's legal team were an aggressive bunch.  And the trial certainly lived up to that observation, from jury selection straight on through.  This was an emotionally charged case with no middle ground.  As the trial wore on, the courtroom played host to near-daily Festivus celebrations, where everyone got to air their grievances "for the sake of the record."  Our concern through the turmoil was ensuring that the jury saw a complete presentation consisting of admissible evidence and fair argument.  And we think they did.

In any event, we do not believe that Mr. Brustin's cited conduct, nor the arguments raised by plaintiff's counsel in their response in opposition to the City's motion, constituted

"egregious" conduct sufficient to warrant the exercise of our inherent power to sanction attorneys. *Saldana*, 260 F.3d at 238.  But we equally, and wholeheartedly, reject the more histrionic and indignant portions of plaintiff's opposition brief.  Mr. Brustin's approach is, in fashionable terms, kind of a lot.  The words of the cold transcript demonstrate this to a degree, but do not reflect his often acerbic tone and dismissive body language in response to any challenge — by lawyer, witness or judge.  It was provocative and exhausting.  Granted, not every lawyer has to be the "come, let us reason together" type.  It is a lawyer's prerogative — not a court's — to decide (within the rules) what sort of style best advances his client's interests.  But if plaintiff's opposition brief is *really* what plaintiff's legal team thinks about everything that happened — *really* — then we humbly recommend some self-reflection would be in order.

There is not much else to add about the specific disagreeable conduct discussed in the City's motion.  We detected no bad faith.  No single incident, nor the sum total, was sufficiently problematic to warrant sanctions.  And the key context missing from the City's motion is a sense of the entirety of this furiously contested litigation.  The legal teams on both sides worked day and night to compact and present competing narratives to a jury in the face of a sprawling record including badly faded memories, lost evidence, and outright accusations of lying.  The good legal work in this case overwhelms the mistakes and errors in judgment.

One aspect of the motion bears a bit more commentary.  During the trial, another member of plaintiff's team, Ms. Emma Freudenberger, Esq., accused the City's lawyers of acting with racial bias toward her partner, Ms. Green, who is black.  According to Ms. Freudenberger, the City's lawyers, and in particular Mr. Andrew Pomager, Esq., had been disproportionately targeting their conduct-related objections and complaints at Ms. Green due to explicit or implicit

racial bias.  Later in the trial, Ms. Green added her view that this had been going on since the

depositions.  As she put it, "the history of this case has been the treatment of lawyers of color

literally being treated differently than every other lawyer on the case."  DI 419 at 71:16-18.

The accusations of racism must expressly be deemed baseless.  First of all, there is zero

record whatsoever — in this case or in the many other cases where the City's lawyers appear

before us — endorsing the notion that the City's lawyers act with racial bias.  Further, just

because plaintiff's lawyers won their share of discovery disputes and trial objections does not

mean that the City lawyers should not have objected or had no reason to object.  We watched

those deposition videos and we were there during trial.  Whether it be a firm culture, a team

strategy, or happenstance, Mr. Brustin, Ms. Freudenberger, and Ms. Green were remarkably

combative with any witness who contradicted their narrative.  In a fundamentally credibility-

driven case, so be it — the jury needs to see assertions tested.  But it's just a bit hard to swallow

the suggestion that lawyers that are smart, well-prepared, and yes, belligerent at times, need a

court-provided fainting couch any time opposing counsel fights back.  To wit, Mr. Pomager quite

ably closed the book on this unfortunate distraction:

> Mr. Pomager: Your Honor, again, I don't know how much we need to get into
> this.  Our motion for sanctions will focus on conduct of trial.  And Ms. Green may
> recognize that I refer to Mr. Brustin's conduct, not hers in general.  So I would
> count among the endless, improper, baseless attacks that we are always accused of
> racism.  I would be shocked if this firm has ever had an opposing party who they
> have not accused of racism.  There has been no evidence of any racism of anyone
> here.  And I can assure Ms. Green that I hold her white colleagues in as poor
> regard as I do her, or worse.

DI 419 at 72:5-14.  The court reporter did not transcribe the period of silence that followed.

We considered the other arguments in the City's motion and decline to adopt them.  As

plaintiff's counsel correctly point out, Rule 11 focuses on sanctions for attorneys who file

22

improper pleadings, such that it applies to written assertions, rather than matters initially arising during oral representations to the court. *Sofaly*, 155 F.4th at 293; Fed. R. Civ. P. 11(b)(1); Fed. R. Civ. P. 11 (1993 advisory committee note). The City cites to no written misrepresentations by plaintiff's counsel, and while plaintiff's response in opposition to the City's motion for sanctions is ironically argumentative, it is nothing close to a sanctionable misrepresentation. We do not see an application for Rule 11 here. For similar reasons, we are unpersuaded that plaintiff's counsel violated Rule 8.4, or any other rule, of the Pennsylvania Rules of Professional Conduct. 204 Pa. Code Rule 8.4. Again, this conduct did not rise to the level of misrepresentations, deceit, dishonesty, nor fraud. 204 Pa. Code Rule 8.4(c). It did not prejudice the administration of justice. 204 Pa. Code Rule 8.4(d). And it did not amount to harassment or discrimination. 204 Pa. Code Rule 8.4(g). As there is no basis to sanction plaintiff's counsel, we deny the City's motion.

**B.    We deny the parties' respective motions for a new trial because a new trial is not warranted on any issue tried before the jury**

There is no basis for granting a new trial, neither in its entirety nor limited to the damages issue. As the parties' briefing illustrates, the evidence in this case was voluminous, and we will not rehash it here. Nor do we conclude that any trial error requires a new trial.

First, plaintiff's argument for a new trial solely on damages is unpersuasive. We correctly instructed the jury, using the Third Circuit's model instruction, on the available compensatory damages to plaintiff. Plaintiff does not — and cannot — argue that our instruction was incorrect. Indeed, our instruction expressly listed the various nonpecuniary damages claimed by and available to the plaintiff. Nothing about this instruction reasonably created the impression that damages were limited to plaintiff's out-of-pocket expenses. And we presume the

jury followed this instruction. No one suggested anything to the contrary. Indeed, the jury heard evidence and argument directly illustrative of nonpecuniary damages.

We are also unconvinced that plaintiff's $3 million award was legally inadequate or contrary to the great weight of the evidence. Plaintiff's examples of larger awards in wrongful incarceration cases illustrate the significant range of awards in these cases, but they cannot govern the jury in this case. These sorts of cases are, necessarily, highly fact-specific, so we exercise significant caution when attempting to craft a benchmark based on awards in factually distinct matters. And given this case did not deal with complex subject matter, we are less free to scrutinize the jury's decision. *Williamson*, 926 F.2d at 1352. Consider what the jury really had to do here: listen to and watch witnesses answer questions about things that happened 25 years ago and decide who was telling the truth, who was misremembering, and who was lying. Then the jury learned all about the plaintiff, directly from him and his loved ones, and what he went through. They sat together, and they reached a conclusion. The jury found that plaintiff was innocent, that defendants caused his wrongful incarceration, and that he should be awarded $3 million in damages. We cannot and will not substitute our judgment of the case for that of the jury. *Shanno*, 856 F.2d at 567. Because we do not conclude that the $3 million award "cries out to be overturned or shocks our conscience" such that letting it stand would be "a miscarriage of justice[,]" *Williamson*, 926 F.2d at 1352-53, a new trial is not warranted on this basis.

Nor do we find that defense counsel's comments throughout the trial were "so prejudicial as to require a new trial" because such remarks "made it reasonably probable that the verdict was influenced by prejudicial statements." *Fineman*, 980 F.2d at 207 (citation modified). Defense counsel's remarks certainly were passionate and evocative. But they were also relevant to (1) the

defense theories that, if plaintiff did commit the crime for which he was incarcerated, then defendants lacked a motive to frame him and perhaps his damages for wrongful incarceration should be reduced; and (2) the defendant officers' credibility. These remarks were also made during counsel's arguments, and we repeatedly issued curative instructions that such arguments were not evidence — an instruction we presume the jury followed. And on top of that, by closing arguments, the jury had been through over two weeks of tough examination of indignant or even hostile witnesses. Nothing about the impassioned closing arguments from either side surprised that jury. Given these considerations, and the voluminous evidence upon which the jury relied to return the verdict, we do not find that a new trial is warranted due to defense counsel's remarks.

Defendants fare no better with their many, many arguments for a new trial. We have discretion in deciding whether to bifurcate trial issues. *Thabault v. Chait*, 541 F.3d 512, 529-30 (3d Cir. 2008) (citation omitted). And Federal Rule of Civil Procedure 42(b), which governs a party's bifurcation request, states that we may order bifurcation "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Given the substantial overlap between the claims against the City and the individual defendants, and our packed court calendar at the time of scheduling this matter, bifurcation would not have been convenient, expedient, or economical, nor was it necessary to avoid prejudice. Frankly, it almost assuredly would have introduced more problems than it might have alleviated.

Nor do we find that our evidentiary determinations, over which we exercise significant discretion, prejudiced the individual defendants because (1) the evidence of the City's policies, practices, customs, and supervision was relevant to the individual liability claims, as was

evidence of the individual defendants' prior law enforcement misconduct and personnel

histories; and (2) we issued defendants' requested limiting and curative instructions.  We

likewise stand by our decisions to admit various evidence, to which defendants now (and with

respect to some evidence, for the first time) object.[7]  Defendants have not established that these

examples of purportedly erroneous evidentiary rulings — both rulings to admit or exclude

certain evidence — affected any "substantial right" of any defendant.  *Becker*, 207 F.3d at 180.

Defendants' remaining arguments for a new trial also fail to persuade.  Again, there was

significant evidence supporting the jury's finding that plaintiff was actually innocent, that

defendants caused his wrongful incarceration, and that he was owed damages for this harm.  Just

as plaintiff had a high hill to climb in demonstrating that the jury's monetary award was against

the weight of the evidence, defendants must climb the back side of that high hill to convince us

that letting this verdict stand would constitute a conscience-shocking, miscarriage of justice.

*Williamson*, 926 F.2d at 1352-53.  Defendants' arguments, which essentially implore us to

improperly substitute our judgment for that of the jury and relitigate the case, do not get them

over the hill.  Nor do we find that Ms. Green misled the jury in her closing rebuttal argument.

She correctly stated that plaintiff's counsel did not show the jury every piece of evidence

regarding plaintiff's innocence — a statement that reflects a reality of civil trial practice and that

---

[7] As plaintiff correctly highlights, defendants did not object to the introduction of the concise officer histories for either Detective Ellis or Sergeant Vogelman, nor to the introduction of the 2003 or 2005 IAO reports.  DI 461 at 20 n.6 (citing N.T. 8/11/25 at 100:12-102:6; N.T. 8/14/25 at 126:1-176:22, 155:8-156:1, 173:4-14).  Defendants also never sought to introduce the post-conviction decision from Judge Byrd, nor Judge Byrd's testimony, despite being directed to brief the issue if they wanted a ruling on it.  *See* N.T. 8/21/25 at 11:19-25:11.  Defendants never briefed that issue.  We thus find that these issues are waived, as well as meritless.

by no means insinuated, as defendants claim, that anyone precluded plaintiff from presenting such evidence.[8]  N.T. 8/27/25 at 117:5-11.  Such a statement is a calculated risk in any event; a jury could easily hold it against you or take it to highlight further the lack of evidence.  Finally, we reject defendants' objection to plaintiff's ratification theory.  Plaintiff clearly and sufficiently articulated this theory at the summary judgment stage and defendants did not object to this theory then.  Accordingly, we find this argument waived.

## C.    We reject defendants' motion for judgment as a matter of law because the evidence, viewed in the most favorable light to plaintiff, is legally sufficient to support the verdict

Viewing the evidence in the light most favorable to plaintiff, as the non-moving party, we conclude that the verdict was "supported by legally sufficient evidence" such that defendants are not entitled to judgment as a matter of law.  *Rodriguez*, 119 F.4th at 298.  As discussed in this memorandum, the record is thick with evidence presented upon which the jury could properly find for plaintiff on the liability and damages issues.  This is especially true when considering all the credibility determinations potentially underlying the verdict and construing them, as we must, consistent with the verdict.  Indeed, as plaintiff notes, we determined at summary judgment that there was sufficient evidence for a reasonable jury to find defendants liable on many of the claims defendants now raise, and the evidence at trial included and expanded upon that evidence.[9]  We will not, and must not, substitute our assessment of the facts, the witnesses, and

---

[8] Nor did defendants object to this statement at the time.  N.T. 8/27/25 at 117:5-11. Objections in the middle of a closing argument can be disruptive and are inevitably made *after* the offending comment anyway.  Hence the most graceful option is to raise the objections at sidebar after the argument and request a curative instruction.  That did not happen here.

[9] For example, we denied summary judgment on the fabrication of evidence claim against all defendant officers other than Detective Webb, the deliberate deception claims against

the evidence for the jury's assessment thereof. *Id.* Defendants simply have not convinced us

that this case warrants application of the "stringent standard" of judgement as a matter of law.

*Id.* Because the verdict was supported by legally sufficient evidence, we deny defendants'

request.

## V.    CONCLUSION

There is no basis for imposing sanctions on plaintiff's counsel, ordering a new trial, or

granting judgment as a matter of law.  Accordingly, we deny the parties' motions requesting

such relief.  An appropriate accompanying order follows.

---

Detective Campbell and Officer Zungolo, and the municipal liability claims against the City.  DI
303 at 21, 28-29, 44.  We also denied summary judgment on the civil rights conspiracy claim
because there was enough evidence to proceed to trial on the fabrication of evidence, deliberate
deception, and malicious prosecution claims.  *Id.* at 34.  The evidence adduced at trial was
sufficient to support these three underlying claims, and defendants do not challenge the
conspiracy findings regarding Officers Vinson and Zungolo and Detective Ellis.  Taken together
with the trial evidence supporting the conclusion that Detective Campbell and Officer Smith
joined this conspiracy, judgment as a matter of law in defendants' favor is not warranted on the
conspiracy claim.