IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERMAINE HICKS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-977** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*** | : | |

# MEMORANDUM

**MURPHY, J.** **September 24, 2026**

After unreasonably requesting over $8.5 million in attorneys' fees and costs on a $3 million verdict, lawyers for Termaine Hicks now request $290,890.00 in additional fees and $65,941.94 in additional costs for work associated primarily with litigating the original unreasonable fee request. Fees of that magnitude would often make for a reasonable award for an entire civil-rights case won at trial. We cannot sign off simply because the number looks small next to $8.5 million. Rather, after close inspection, we reduce the requested fees on fees substantially. Counsel spent an unreasonable number of hours litigating the fee petition. And their success in that litigation was limited. We thus reduce the fees by 30% for the unreasonable hours, and then by an additional 35% for the limited success, resulting in a fee award of $132,354.95. As to costs, we decline to revisit our orders that the parties should split the costs of the mediator and special master in this case. We also find some travel and lodging expenses unreasonable. The resulting costs award is $3,440.40. Mr. Hicks's total supplemental award is $135,795.35.

Mr. Hicks also asks that we clarify entry of judgment and provide for post-judgment interest on a separate document. Neither of these steps is required, but we will grant Mr. Hicks' request separately to avoid any ambiguity.

## I. FACTUAL BACKGROUND

Last year, Termaine Hicks won a $3 million verdict against the City of Philadelphia and various members of its police department arising out of Mr. Hicks's wrongful conviction for a 2002 rape and his subsequent imprisonment. DI 413. Detailed facts and litigation history are laid out in our prior opinions. *Hicks v. City of Philadelphia*, 2026 WL 2413194 (E.D. Pa. Aug. 18, 2026); *Hicks v. City of Philadelphia*, 2026 WL 498885 (E.D. Pa. Feb. 23, 2026); *Hicks v. City of Philadelphia*, 783 F. Supp. 3d 834 (E.D. Pa. 2025); *Hicks v. City of Philadelphia*, 753 F. Supp. 3d 409 (E.D. Pa. 2024); *Hicks v. City of Philadelphia*, 2023 WL 5278713 (E.D. Pa. Aug. 16, 2023). As the prevailing party in the litigation, Mr. Hicks petitioned for attorneys' fees and costs of approximately $8.5 million under 42 U.S.C. § 1988. *Hicks*, 2026 WL 2413194, at *3. Given the exceptional nature of the petition, we appointed a special master, the Hon. Mitchell S. Goldberg, to prepare a report and recommendation as to it. DI 491. We ordered that the parties were to share the costs of Judge Goldberg's services. *Id.* at 2. For the sake of conserving party resources, we asked the parties to consider affording deference to the special master's findings, DI 487, but they declined, DI 490.

During pendency of the fees motion, in another effort to conserve party resources, we directed the parties to engage in mediation before the Hon. Kent A. Jordan. We ordered that the parties split his fees evenly. DI 455. The mediation ultimately did not result in an agreement between the parties.

The special master issued a report and recommendation suggesting that counsel Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP's (NSBHF) proposed New York-market-based rates were too high, that they billed an unreasonable number of hours, and that they incurred

unreasonable costs. DI 497. He recommended a reduction from the approximately $8.5 million requested to about $4.65 million. *Id.* at 19. Mr. Hicks objected to essentially every material finding of fact and law in the petition. *Hicks,* 2026 WL 2413194, at *20 n.33. We then conducted *de novo* review of the report and recommendation and ultimately found that a 40% reduction of the fees and a 30% reduction of the costs was warranted. While we disagreed that NSBHF's rates should be limited to the Philadelphia market, we agreed that they overstaffed the case, billed for inefficient and redundant work, did not properly keep time and expense records, and incurred unreasonable costs. *Id.* at 14-20.

## II. MOTION AT ISSUE

Mr. Hicks now moves for two forms of relief. First, he asks for fees and costs incurred after he filed the initial fee petition — fees on fees. DI 517 at 5.[1] These fees and costs are associated with the litigation of the fee petition and participation in court-ordered mediation. *Id.* at 5. In total, he seeks $290,890.00 in fees for 535.7 hours of additional work and travel, plus $65,941.94 in additional costs. *Id.* at 6-7. Most of the costs, about $62,000 worth, are Mr. Hicks's share of the mediator and special master. *See* 517-2 at 17-18. Second, Mr. Hicks asks us to clarify in a separate document that judgment has been entered in this case. DI 517 at 7; DI 522 at 10. He further requests that, in that document, we provide for post-judgment interest accruing on both his fees and the verdict. DI 517 at 7-8.

Defendants oppose both forms of relief. First, they argue that we should reduce the fees and costs significantly. They submit that, as with the initial fee petition, the requested attorneys'

[1] We use the sequential pagination supplied by the CM/ECF docketing system.

fees reflect overstaffing and inefficient work; they request a 40% reduction on that basis. DI 518 at 6. They also request a further 40% reduction based on the fee petition's "limited success" in light of our reductions to the originally requested award. *Id.* As to the costs, they argue that they should not have to pay Mr. Hicks's half of the special master and mediator's fees, and that those fees should remain split between the parties consistent with our original orders. *Id.* at 17-19. They also request a 30% reduction to the remaining approximately $4,000 in costs, arguing that NSBHF's hotel and travel expenses were unreasonable. *Id.* at 20-21. Second, as to the entry of judgment, defendants interpret Mr. Hicks's motion to ask for the court to reenter judgment on the verdict or to merge the verdict and fee judgment. *Id.* at 21. They argue that there is no legal basis for us to take such an action. *Id.*

## III. LEGAL STANDARDS

We can award reasonable attorneys' fees to the prevailing party in Section 1983 civil rights lawsuits. *See* 42 U.S.C. § 1988(b). In evaluating the reasonableness of a claimed fee under Section 1988, we use the "lodestar" formula; this formula involves "multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citations omitted). In determining the number of hours reasonably expended, we exclude any hours that were "excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir.1995)).

Fees related to litigating the amount of fees warranted for the underlying action — fees on fees — are recoverable under Section 1988. *See United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 141-42 (3d Cir. 2018). In evaluating a motion for fees on fees, we proceed in

two steps. *Id.* First, "as with all fee petitions, [we] must [] determine whether the fees on fees are reasonable." *Id* at 142. Second, we must "consider the success of the original fee petition and determine whether the fees on fees should be reduced based on the results obtained." *Id.*

## IV. DISCUSSION

### A. We reduce Mr. Hicks's fees.

#### 1. An initial 30% reduction is warranted because Mr. Hicks spent an unreasonable amount of time litigating fees on fees.

We have previously concluded that Mr. Hicks's requested hourly rates are reasonable, *Hicks*, 2026 WL 2413194, at *1, and the City does not ask us to revisit that conclusion for purposes of this motion. So the only issue is whether the number of hours expended litigating the fee petition and engaging in mediation was reasonable. For three reasons, we conclude that it was not.

**Reasonableness.** *First*, counsel spent an unreasonable amount of time revising the initial fee application. Between October 26 and October 30, 2025, nine timekeepers spent over a total of 100 hours on tasks related to revising the initial fee petition. DI 517-1, 2-4. That time was on top of over 260 hours counsel had already spent on tasks related to drafting the petition in the first instance, DI 509-1 at 141-48, and we have already found that process involved excessive staffing, *Hicks*, 2026 WL 2413194, at *16. The time spent on revisions exceeds the amount of time courts routinely find to be excessive for drafting the petition in whole. *E.g.*, *Maldonado*, 256 F.3d at 183, 187 (finding 25.68 hours unreasonable to prepare fee petition); *T.B. v. Mt. Laurel Bd. of Educ.*, 2012 WL 1079088, at *6 (D.N.J. Mar. 30, 2012) (finding 11.1 hours to prepare fee application unreasonable); *Walker v. Gruver*, 2013 WL 5947623, at *18 (M.D. Pa.

Nov. 5, 2013) (finding "nearly 40 hours on several drafts of the fee petition" unreasonable); *see also IS.C. by K.G. v. Lincoln Cnty. Sch. Dist.*, 2022 WL 1567229, at *2-3 (D. Or. May 18, 2022) (finding 150 hours on fee application litigation as a whole "staggering").

To be sure, this was a complex case, with a very large requested fee award, and it is reasonable that the hours spent on the fee petition would be on the higher side. But even compared to other complex cases, the time spent revising the fee petition is an outlier. For example, in *Greenpeace, Inc. v. Stewart*, 2020 WL 2465321, at *10 (9th Cir. May 12, 2020), the fee pleadings took 119.6 hours in light of a ten-year case history that included multiple proceedings before an administrative agency, the district court, and the Ninth Circuit. Here, the hours spent on revisions to the petition alone approach that figure.

In addition to the amount of time spent on the fee petition, the billing entries also reveal an unreasonable distribution of work, with senior attorneys completing work of which junior attorneys were capable and junior attorneys completing work that could have been done by paralegals. Such an allocation of work is unreasonable. *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983). For example, in the days leading up to the fee petition's filing, a partner billing at $900 per hour billed four blocks of time ranging from 5.4 to 7.3 hours to "review/edit fee petition" or some variation thereof, DI 517-1 at 2-4, an amount of time that could only be justified by granular revisions akin to redrafting. That partner also billed 1.9 hours for legal research related to the petition. *Id.* at 2. Research and drafting are tasks that can generally be completed by junior attorneys, and billing at partner rates for them is not reasonable. *In re Vascular Access Centers, L.P.*, 646 B.R. 735, 774 n.33 (Bankr. E.D. Pa. 2022), *aff'd sub nom. Vascular Access Centers, L.P. v. Philadelphia Vascular Inst., LLC*, 669 B.R. 738 (E.D. Pa.

2025). Additionally, a junior attorney billed a 4.6 hour block to "Compile exhibits, organize filing and submit to court" on the date of the filing of the application. DI 517-1 at 4. That work could have been done by a paralegal not charging attorney rates. *See In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, 2008 WL 2600364, at *12 (E.D. Pa. June 26, 2008), *aff'd sub nom. In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220 (3d Cir. 2009).

Finally, the billing records reveal duplication of work across multiple billers in preparing the fee petition. During the same period that the partner mentioned above was block billing for "review/edit fee petition," a junior attorney similarly billed 5.7 and 4.0 hour blocks for "edit fee petition," as well as smaller blocks throughout the week. DI 517-1 at 2-4**.** On top of that, a third attorney, billing at $650 per hour, billed at least 7 hours of her own review of the petition and accompanying exhibits, while a fourth billing at $1,000 an hour edited it further for an hour. DI 517-1 at 2-4. While it is understandable that counsel, given their investment in the case, would choose to be exceptionally thorough in reviewing and revising the petition, that does not make it reasonable, and we decline to impose the resulting exceptional costs on defendants.

*Second*, Mr. Hicks's counsel spent an unreasonable amount of time preparing a reply brief regarding his initial fee application. To start, as with the initial petition, the number of hours spent on the reply brief was unreasonable. By our count, Mr. Hicks spent about 92 hours on tasks related to the reply brief. DI 517-1 at 12-15. That is facially excessive. *See A.P. v. Pasadena Unified School District*, 2021 WL 5249658 *7 (C.D. Cal. Aug. 24, 2021) (finding 26.7 hours on a reply brief to be "simply unreasonable"). Moreover, as with the initial petition, senior attorneys billed for tasks that would be expected to be completed by junior attorneys at lower rates. A partner billing at $900 per hour billed approximately 35 hours to "draft fee petition

reply" or some variation thereof, including a 7.8-hour block on one day. DI 517-1 at 12-15. And she also billed 3.6 hours for research for the reply. DI 517-1 at 12. While we credit counsel for eliminating some of the duplication issues present in the initial petition, it was still unreasonable for a partner billing at $900 to spend so many hours on the research and initial drafting of the reply.

*Third*, Mr. Hicks's counsel spent an unreasonable amount of time preparing supplemental exhibits for his fee petition. Mr. Hicks's original fee petition separated out time entries by biller, making it difficult to determine how many attorneys were working on any given task at any given time. *See generally* DI 466. Additionally, some of the time and cost entries did not identify the specific event (filing, deposition, etc.) that a given task or cost was related to. *E.g.*, DI 466-17 at 15 ("met with Grace"); DI 466-20 at 16 ("Meet with Emma, Amelia re Dep"); DI 466-10 at 29 ("Travel – A. Green"). The lack of reasonably detailed time narratives and cost descriptions made it difficult to assess whether the work or costs were reasonably necessary. To facilitate review, we asked Mr. Hicks to provide a consolidated version of his billing and costs records that was not separated by timekeeper and organized chronologically. DI 504. We also asked him to provide a list of major case events, including depositions, motions, hearings, and trial, so that we could associate nondescript time entries with particular case events. *Id.* In compiling these exhibits, Mr. Hicks's team spent about 35 hours across at least five timekeepers, including multiple layers of attorney review. DI 517-1 at 19-20.

We fail to see how that amount of time was reasonable. Compiling the charts would have ideally involved a simple export from a timekeeping and expense tracking software, or, at most, copying and pasting from the spreadsheets used to prepare the tables in the initial fee petition.

And the case chronology consisted of a table containing information that should have been readily available to counsel from the docket and their own records. Moreover, the nature of many of the time entries prevents us from concluding that, notwithstanding the sticker-shock at the number of hours, the work was nonetheless necessary. For example, an attorney billing at $475 per hour billed a 7.9-hour block to "finalize supplemental fee application filing." DI 517-1 at 21. And another attorney billing at $650 recorded a three-hour block that included "comments and feedback to team re linking case events re costs," *id.*, a task that proper time narratives referencing the relevant case event would have made unnecessary. To the extent that the filing involved extra work reconstructing which entries and costs were related to which phase of the case, we fail to see why it is reasonable for defendants to pay for counsel's failure to keep detailed contemporaneous records.

**Reduction.** Having determined that the claimed fees were unreasonable, we may reduce them by conducting either an hour-by-hour analysis or an across-the-board cut. *Am. Bd. of Internal Med. v. Von Muller*, 540 F. App'x 103, 107 (3d Cir. 2013). The across-the-board cut approach is permissible so long as we provide "a concise but clear explanation of [our] reasons for the fee award." *Id.* at 108 (citation omitted). Though plaintiffs' fees on fees application is less voluminous than their initial application, we still conclude that "a percentage reduction is the most efficient way to account for the excessive hours." *Micayla Augustyn, Pl., V. Wall Township Board of Education, Def.*, 2026 WL 2295126, at *11 (D.N.J. Aug. 10, 2026). There are over five hundred hours at issue spread across 441 time entries, which falls within the range appropriate for an across-the-board cut. *See id.*; *Johnson v. Mold Sols. & Inspections, LLC*, 645 F. Supp. 3d 429, 435 (E.D. Pa. 2022). In light of the issues outlined above, a 30% reduction is

appropriate.

The three problematic stages of the fee litigation identified above — revising the fee petition, writing the reply for the petition, and submitting supplemental exhibits — took approximately 230 hours, or about 45% of the supplemental time sought. Based on the excess hours and misallocation of high billers discussed above, we think two-thirds of this approximately 45% should be reduced, resulting in an overall reduction of 30%. Applied to Mr. Hicks's request for $290,890.00, the reduction results in an adjusted lodestar of $203,623.00.

**2. A further 35% reduction is warranted in light of the limited success of Mr. Hicks's initial fee petition.**

Having determined that the initial fees were not reasonable and should be reduced, we next "consider the success of the original fee petition and determine whether the fees on fees should be reduced based on the results obtained." *Palmer*, 897 F.3d at 142. We examine the degree of success of the petition independently from the success of the underlying litigation. *Id.* In general, reducing fees on fees by roughly the same percentage that the initial fee application was reduced is reasonable. *See Maldonado*, 256 F.3d at 183, 188 (reducing fees on fees by half where fee request reduced by about 60%); *Gresko v. Pemberton Township Bd. of Educ.*, 2020 WL 6042317, at *13 (D.N.J. Oct. 13, 2020) (reducing fees on fees by 18% where reductions to initial fee request were approximately 18%). Here, a slight departure from that guidepost is warranted given that supplemental billing entries also included approximately 35 hours of time spent on the mediation (DI 517-1 at 9-13), which likely covered some topics related to the damages award in the underlying litigation and not the fee petition. Thus, while the fee petition contained a 39.6% reduction of fees and costs, DI 515 at 1-2, we will make an additional reduction of only 35%. This 35% reduction to the remaining $203,623.00 results in a final

award of $132,354.95.[2]

**B. We reduce Mr. Hicks's costs.**

Section 1988 provides that a prevailing plaintiff may recover "reasonable out-of-pocket expenses normally charged to a fee-paying client, in the course of providing legal services." *Planned Parenthood v. New Jersey*, 297 F.3d 253, 267 (3d Cir. 2002) (citation modified). Prevailing plaintiffs are entitled to the reimbursement of their litigation expenses so long as those expenses "are reasonably and necessarily incurred" and sufficiently documented. *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998) (citation omitted). Mr. Hicks's costs roughly break down into three categories — the special master's fees, the mediator's fees, and other miscellaneous costs. We address each in turn.

To begin, we agree with defendants that Mr. Hicks is not entitled to recover his half of the special master's fees. Where a prevailing party needlessly prolongs litigation, resulting in increased costs, we may decline to shift those costs. *Carroll v. Clifford Tp.*, 625 Fed. App'x. 43, 47 (3d Cir. 2015) (citing *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 926 (3d Cir. 1985)). Here, Mr. Hicks needlessly prolonged the litigation by submitting an extraordinary and unreasonable fee request that was complicated by poor record-keeping, making a special master necessary. The special master had to spend considerable time and effort documenting Mr. Hicks's overstaffing and excessive expenses, DI 497 at 13-19, which doubtless contributed to his overall fee. And then, having held on to the right to *de novo* review, Mr. Hicks

[2] We apply the 35% reduction to the amount of fees remaining after the initial 30% reduction for unreasonable hours rather than to the total amount, as defendants have not proposed applying this reduction to the total amount. DI 518 at 16. In another case where the issue is pressed, it might be appropriate to apply the reduction to the total amount.

exercised that right to start the process over again. As we have written several times already in this year's long fees litigation, not everything lawyers are allowed to do, or wish to do, even in loyal and effective service to their clients, should be deemed reasonable. To be sure, defendants are not blameless for the prolonged fee litigation. Their own unreasonable position that no fees at all were warranted, DI 497 at 3, also contributed to the need for a special master. But both parties' culpability for the prolonged fee litigation is accounted for in our order directing defendants to bear half of the cost for the special master's services. *See* DI 491. We decline to disturb that balance.

We also agree with defendants that they should not have to reimburse Mr. Hicks for his half of the mediator's fees. The mediator's services were necessary because Mr. Hicks needlessly prolonged this litigation, and it was plainly obvious that the parties here would have benefited immensely from avoiding lengthy and costly post-trial litigation and appeals through a mediated settlement. Indeed, post-trial mediation here was necessary in large part because of Mr. Hicks's insistence on seeking a new trial on damages notwithstanding the jury's verdict (DI 449) and seeking a fee award of approximately $8.5 million, positions that Mr. Hicks vigorously litigated but that lacked legal merit, *Hicks*, 2026 WL 2413194, at *14-20; *Hicks* 2026 WL 498885, at *10. Defendants again are not blameless — their own insistence on advancing meritless motions for judgment as a matter of law and opposing any fee award also contributed to the needless prolonging of this litigation post-verdict. But their share of the blame is reflected in our order that the parties split the mediator's fees. *See* DI 455. Moreover, Mr. Hicks never indicated disagreement with our order that the mediator's costs be split. This would have led defendants to reasonably believe they had an agreement, consistent with the court's order, to split

the mediator's costs. In such situations, courts often decline to shift the mediators' costs. *See Raab v. City of Ocean City*, 2017 WL 2779753, at *7 (D.N.J. June 26, 2017); *D'Orazio v. Washington Township*, 2011 WL 6717427, at *8 (D.N.J. Dec. 21, 2011). The mediation in this case was not an obstacle that Mr. Hicks had to overcome to obtain success; it was an opportunity to avoid being where we are now. And we fail to see how the mediation costs are somehow an expenditure necessary for Mr. Hicks to obtain a fee award.

Finally, defendants also ask for the remaining approximately $3,000 in costs to be reduced by 30% across the board. But the expenses are few enough that we can examine them line-by-line. Only one strikes us as facially unreasonable — the $418.15 hotel stay for Mr. Brustin at the Westin for the mediation. DI 517-2 at 17. The other attorney attending the mediation does not appear to have incurred any hotel charges, *id.*, so we do not see why Mr. Brustin needed to incur a hotel expense at all, much less at over $400 per night. Defendants also argue that NSBHF's travel costs — $537 for six Amtrak trips and $75.82 for five rideshare trips — were unreasonable. DI 518 at 20. While those charges are hardly modest, they do not strike us as facially unreasonable. But without the receipts for the trips, which NSBHF does not maintain (DI 515 at 52-53), we cannot fully assess the reasonableness of the expenses. For example, we cannot tell whether there were business class train tickets, upgraded rides, or opportunities for the use of public transportation instead of car trips. Accordingly, we will cut travel expenses by 10%, or $61.28. Combined with the hotel, the total reduction to the remaining expenses is $479.43.

In sum, we decline to impose on defendants the $62,022.11 of mediator and special master fees or the $479.43 in unreasonable other costs. Defendants shall pay the remaining

$3,440.40 in requested costs.

**C. We clarify entry of judgment and the accrual of statutory post-judgment interest in a separate document.**

Mr. Hicks also requests that we clarify in separate a document the date of the final judgment on the verdict and the fees, respectively, and the date on and rate at which interest began to accrue on each award. DI 517 at 7-8; DI 522 at 10. As to "final" judgment for purposes of appealability under 28 U.S.C. § 1291, that date is August 18, 2026 for both the verdict and fee judgment because that is when we resolved the fee motion. DI 516. Though the verdict award would have ordinarily become a final judgment upon resolution of the parties' motions for judgment as a matter of law and a new trial, we postponed finality until resolution of the fee petition under Federal Rule of Civil Procedure 58(e). DI 494 at 2 n.1. While Federal Rule of Civil Procedure 58 does not require a separate document entering judgment on a motion for attorneys' fees, we will note the date of entry of judgment in a separate document to avoid any ambiguity.

As to interest, it began accruing on "the date of the entry of the judgment" within the meaning of 28 U.S.C. § 1961(a). For the verdict, that was the first entry of judgment on the jury's verdict, *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1177 (3d Cir. 1993), which occurred on August 28, 2025, DI 413.[3] For the fees, it was August 18, 2026, when

[3] For the avoidance of any doubt, we are not suggesting that August 28, 2025 was the date of the "entry of [] judgment" for purposes of 28 U.S.C. § 2107(a)'s 30-day appeal deadline. Where, as here, the verdict is challenged by motions for a new trial and for judgment as a matter of law, the Section 2107(a) entry date is delayed until resolution of those motions. *See* Fed. R. App. P. 4(a)(4)(A)(i), (v); *Banister v. Davis*, 590 U.S. 504, 508 (2020). Additionally, the entry of judgment on the verdict for Section 2107 purposes is further delayed until final judgment on the fee award where, as here, we enter a Rule 58(e) order. *See* Fed. R. App. P. 4(a)(4)(A)(iii);

we determined the amount of fees owed. *Eaves v. County of Cape May,* 239 F.3d 527, 534 (3d Cir. 2001). This interest "is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it." *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993) (citation omitted). But again, for clarity's sake, we will note the accrual of interest in our separate order.

## V. CONCLUSION

Regarding the supplemental attorneys' fees, we conclude that a reduction based on the hours billed and success of the fee petition is warranted. We thus award Mr. Hicks a total of $132,354.95 in supplemental attorneys' fees. We also conclude that the record warrants Mr. Hicks bearing his half of the mediator and special master's costs, a 10% reduction in the transportation costs, and an unreasonable hotel charge. We thus award Mr. Hicks $3,440.40 in supplemental costs. Mr. Hicks's total supplemental award is $135,795.35.

---

*Ray Haluch Gravel Co. v. Cent. Pension Fund of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177, 187 (2014).